LAW OFFICES
BROENING OBERG WOODS & WILSON
PROFESSIONAL CORPORATION
2800 NORTH CENTRAL AVENUE, SUITE 1600
PHOENIX, ARIZONA 85004
(602) 271-7700

Alicyn M. Freeman (023916)
amf@bowwlaw.com
Minute Entries/Orders
cjg@bowwlaw.com
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| WCF National Insurance Company, a Utah corporation, | No. _____ |
| Plaintiff, | **COMPLAINT FOR DECLARATORY RELIEF** |
| vs. | |
| Gilligan Commercial, LLC, an Arizona limited liability company; WindTech Audio Inc., an Arizona corporation; and Lee Scott, an Arizona resident, | |
| Defendants. | |

Plaintiff WCF National Insurance Company ("WCF" or "Plaintiff"), by and through undersigned counsel and pursuant to 28 U.S.C. §§ 2201-02, for its Complaint for a Declaratory Judgment against Defendants Gilligan Commercial, LLC, WindTech Audio Inc. and Lee Scott alleges as follows.

## JURISDICTION, VENUE AND PARTIES

1.      This is a declaratory judgment action under 28 U.S.C. §§ 2201-02 regarding the parties' rights and obligations under a Businessowners Liability Coverage insurance policy issued by WCF to Gilligan Commercial, LLC ("Gilligan Commercial").

2.     WindTech Audio Inc. ("WindTech") and Lee Scott ("Scott") filed suit against Gilligan Commercial in Maricopa County Superior Court seeking damages resulting from an wire transfer fraud incident (the "Underlying Lawsuit").

3.     WCF seeks a declaration that it has no duty to defend or indemnify Gilligan Commercial in the Underlying Lawsuit.

4.     Jurisdiction is proper under 28 U.S.C. § 1332 because there is complete diversity among the parties, and the amount in controversy, exclusive of interest and costs, is in excess of $75,000.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the alleged acts giving rise to this suit all occurred within the District of Arizona. Additionally, the Defendants reside in this District.

6.     Plaintiff WCF is incorporated in Utah and has its principal place of business in Utah.

7.     Defendant Gilligan Commercial, upon information and belief, is an Arizona limited liability company and is domiciled in Arizona.

8.     Defendant WindTech, upon information and belief, is an Arizona corporation and is domiciled in Arizona.

9.     Defendant Scott, upon information and belief, is a resident of Maricopa County, Arizona and is domiciled in Arizona.

## FACTUAL ALLEGATIONS

10.     WindTech. and Scott filed the Underlying Lawsuit against Gilligan Commercial in Maricopa County Superior Court, case number CV2024-032505 on November 13, 2024. A copy of the Complaint is attached hereto as **Exhibit A**.

11.     The Complaint alleges that Gilligan Commercial is a brokerage which facilitated a transaction between WindTech, Scott and Olsen Audio Group Inc. ("Olsen Audio") for Scott to purchase Olsen Audio.

2

12. The Complaint alleges that based on improper conduct by Gilligan Commercial's agent, Joe Balbona, Scott received spoofed communications from an unknown third party and wired $1,378,245.05 to an unknown third party on May 28, 2024.

13. The Complaint alleges that Scott discovered that an email from Balbona's email account was the root cause of the mistaken transaction on May 30, 2024.

14. The Complaint alleges that Scott recovered $468,245.05 from the wire transaction and was informed that the other $910,000.00 was transferred to an account in Mexico.

15. The Complaint alleges that Scott liquidated additional assets to complete the purchase of Olsen Audio and incurred $436,880.00 in capital gains taxes as a result.

16. The Complaint alleges that these monetary damages were incurred as a result of Balbona's negligent introduction of Scott to a wire fraud scheme.

17. The Complaint asserts the following four counts: negligent misrepresentation, breach of the implied covenant of good faith and fair dealing, negligence and breach of fiduciary duty.

18. The Complaint claims pecuniary damages for the loss of funds in wiring funds to the incorrect recipient and incurring capital gains taxes.

19. WCF issued a Businessowners Policy, Policy No. 4074460 to Gilligan Commercial (the "Policy").[1]  The Businessowners Liability Declarations (with premium information redacted), coverage forms and endorsements are attached hereto as **Exhibit B**.

20. The Policy's Business Liability Coverage Form insuring clause provides liability coverage as follows, subject to the terms, conditions, exclusions and limitations of the Policy:

---

[1] Sandy Desert On Indian School is the first named insured in the Policy.  Gilligan Commercial LLC is also listed in the Declarations as a named insured.

## BUSINESSOWNERS COVERAGE FORM

. . .

## SECTION II – LIABILITY

**A.     Coverages**

    **1.     Business Liability**

        **a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies.

21.    The Policy's Business Liability Coverage Form includes the following exclusions:

**B.     Exclusions**

    **1.     Applicable To Business Liability Coverage**

        This insurance does not apply to:

. . .

        **b.     Contractual Liability**

        "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

        **(1)**     That the insured would have in the absence of the contract or agreement; or

        **(2)**     Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

4

**(a)**   Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)**   Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

. . .

**p.**   **Personal And Advertising Injury**

"Personal and advertising injury":

**(1)**   Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

**(2)**   Arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity;

**(3)**   Arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period;

**(4)**   For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

**(5)**   Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

**(6)**   Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

**(7)**   Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

**(8)**   Committed by an insured whose business is:

**(a)**   Advertising, broadcasting, publishing or telecasting;

**(b)**   Designing or determining content of web sites for others; or

**(c)**   An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under Paragraph **F.** Liability And Medical Expenses Definitions

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, by itself, is not considered the business of advertising, broadcasting, publishing or telecasting;

**(9)**    Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time;

**(10)**    With respect to any loss, cost or expense arising out of any:

**(a)**    Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)**    Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants";

**(11)**    Arising out of an electronic chatroom or bulletin board the insured hosts, owns or over which the insured exercises control;

**(12)**    Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan;

**(13)**    Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers.

**q.    Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

22.     As used in this exclusion, electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

. . .

23.     The Policy's Business Liability Coverage Form includes the following definitions:

**F.     Liability And Medical Expenses Definitions**

. . .

**3.**     "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

. . .

**14.**     "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.**     False arrest, detention or imprisonment;
**b.**     Malicious prosecution;
**c.**     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

. . .

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; and

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

. . .

24. The Policy includes the following Endorsement:

1

2

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

3

4

**EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION**

5

This endorsement modifies insurance provided under the following:

6

7

BUSINESSOWNERS COVERAGE FORM

8

**A.**    Exclusion **B.1.q.** of **Section II** – **Liability** is replaced by the following:

9

This insurance does not apply to:

10

11

**q.**    **Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

12

13

14

15

**(1)**    Damages, other than damages because of "personal and advertising injury", arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

16

**(2)**    Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

17

18

19

20

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

21

**B.**    The following is added to Paragraph **B.1.p. Personal And Advertising Injury** Exclusion of **Section II – Liability**:

22

23

This insurance does not apply to:

24

**p.**    **Personal And Advertising Injury**

25

26

"Personal and advertising injury":

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

> Arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.
>
> This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

25.    WCF sent Gilligan Commercial a reservation of rights letter on November 26, 2024 providing a defense for the allegations in the lawsuit and reserving its rights under the Policy including the right to pursue an action for declaratory judgment regarding coverage.

26.    There is no coverage available under the Policy for the allegations in the Complaint filed in the Underlying Lawsuit because the Complaint does not allege damages because of "bodily injury," "property damage" or "personal and advertising injury" to which the insurance applies.

27.    There is no liability coverage available under the Policy for the allegations in the Complaint filed in the Underlying Lawsuit because the Policy excludes liability coverage for "personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information.

28.    There is no liability coverage available under the Policy for damages that Gilligan Commercial has assumed in a contract or agreement.

29.    There is no liability coverage available under the Policy for the allegations in the Complaint filed in the Underlying Lawsuit because the Policy excludes liability coverage for damages arising out of the loss of electronic data.

30.    The Policy does not provide liability coverage for defense or indemnification for the claims asserted the Underlying Lawsuit.

31.    The Policy does not provide liability coverage for damages arising out of the

wire fraud incident that is the subject of the Underlying Complaint.

## COUNT I – DECLARATORY JUDGMENT RELIEF

1.      WCF incorporates and realleges paragraphs 1 through 31 as if fully set forth herein.

2.      Because the Lawsuit is outside the coverage afforded by the Policy, WCF is entitled to a declaratory judgment in its favor pursuant to 28 U.S.C. § 2201, declaring the Policy does not afford coverage for the Underlying Lawsuit and WCF has no duty to defend or indemnify Defendants with respect to the Underlying Lawsuit.

3.      WCF has no equal, plain, speedy and adequate remedy other than to seek declaratory relief.

4.      A declaration is necessary and appropriate, at this time, so that WCF may ascertain its respective rights and duties under the Policy, and the Court has jurisdiction to make such a declaration pursuant to 28 U.S.C. § 2201.

5.      Because the Count I arises out of a contract, WCF is entitled to its attorneys' fees and costs pursuant to A.R.S. §§ 12-341.01 and 12-341.

6.      WCF demands a trial by jury.

WHEREFORE, WCF prays for judgment against Defendants adjudicating and declaring as follows:

1.      Declaring that the Policy does not afford coverage for the defense or indemnification of the allegations asserted in the Underlying Lawsuit.

2.      Declaring that WCF has no duty to defend or indemnify Gilligan Commercial, LLC under the Policy with respect to the Underlying Lawsuit.

3.      Declaring that WCF is entitled to an award of its attorneys' fees, pursuant to A.R.S. § 12-341.01, and its costs, pursuant to A.R.S. § 12-341, as incurred in this action; and

4.      Awarding WCF such additional relief as shall be deemed appropriate in the circumstances, together with its costs and expenses.

DATED this 11th day of December, 2024.

BROENING OBERG WOODS & WILSON, P.C.

By /s/ Alicyn M. Freeman
Alicyn M. Freeman
2800 North Central Avenue, Suite 1600
Phoenix, Arizona 85004
*Attorneys for Plaintiff*

# EXHIBIT A

Clerk of the Superior Court
*** Electronically Filed ***
A. Mariscal, Deputy
11/13/2024 3:52:32 PM
Filing ID 18846028

Sean J. O'Hara (#024749)
Carson A. Howard (#038678)
KERCSMAR & O'HARA PLLC
8800 East Raintree Drive, Suite 310
Scottsdale, Arizona 85260
Telephone:  (480) 421-1001
Facsimile:  (480) 421-1002
sjo@KandOlaw.com
cah@KandOlaw.com

Attorneys for Plaintiffs

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| WINDTECH AUDIO INC., an Arizona corporation; and LEE SCOTT, an Arizona resident, | Case No. **CV2024-032505** |
| Plaintiffs, | **COMPLAINT** |
| v. | |
| GILLIGAN COMMERCIAL LLC, an Arizona limited liability company, | (Tier 3) |
| Defendant. | (*Commercial Court Assignment Requested*) |
| | JURY TRIAL DEMANDED |

For their Complaint against Defendant Gilligan Commercial LLC ("Gilligan"), Plaintiffs WindTech Audio Inc. and Lee Scott (collectively, "Scott" unless context indicates otherwise) allege as follows:

## NATURE OF THE CASE

1.      This dispute arises out of a business broker putting his buyer in contact with a scammer. Defendant Gilligan is a brokerage which facilitated a transaction between Plaintiffs WindTech Audio Inc., Scott and non-party Olsen Audio Group Inc. ("Olsen") for Scott to purchase the business. The original Asset Purchase Agreement was signed on April 11, 2024, and the amendments thereto were signed on May 31, 2024 and June 19, 2024, respectively. Darci Finsterwalder of Arizona Escrow and Financial Co. ("Arizona Escrow")

1

was the escrow officer for the transaction. On May 28, 2024, Joe Balbona ("Balbona") of Gilligan sent Scott, Olsen, and (who was supposed to be) Finsterwalder an email asking Finsterwalder to pass along wiring instructions to Scott. Unbeknownst to Scott at the time, Balbona did not copy the actual Finsterwalder (whose email address is darci@arizonaescrow.com), but instead copied a "spoofed" email address (darci@**arizoona**escrow.com or "John Doe") (emphasis added). John Doe followed through with Balbona's request and sent Scott wiring instructions—with which Scott complied—and after speaking to John Doe (or an agent of John Doe's) on the phone to confirm the instructions, Scott wired $1,378,245.05 to John Doe. Scott confirmed the wire with John Doe on May 29, 2024. At all times between May 28, 2024 to May 29, 2024, Scott believed he was communicating with the real Finsterwalder in reliance on Balbona's representation that he was dealing with Arizona Escrow, not John Doe. Until May 30, 2024, Scott was unaware of any issue. When the real Finsterwalder contacted Scott about the wire, Scott told her that it was already completed. Finsterwalder informed Scott that they had no record or confirmation of the wire, and with hers and Arizona Escrow's help, it was determined that Balbona's email was the root cause of the mistaken transaction. The funds were tracked to a Bank of America account, with whom Scott confirmed that $468,245.05 was frozen and recalled—Scott has since recovered that amount. On the same day, Scott received a call from his financial institution, Morgan Stanley, who informed Scott that $910,000.00 was transferred to an account in Mexico. Scott could not, and has not, recovered the $910,000.00. Worse, Scott could not simply abandon the business opportunity, so the parties amended the Asset Purchase Agreement to allow Scott time to obtain the necessary funds to purchase the business. Scott liquidated assets to do so, and incurred at least $436,880.00 in would-be unnecessary capital gains taxes, absent Balbona's negligent introduction to John Doe. Scott files this action against Gilligan because he suffered damages as a result of Balbona's negligent introduction to a wire fraud scheme when he owed a duty to Scott as a broker to the transaction.

Keesmar & O'Hara PLLC
8800 East Raintree Drive, Suite 310
Scottsdale, Arizona 85260
(480) 421-1001

## PARTIES, JURISDICTION, AND VENUE

2.      Plaintiff Lee Scott is an Arizona resident.

3.      Plaintiff WindTech Audio Inc. ("WindTech") is an Arizona corporation, doing business in Arizona.

4.      Scott is the sole owner of WindTech Audio Inc.

5.      Defendant Gilligan Commercial LLC is an Arizona limited liability company, doing business in Arizona.

6.      Plaintiff WindTech was party to a business transaction under Arizona Rule of Civil Procedure 8.1(a)(2)-(3).

7.      This Court has subject matter jurisdiction over this matter under, among other grounds, Ariz. Const. Art. 6, § 14 and A.R.S. 12-123.

8.      This Court has personal jurisdiction over the Defendant because it committed and/or caused to be committed certain acts within Arizona with the objective or known consequence of harming Plaintiff in Arizona.

9.      Venue is proper in this County under, among other grounds, A.R.S. § 12-401(1) & (10).

## GENERAL ALLEGATIONS

10.     In or around November 2023, Scott was interested in acquiring a business.

11.     While searching for a viable target for acquisition, Scott worked with Joe Balbona of Gillian Commercial LLC, who assisted Scott in locating a potential target business.

12.     Balbona also represented Olsen who, at that time, was interested in selling his business, Olsen Audio Group, Inc.

13.     Balbona introduced Scott to Olsen to begin discussions regarding a potential acquisition, and both parties expressed interest in the transaction.

14.     Balbona prepared a Letter of Intent for the transaction (the "LOI," attached as Exhibit A). The parties executed the LOI on March 6, 2024.

Keresmar & O'Hara PLLC
8800 East Raintree Drive, Suite 310
Scottsdale, Arizona 85260
(480) 421-1001

15. According to Section 9 of the LOI, "Seller and Buyer hereby acknowledge and confirm there are no brokers other than Joe Balbona, Gilligan Commercial, LLC which is acting as exclusive agent for the Seller and Buyer. Broker's fee is paid by Seller."

16. Scott and Olsen negotiated and settled on a price and terms to purchase Olsen Audio Group Inc. The transaction was governed by the April 11, 2024 Asset Purchase Agreement (attached as Exhibit B), and its related addenda.

17. Balbona acted as broker to the transaction.

18. The parties to the transaction agreed that the purchase price for the business would be $1,400,000.00, with an additional $149,761.03 payment for inventory, for a total acquisition price of $149,761.03.

19. Scott deposited $25,000.00 with Arizona Escrow to open escrow on or around April 12, 2024.

20. The parties agreed that the "Closing Payment" $1,375,000.00 would be made to Arizona Escrow.

21. Initially, the parties agreed that the Closing date would be May 15, 2024.

22. The parties amended the Asset Purchase Agreement with Amendment #1 (attached as Exhibit C) to extend the Closing date to June 1, 2024.

23. On May 28, 2024, at or around 7:14 am, Balbona attempted to initiate Closing by emailing Scott, Darci Finsterwalder, and Olsen, requesting that Finsterwalder "have the final closing statement sent on here per lees email." (the "7:14am Email," attached as Exhibit D).

24. Balbona's attempt to initiate closing was unsuccessful.

25. Rather than copying Finsterwalder (darci@arizonaescrow.com), Balbona copied John Doe (darci@**arizoona**escrow.com) (emphasis added).

26. The user operating darci@**arizoona**escrow.com (John Doe) remains unknown to Scott.

27. Upon information and belief, Gilligan had very recently made changes to its IT systems, and as a result, its email system was breached.

4

Keresmar & O'Hara PLLC
8800 East Raintree Drive, Suite 310
Scottsdale, Arizona 85260
(480) 421-1001

28.     At 12:18 pm on May 28, 2024, John Doe replied to the email thread (which included Balbona) with instructions to complete the wire by telephone with "Mark" from John Doe's "account team" (the "12:18 Email," attached as Exhibit E).

29.     Scott spoke to "Mark" on the phone who provided the necessary instructions to send the wire.

30.     Scott then sent an email to his financial institution, Morgan Stanley, and Morgan Stanley processed the wire for $1,378,245.05.

31.     The wire officially processed on May 29, 2024.

32.     On May 30, 2024, Finsterwalder contacted Scott by phone regarding the status of the wire, indicating that Arizona Escrow had neither seen nor requested the wire yet.

33.     In a meeting at Arizona Escrow's office, Arizona Escrow's CEO informed Scott that the wire was not sent to any parties to the transaction.

34.     Once they determined that there was an issue, Arizona Escrow and Scott worked together to track down the missing funds.

35.     Arizona Escrow and Scott reached out to a local Bank of America branch for assistance. The Bank of America representative informed them that funds had been frozen, and that the wire was sent to Saint Louis, Missouri.

36.     Arizona Escrow's IT department assisted in locating the issue, and discovered that the root cause of the issue was the 7:14 am Email from Balbona which introduced John Doe to the conversation.

37.     On May 31, 2024, Morgan Stanley contacted Scott and informed him that $910,000.00 of his funds were in a bank account in Mexico.

38.     That same day, Scott went to the Bank of America Branch at 4402 East Camelback Road, Phoenix, Arizona 85018. There, Kayla Madrid, the Assistant Manager of the branch informed Scott that she saw the wire in a "Pending" status and recalled it to the extent that she could.

Keresmar & O'Hara PLLC
8800 East Raintree Drive, Suite 310
Scottsdale, Arizona 85260
(480) 421-1001

39.    The recalled wire recovered $468,245.05 out of the funds, but $910,000.00 remains missing.

40.    Instead of abandoning the business opportunity, Scott decided to still follow through with his purchase of the business.

41.    The parties executed Amendment #2 (attached as Exhibit F) to allow more time for Closing after the wire fraud scheme halted the transaction.

42.    On or around August 1, 2024, Scott executed the purchase of the business.

43.    Because he had just lost $910,000.00 due to Gilligan's error, Scott was forced to liquidate assets held in separate accounts.

44.    The liquidations resulted in, at least, $436,880.00 in capital gains tax losses.

45.    Gilligan's error made in facilitating the transaction resulted in significant financial losses to Scott totaling at least $1,346,880.00.

46.    Upon information and belief, had Gilligan properly maintained and protected its IT servers, Scott would not have been harmed.

47.    Had Gilligan recognized such a breach, or recognized a spoof email, Scott would not have been harmed.

48.    Had Gilligan properly performed its role as broker to this transaction, Scott would not have been harmed.

49.    Had Gilligan properly communicated with Scott, Olsen, and Arizona Escrow, Scott would not have been harmed.

## COUNT ONE: NEGLIGENT MISREPRESENTATION

50.    Scott incorporates by reference the allegations in the previous paragraphs.

51.    Balbona falsely represented a material fact to Scott that he would accurately and correctly communicate with Scott and Olsen as Broker to the transaction, and that he would provide accurate communication by and between himself and Arizona Escrow to meet all necessary requirements for the transaction's success.

52.    Balbona, acting in his capacity as a Gilligan-employed broker to the transaction in which Balbona and Gilligan had a pecuniary interest, supplied false

information for the guidance of Olsen and Scott by including John Doe in the 7:14 am Email.

53. By doing so, Gilligan failed to exercise reasonable care with respect to the communication to Scott and Olsen.

54. Scott, having no reason to distrust the information Gilligan presented, justifiably relied on the idea that he was communicating with Arizona Escrow.

55. Balbona was, at a minimum, negligent in making the false representation described above.

56. As a result of the falsely presented information, Scott wired $1,378,245.05 to the incorrect recipient.

57. Later, Scott incurred capital gains taxes in an amount of at least $436,880.00 as a result of Gilligan's mistake.

58. As a result of that reliance, Scott suffered extensive pecuniary losses when the closing costs were wired to the incorrect recipient.

## COUNT TWO: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

59. Scott incorporates by reference the allegations in the previous paragraphs.

60. The law implies in every contract the duty of good faith and fair dealing.

61. The duty requires that neither party do anything that prevents the other party from receiving the benefits of the agreement.

62. Balbona, acting as an employee of Gilligan, agreed to be the broker for the transaction on behalf of Scott and Olsen.

63. By acting as the broker for the transaction, Balbona agreed to perform services accurately and correctly, ultimately resulting in Windtech's completed acquisition of Olsen for $1,549,761.03.

64. Ultimately, WindTech was forced to pay much more than the bargained-for acquisition price to complete the transaction.

Kercsmar & O'Hara PLLC
8800 East Raintree Drive, Suite 310
Scottsdale, Arizona 85260
(480) 421-1001

Keesmar & O'Hara PLLC
8800 East Raintree Drive, Suite 310
Scottsdale, Arizona 85260
(480) 421-1001

65.     By implanting John Doe into the situation, Gilligan breached the implied covenant of good faith and fair dealing, denying Scott the rightful benefits of the bargain.

66.     Gilligan's breach of the agreement's covenant of good faith and fair dealing caused Scott damages, for which Scott is entitled to compensation.

## COUNT THREE: NEGLIGENCE

67.     Scott incorporates by reference the allegations in the previous paragraphs.

68.     Balbona is a broker and acted as the Broker for both Olsen and Scott to complete the transaction.

69.     Gilligan is a brokerage and, at all times relevant to these claims, employed Balbona.

70.     Balbona held himself out as a Broker with the capability to manage the transaction.

71.     Under A.A.C. § R4-28-1103(A)-(C) and A.R.S. § 32-2153(A)(21)-(22), Gilligan owed a duty to reasonably supervise, control, review, and manage Balbona during his activities as a broker to the transaction and to refrain from negligent acts.

72.     Under A.A.C. § R4-28-1103(D), Gilligan is responsible for the acts of Balbona acting within the scope of his employment.

73.     Upon information and belief, Gilligan breached that duty when it allowed its systems to be breached, granting John Doe access to its IT systems.

74.     Gilligan also breached that duty when Balbona put Scott and Olsen in contact with John Doe, which led to financial harm to Scott.

75.     If Gilligan or Balbona had not inserted John Doe to the transaction, Scott would not have wired the funds to the incorrect recipient.

76.     As a result of Gilligan's breach of its duty, Scott suffered financial harm in the form of lost funds and additional funds incurred. Accordingly, Scott is entitled to compensation.

## COUNT FOUR: BREACH OF FIDUCIARY DUTY

77.     Scott incorporates by reference the allegations in the previous paragraphs.

78. Because Balbona agreed to represent both Olsen and Scott as broker to the transaction, he owed each a fiduciary duty as a licensed broker.

79. That duty requires Balbona to, among other things, effectively communicate accurate information to Scott and to refrain from grossly negligent or reckless conduct.

80. Gilligan breached its fiduciary duties to Scott through Balbona's failure to properly communicate with the correct individual, thereby making a material representation to Scott, and Gilligan's failure to reasonably manage and control the situation.

81. As a result of Gilligan's and Balbona's (and thus also Gilligan's) breaches, Scott was stripped of the ability to purchase Olsen for the price which he initially negotiated.

82. As a result, Scott suffered damages for which he is entitled to compensation.

### DISCOVERY AND CASE MANAGEMENT TIER

83. Scott seeks sufficient damages to qualify this matter for Tier 3 discovery under Rule 26.2(c)(3).

### JURY DEMAND

84. Plaintiff demands a trial by jury.

### PRAYER FOR RELIEF

WHEREFORE, Scott demands judgment against Gilligan as follows:

A. Compensatory damages in an amount to be proven at trial;

B. Incidental damages in an amount to be proven at trial;

C. An award of attorneys' fees, costs, and other expenses as allowed by law, including under A.R.S. §§ 12-341 and 12-341.01;

D. Pre- and post-judgment interest at the highest rates allowable by law; and

E. Grant such other and further relief as the court deems necessary.

Keremar & O'Hara PLLC
8800 East Raintree Drive, Suite 310
Scottsdale, Arizona 85260
(480) 421-1001

9

DATED this 13th day of November, 2024.

                                KERCSMAR & O'HARA PLLC


                        By: */s/ Sean J. O'Hara*
                                Sean J. O'Hara
                                Carson A. Howard
                                8800 East Raintree Drive, Suite 310
                                Scottsdale, Arizona 85260
                                *Attorneys for Plaintiffs*

Kercsmar & O'Hara PLLC
8800 East Raintree Drive, Suite 310
Scottsdale, Arizona 85260
(480) 421-1001

10

# EXHIBIT A





## LETTER OF INTENT TO PURCHASE BUSINESS ASSETS

March 6, 2024

**Seller:**      Olsen Audio Group, Inc., d.b.a. WindTech
              7845 East Evans Road, Scottsdale, AZ 85260

**Buyer:**       Lee Scott or assignee, 7322 N 4th Drive, Phoenix AZ

**Broker:**      Joe Balbona, Gilligan Commercial LLC
              joe@gilligancommercial.com , Cell #602-390-7237


Re:      Purchase of the Business Known as WindTech

The buyer principal, Lee Scott or nominee/assignee ("Buyer") is pleased to submit this letter of intent ("LOI") regarding the potential acquisition of the business assets of WindTech ("Business"), excluding the ARX America product line, on the following terms and conditions:

A.      The undersigned agree to structure the transaction as follows:

    1.      Seller is designated and identified as follows:  Olsen Audio Group, Inc.

    2.      Buyer is designated and identified as follows: Lee Scott or its assignee.  The Buyer may consummate this deal in their individual capacities or in a company capacity, through a to-be-formed Arizona limited liability company or corporation.

    3.      Business to be sold is described as follows:

    The Business includes the "WindTech" brand, manufacturing equipment, computers, office equipment, intangible assets such as website, vendor lists, customer lists, intellectual property. Inventory on hand as of the Closing Date shall be included in the Purchase Price.

    The Business is operated out of leased space at 7845 East Evans Road, Scottsdale, AZ 85260. Buyer will need to be approved by landlord as tenant and secure a new lease, subject to Buyer's sole approval, as a contingency prior to close of escrow.

Joe Balbona
Gilligan Commercial, LLC
8686 East San Alberto Dr., Suite 100, Scottsdale, AZ 85258

Mobile: 602-390-7237
Fax: 480-590-6601
Joe@gilligancommercial.com



4.    Assets to be Conveyed:  At the Closing, Buyer shall buy, and Seller shall sell and deliver to Buyer all of the assets, including all rights, and interests of every conceivable kind or character, whether tangible or intangible, that on the closing date are owned by Seller or in which Seller has an interest of any kind that are used in the Business. A detailed list of assets included in the sale will be described in the Asset Purchase Agreement.

5.    Excluded Assets:  The following assets shall be excluded from the sale: Seller's bank accounts, accounts receivable / payable, personal items and Seller's personal sound equipment.

6.    Asset Purchase Agreement shall be signed and approved by the parties prior to opening escrow.

B.    Terms and Conditions. Except as set forth in Section B(1)(a), the terms and conditions to the transactions contemplated by this Section B are non-binding and subject to a definitive Asset Purchase Agreement signed by Buyer and Seller:

1.    Purchase Price.  At the closing of the transaction (the "Closing"), subject to the outcome of due diligence, Buyer will pay to Seller the sum of One Million Two Hundred Fifty Thousand USD ($1,250,000) (the "Purchase Price"), as follows:

(a)    Earnest Deposit.  Buyer shall provide an earnest money deposit ("Earnest Deposit") of Twenty-Five Thousand USD ($25,000) within three (3) business days of full execution of the Asset Purchase Agreement, which shall be deposited with:

Annette Anderson, President
Arizona Escrow & Financial Corporation
Annette@arizonaescrow.com
5353 North 16th Street #110
Phoenix, Arizona 85016
(602) 956-2629 main number
(602) 224-9393 fax

Escrow's receipt of the fully executed Asset Purchase Agreement shall be the Open Escrow Date. The Earnest Deposit shall be refundable to Buyer in full if Buyer is not satisfied with Buyer's due diligence investigation during a period of up to thirty (30) days from the Open Escrow Date (Due Diligence Period).

(b) Cash at Closing. One Million Two Hundred Twenty-Five Thousand USD, $1,225,000.

Joe Balbona
Gilligan Commercial, LLC
8686 East San Alberto Dr., Suite 100, Scottsdale, AZ 85258

Mobile: 602-390-7237
Fax: 480-590-6801
Joe@gilligancommercial.com



(c) Financing Contingency. None – this is a cash purchase.

2.      Closing Date. The closing ("Closing Date") for this sale will be on or before Fifteen (15) Days following end of Due Diligence Period, or as may be extended to such other date as the parties may later agree upon in writing.

3.      Transitional Services. Seller agrees to provide two weeks days of post-closing training at no cost and agrees to stay on in a consulting capacity upon terms satisfactory to both Buyer and Seller for a period of one month by phone and email.

4.      Non-Competition. Seller agrees to sign a Non-Competition Agreement with Buyer for a period of five years from the Closing Date.

5.      Third Party Consents and Approvals. Buyer and Seller shall cooperate with each other and proceed, as promptly as is reasonably practicable, to seek to obtain all necessary consents and approvals, if any, from third parties or governmental entities, and to endeavor to comply with all other legal or contractual requirements for, or preconditions to, the execution and consummation of the definitive agreements.

C.      Binding Terms and Conditions. Buyer and Seller hereby agree to the terms and conditions in this Section C, which shall be binding upon the execution of this LOI, and shall survive its cancellation or termination:

1.      Definitive Agreements. Buyer and Seller shall endeavor to complete and sign a definitive Asset Purchase Agreement (the "APA") on or before March 19, 2024. This date may be extended depending on the date of full execution of this LOI. This good faith intention of the parties shall not obligate Buyer or Seller to consummate a transaction if either is not satisfied the terms and conditions of the APA, and in such case, shall deliver a notice of cancellation of this LOI to the other party and Escrow Agent. The APA shall contain customary representations, warranties, covenants and indemnities by Buyer and the Seller.

2.      Due Diligence: Access. Following execution of the APA by Buyer and Seller, Buyer shall have a period of Thirty (30) days to investigate the Business and perform other such due diligence investigations as Buyer in its sole discretion deems necessary in the purchase of the Business ("Due Diligence"). Seller agrees and acknowledges that time is of the essence in the performance of Buyer's Due Diligence and agrees to use its best efforts to fully cooperate with Buyer in the conduct of the Due Diligence.  Buyer will cooperate with Seller in conducting Due Diligence in a reasonable manner during

Joe Balbona
Gilligan Commercial, LLC
8686 East San Alberto Dr.  Suite 100, Scottsdale, AZ 85258

Mobile: 602-390-7237
Fax: 480-590-6601
Joe@gilligancommercial.com



normal business hours as directed by Seller to minimize any possible disruption to Seller's operations. If at any time prior to the expiration of the Due Diligence Period, the results of Buyer's Due Diligence investigation are not fully satisfactory to Buyer for any reason in its sole discretion, Buyer shall notify Seller within one day of ceasing its Due Diligence investigation that Buyer is canceling escrow. Buyer's failure to notify Seller of Buyer's cancelation prior to the expiration of the Due Diligence period shall be deemed Buyer's waiver of Buyer's Due Diligence investigation contingency.

3.      No-Shop. Effective upon the signing of this LOI and in consideration of the expense and effort to be expended by Buyer in conducting its Due Diligence investigation and the APA negotiation, neither Seller nor its attorneys, agents, representatives, brokers or affiliates will, directly, indirectly or otherwise, solicit or entertain offers from, negotiate with or in any manner encourage, discuss, accept or consider any proposal of any other person or entity relating to a transaction for the sale, transfer or consolidation of the Seller's assets or equity interests until the earlier to occur of (i) the Closing, or (ii) the date that either party shall notify the other party of the cancellation of this LOI and/or the APA pursuant to the terms of this Section C, or (iii) the date which Buyer and Seller mutually agree in writing to discontinue negotiations regarding the APA.

4.      Confidentiality. Buyer and Seller each covenant and agree that, except as consented to by the parties, neither they nor any of their respective officers, directors, employees, agents or representatives will disclose any confidential information of the other to any third party, except (i) as required by law, or (ii) to a party's accountants, lawyers, employees, advisors, and representatives in connection with evaluating whether to proceed with negotiating and closing the transactions contemplated herein, or (iii) in connection with obtaining consents required by the APA. The confidentiality agreements contained herein are in addition to and not in lieu of any confidentiality agreements already signed and binding the parties hereto.

5.      Costs. Buyer and Seller shall be responsible for and bear all of their own costs and expenses incurred at any time regarding the proposed transaction, including expenses of their respective representatives, in connection with pursuing, ceasing pursuing, or consummating the proposed transaction.

6.      Closing. The parties acknowledge that time is of the essence in concluding the transactions contemplated in this LOI, and that the Closing of the transactions contemplated herein will occur as soon as practical after the expiration of the Due Diligence Period, and in no event later than Fifteen (15) days thereafter.

7.      Time. Time is of the essence with respect to this LOI.

Joe Balbona
Gilligan Commercial, LLC
8686 East San Alberto Dr., Suite 700, Scottsdale, AZ 85253

Mobile: 602-390-7237
Fax: 480-590-6601
Joe@gilligancommercial.com



8.      Counterparts. This LOI may be executed in separate counterparts, none of which need contain the signatures of all parties, each of which shall be deemed to be an original, and all of which taken together constitute one and the same instrument. Telecopied, scanned , or facsimile signatures shall be deemed to have the same effect as an original.

9.      Real Estate Brokers: Seller and Buyer hereby acknowledge and confirm there are no brokers other than Joe Balbona, Gilligan Commercial, LLC which is acting as exclusive agent for the Seller and Buyer.  Broker's fee is paid by Seller.

This LOI will expire and no longer be valid unless executed by both Seller and Buyer and delivered to each party hereto by personal delivery, email or fax, no later than February 16, 2024. We look forward to completing this transaction.

If you are in agreement with the foregoing as a basis for negotiating definitive agreements between Buyer and Seller with respect to the matters set forth herein, please execute below and return it to me.

Sincerely yours,

*Joe Balbona*

Joe Balbona
Associate Broker

**BUYER:**                                    **SELLER:**

_Lee Scott (Mar 6, 2024 19:42 CST)_

Lee Scott                                     Craig N Olsen           Leslee Olsen
                                              Olsen Audio Group Inc.  Olsen Audio Group Inc.

06/03/2024

Date                                          Date                    Date

Joe Balbona
Gilligan Commercial, LLC
8686 East San Alberto Dr., Suite 100, Scottsdale, AZ 85258

Mobile: 602-390-7237
Fax: 480-590-6601
Joe@gilligancommercial.com

# Olsen Audio - Lee Scott LOI_2024.03.06

Final Audit Report                                                2024-03-07

| | |
|---|---|
| Created: | 2024-03-07 |
| By: | Joe Balbona (joe@gilligancommercial.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAg-iyK0EOJFcTF5J3yVWy_a3Z5RZ9qPmU |

## "Olsen Audio - Lee Scott LOI_2024.03.06" History

📄 Document created by Joe Balbona (joe@gilligancommercial.com)
2024-03-07 - 1:26:38 AM GMT

📧 Document emailed to Lee Scott (skipla24@hotmail.com) for signature
2024-03-07 - 1:26:42 AM GMT

📄 Email viewed by Lee Scott (skipla24@hotmail.com)
2024-03-07 - 1:35:22 AM GMT

🖋 Signer Lee Scott (skipla24@hotmail.com) entered name at signing as Lee Scott
2024-03-07 - 1:42:18 AM GMT

🖋 Document e-signed by Lee Scott (skipla24@hotmail.com)
Signature Date: 2024-03-07 - 1:42:20 AM GMT - Time Source: server

✔ Agreement completed.
2024-03-07 - 1:42:20 AM GMT

**Adobe Acrobat Sign**

# EXHIBIT B



## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT (this "Agreement") is made as of April ____, 2024 by and among Lee Scott, or assignee ("Buyer") and Olsen Audio Group Inc., an Arizona corporation ("Seller").

### RECITALS

A.    Seller is engaged in the business of operating WindTech (the "Business") which is located at 7845 East Evans Road, Scottsdale, Arizona, 85260 (the "Premises").

B.    Seller desires to sell to Buyer, and Buyer desires to purchase from Seller, substantially all the assets of Seller used in the operation of the Business.

### AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth herein and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto hereby agree as follows:

1.    SALE AND PURCHASE OF ASSETS.

(a)    Subject to the terms and conditions of this Agreement, at the Closing, Seller agrees to sell, convey, transfer, assign and deliver to Buyer, and Buyer agrees to purchase from Seller, all of Seller's right, title and interest in and to all of the assets used in the Business, including without limitation, the "WindTech" brand, manufacturing equipment, back office computers, office equipment, intangible assets such as website, vendor lists, customer lists and other intellectual property used in connection with the Business, except for the Excluded Assets (as defined below) (collectively, the "Assets"), free and clear of all liens, mortgages, pledges, charges, claims, encumbrances, debts, security interests or other restrictions of any kind or nature.

2.    EXCLUDED ASSETS.    The Assets shall not include Seller's bank accounts, accounts receivable / payable, personal items and personal computers / sound equipment, the "Olsen Audio" name and the ARX America product line (the "Excluded Assets").

3.    ASSUMPTION OF LIABILITIES. Buyer shall not assume, and Seller agrees that Buyer shall not be liable or otherwise responsible for any liabilities of Seller.

4.    PAYMENT CONSIDERATION.

(a)    Purchase Price. Buyer agrees to pay One Million Four Hundred Thousand Dollars ($1,400,000) as consideration for the Assets (the "Purchase Price"). Inventory, at Seller's cost as of the Closing date, shall be in addition to the Purchase Price.

(b)    Payment of Purchase Price. The Purchase Price is payable as follows:

(i)    Earnest Deposit. $ 25,000, to be deposited with Escrow Agent within three (3) days following execution of this Agreement, at which time escrow shall be opened ("Opening of Escrow");

1 of 10

(ii)    Closing Payment. $ 1,375,000 to be deposited with Escrow Agent on or before Close of Escrow ("Closing Consideration") in the form of a wire transfer, or other immediately available funds; and

(c)    Allocation of Purchase Price.

(i)    Agreed Allocation. Allocation of the Purchase Price among the Assets, which the parties agree shall be used in reporting the transaction contemplated by this Agreement for federal and state tax purpose (the "Agreed Allocation") shall be:

| | |
|---|---|
| Goodwill: | $1,150,000 |
| Equipment: | $  250,000 |
| Total | $1,400,000 |

(d)    Pro-Rations. All items of income or expense regarding the Assets or the Business, which properly apply to periods commencing prior to the Closing Date and ending on or after the Closing Date, shall be pro-rated between Seller and Buyer as of the close of business on the day prior to the Closing Date.  Such items shall include, to the extent applicable, work in process, lease payments (including common area impounds and property taxes) and utility expenses.

Seller shall be entitled to any revenue earned prior to the Closing Date and shall be responsible for any costs and expenses of the Business incurred prior to the Closing Date.

Buyer shall be entitled to any revenue earned on or after the Closing Date and shall be responsible for any costs and expenses incurred for the Business on or after the Closing Date.

To the extent that sufficient information is not available prior to the Closing Date to complete pro-ration calculations at that time, the parties agree to cooperate in good faith to complete a final reconciliation within thirty (30) days following the Closing Date.

5.    DUE DILIGENCE. Buyer shall be satisfied with Buyer's investigations and inspections of the Business and all such information and documents provided by Seller. Buyer may elect to cancel Agreement at any time during the Due Diligence Period by giving written notice thereof to Seller and Escrow Agent, and in such event, this Agreement will terminate immediately and Escrow Agent shall thereupon deliver the Earnest Deposit to Buyer. The Due Diligence Period shall commence upon the Opening of Escrow and shall terminate April __10__ , 2024.

6.    ESCROW. The parties hereby appoint Arizona Escrow & Financial Corp., 5353 N 16th Street, #110, Phoenix, AZ 85016, Annette Anderson, President, 602-956-2629 as Escrow Agent, and agree to execute Escrow Agent's escrow instructions consistent with this Agreement.

7.    CLOSING.

(a)    Time and Place of Closing. The transaction contemplated by this Agreement shall be consummated on or before May __15__ 2024 (the "Close of Escrow" or the "Closing") per Escrow instructions. The Closing may be extended upon the mutual written agreement of the parties.



(b)    Deliveries at Closing.  At the Closing, subject to the terms and conditions herein contained,

 (i)    Seller will deliver to Buyer duly executed copies of:

  (A)    Bill of Sale in the form attached hereto as Exhibit A;

  (B)    all other instruments or documents as Buyer may reasonably request to effect the conveyance and assignment of the Assets as contemplated hereby.

 (ii)    Buyer will deliver or cause to be delivered to Seller:

  (A)    the Closing Consideration by wire transfer to Escrow of immediately available funds.

  (B)    all other instruments or documents as Seller may reasonably request to effect the conveyance and assignment of the Assets as contemplated hereby.

(c)    Transitional Services:  Seller agrees to provide two weeks of post-closing training at no cost and agrees to stay in a consulting capacity upon terms satisfactory to both Buyer and Seller for a period of one month via phone and email.


8.    REPRESENTATIONS AND WARRANTIES OF SELLER.  As of the date hereof and as of the Closing, Seller and Seller's principals, as acknowledged below, jointly and severally, represent and warrant to Buyer the following with the understanding that Buyer is relying upon these representations and warranties, which the parties acknowledge to be material to this Agreement:

(a)    Organization & Authority. Seller is a legal entity duly organized and validly existing under the laws of the State of Arizona and has the corporate power and authority to carry on the Business.

(b)    Title to Assets.  At Close of Escrow, Buyer will receive good and marketable title to and the right to use all of the Assets.

(c)    Condition of Assets.  The Assets as set forth are as-is and in good working condition.

(d)    Ordinary Course. Through the Closing, Seller will have conducted the Business in the usual and ordinary course and not taken or omitted to take any action with respect to the Business that would have a material adverse impact upon the Assets.

(e)    Accounts Payable.  Seller has timely paid or will timely pay on or before Closing any and all accounts payable and other liabilities properly owed and due and payable by Seller for all periods prior to the Closing in connection with the operation of the Business.

(f)    Employee Matters.  All employees of Seller are the responsibility of Seller. Buyer shall not have any obligation or responsibility with respect thereto. Seller has (i) paid all 



wages, salaries, bonuses and commissions for periods through and including the Closing to its employees, (ii) withheld and paid over to the proper tax authorities all taxes (including state and federal income, FICA and FUTA taxes) required to be withheld or paid, and (iii) paid all contributions required to be made with respect to unemployment and worker's compensation.

(g) No Conflicts. Neither the execution and delivery by Buyer of this Agreement or any of the documents or instruments contemplated herein, nor the consummation by Buyer of the transactions contemplated herein will conflict with or result in a breach or violation of any term, condition or provision of any document, agreement or instrument to which Buyer is bound.

(h) Approvals. All actions required by Seller for the execution of this Agreement and the consummation of all transactions provided for herein have been duly authorized. No consent is required for the execution and delivery by Seller of this Agreement or any document or instrument contemplated herein, the performance of its obligations hereunder or thereunder and the consummation by Seller of the transactions contemplated herein.

(i) Legal Proceedings or Disputes. There are no actions, suits, or proceedings pending or threatened against or affecting any of the Seller, any of the Assets or the Business in or before any court or any federal, state, municipal or governmental department, commission, board, bureau, agency, or instrumentality.

(j) True & Accurate. All representations and warranties of Seller set forth in this Agreement, all related documents and in all written statements delivered by Seller to Buyer are true and correct.

9. REPRESENTATIONS AND WARRANTIES OF BUYER. As of the date hereof and as of the Closing, Buyer represents and warrants to Seller as follows:

(a) No Conflicts. Neither the execution and delivery by Buyer of this Agreement or any of the documents or instruments contemplated herein, nor the consummation by Buyer of the transactions contemplated herein will conflict with or result in a breach or violation of any term, condition or provision of any document, agreement or instrument to which Buyer is bound.

(b) Approvals. No consent, authorization, order or approval of, or filing or registration with any governmental authority is required for the execution and delivery by Buyer of this Agreement or any document or instrument contemplated herein, the performance of his obligations hereunder or thereunder, or the consummation by Buyer of the transactions contemplated herein; and

(c) True & Accurate. All representations and warranties of Buyer set forth in this Agreement, all related documents and in all written statements delivered by Buyer to Seller are true and correct.

10. COVENANTS OF SELLER. Seller covenants and agrees to each of the following:

(a) Access to Information. Buyer shall have full access at reasonable times to the Business, all records of Seller relating to the Business and the Assets so that Buyer may have



the full opportunity to perform Buyer's due diligence investigations. Seller shall furnish or cause to be furnished to Buyer and Buyer's representatives all data and information concerning the Business, its Customers and the Assets that may reasonably be requested by Buyer.

(b)     Release of Liens.  As of the Closing, Seller shall have obtained a release or waiver of any and all security interests or liens (whether or not recorded or perfected), shall have fully satisfied all Liabilities not assumed by Buyer, and shall have delivered documents satisfactory in form to counsel for Buyer reflecting such release or satisfaction.

(c)     Payment of Taxes.  Seller will pay all transaction privilege and other taxes, and all other governmental charges levied against it and those levied upon the Assets as of the Closing.

11.     Conditions Precedent to Closing.  The obligations of the parties to consummate this Agreement and the transactions contemplated herein are subject to the satisfaction, at or before the Closing, of all the conditions set forth herein below. On or before the Closing, the following conditions must be fulfilled:

(a)     Material Adverse Change.  There shall not have been any material adverse change in the Business, Assets, operations or prospects of Seller or, if there is any such material adverse change, Seller shall have delivered written notice to Buyer of such adverse change(s) and Buyer shall have either acknowledged such adverse change(s) and waived all objections, or shall within three (3) days after receipt of Seller's notice, delivered a notice of cancellation  of this Agreement to Seller and Escrow Agent.

(b)     Lease Contingency.  Buyer shall obtain and approve a lease of the Premises.

(c)     Failure to Satisfy Contingencies.  If Buyer elects to cancel this Agreement in the manner provided herein, then this Agreement and the escrow shall terminate, the full amount of the Earnest Deposit will be returned to Buyer, and thereafter neither party shall have any further obligation or liability hereunder to the other party, except for any indemnifications and obligations which, by their terms, survive termination of this Agreement.

12.     Further Assurances.  Seller and Buyer agree to execute any further documents necessary to effect and implement the purposes of this Agreement.

13.     Confidentiality.  Buyer and Seller Parties hereby acknowledge and agree that (a) all information material to the operation of the Business and the Assets, (b) related to the negotiations and dealings between them in relation to this Agreement, (c) this Agreement and its Exhibits, and (d) all material information shared or disclosed by each of them in connection with or related to this Agreement and the transaction contemplated hereby, is confidential in nature (collectively, the "Confidential Information").

The parties shall, at all times, (i) hold in strict confidence and not disclose any Confidential Information to any third party, (ii) not use the Confidential Information to damage the business or relationships of the other party, and (iii) comply with all reasonable security measures requested in writing by the other party.



The term "Confidential Information" does not include information which is or becomes generally available to the public other than as a result of a disclosure by the party obligated to confidentiality.

14.    Non-Competition; Non-Solicitation.

(a)    Non-competition.  For a period of five (5) years from the Closing Date ("Applicable Period"), each of Craig N. Olsen and Leslee H. Olsen agree not to, either directly or indirectly, as an employee, officer, director, partner, member, shareholder, principal, manager, advisor, consultant, or owner, engage in, continue in or be employed by, consult with or advise any other person or entity with respect to business activities that are competitive with the Business.

(b)    Non-solicitation of Clients.  During the Applicable Period, neither Seller, nor Craig N. Olsen and Leslee H. Olsen, nor any entity or entities in which any or all of them shall have an interest or be employed, shall solicit or accept the business of any of the Business's past or present clients, or any person who is being actively pursued by Buyer to become a client, or seek to induce them to breach, violate, or terminate any existing agreements with the Business or Buyer, excepting as an employee, agent or contractor of Buyer for or on behalf of Buyer.

(c)    Non-solicitation of Employees. During the Applicable Period, neither Seller, Craig N. Olsen and Leslee H. Olsen nor or any entity in which any or all of them shall have an interest, either direct or indirect, shall actively recruit for employment or engagement any existing employee, officer, or agent of the Business who is then employed or engaged at the Business, or cause or attempt to cause any employee, officer, or agent to terminate his or her relationship with Buyer, without Buyer's prior written consent.

15.    Indemnification.

(a)    Indemnification by Seller.  Seller agrees to indemnify, defend and hold harmless Buyer, its officers, managers, members, agents, attorneys, successors and assigns, for, from and against any and all actions, claims, liabilities, damages, penalties, deficiencies, losses, costs, taxes, interest, fines, penalties, and expenses (including reasonable attorneys' and experts' fees and court costs) of every kind and nature arising out of, resulting from, related to or in connection with:

(a)    any misrepresentation, omission, or any material breach of any representation, warranty, or covenant, made by Seller contained in this Agreement or in any document related to the transaction contemplated hereby;

(b)    any non-performance, failure to comply, or breach of or default in any material respect by any of the Seller of any covenant, promise, or agreement made by any of them contained in this Agreement or in any document related to the transaction contemplated hereby;

(c)    any debts, obligations, duties, and liabilities of Seller Parties which relate to the business activity of the Business which arises prior to the Closing Date;

(d)    any matter, act, thing, or occurrence caused by or resulting from any act or omission of any Seller Party with respect to the Business or its assets prior to the Closing;

(e)    any Excluded Liabilities or any Excluded Assets.

(b)    <u>Indemnification by Buyer</u>.  Buyer agrees to indemnify, defend and hold harmless Seller, their agents, attorneys, successors and assigns, for, from and against any and all actions, claims, liabilities, damages, penalties, deficiencies, losses, costs, taxes, interest, fines, penalties, and expenses (including reasonable attorneys' and experts' fees and court costs) of every kind and nature arising out of, resulting from, related to or in connection with:

(a)    any misrepresentation, omission or breach in any material respect by Buyer of any representation or warranty contained in this Agreement or in any document related to the transaction contemplated hereby;

(b)    any non-performance, failure to comply, or breach of or default in any material respect by Buyer of any covenant, promise, or agreement contained in this Agreement or in any document related to the transaction contemplated hereby;

(c)    any debts, obligations, duties, and liabilities of Buyer which relate to the business activity of the Business which arises after the Closing Date;

(d)    any matter, act, thing, or occurrence caused by or resulting from any act or omission of Buyer with respect to the Business or the Assets after the Closing.

16.    <u>Notices</u>.  All notices and other communications that are required or permitted to be given to the parties under this Agreement shall be sufficient in all respects if given in writing and delivered in person, by overnight courier, or by certified or priority mail, postage prepaid, return receipt requested, to the receiving party at the following address:

If to Seller Parties:    14019 N 29th Pl., Phoenix, AZ 85032
Craig N. Olsen
craigo@olsenaudio.com
602.228.5774
Leslee H. Olsen
lo2@olsenaudio.com
602.228.5839

If to Buyer:    7322 N. 4th Dr., Phoenix AZ
Lee Scott
Skipla24@hotmail.com
925.640.4977

With copy to:    Gilligan Commercial, LLC
Joe Balbona, Broker
joe@gilligancommercial.com
602.390.7237

or to such other addresses as such party may have given to the other party by notice pursuant to this <u>Section 16</u>.



Notice shall be deemed given on (a) the date such notice is personally delivered, (b) three (3) business days after the mailing if sent by certified mail or (c) one (1) business day after the date of delivery to the overnight courier if sent by overnight courier, or the date of delivery if sent by priority mail.

17.     Brokers and Finders.  Each party to this Agreement represents and warrants to the other that, except for Joe Balbona, Gilligan Commercial, LLC, and who will be compensated by Seller pursuant to a separate agreement, he/it has not employed any broker or finder in connection with the transactions contemplated by this Agreement.

18.     Expenses.  Each party to this Agreement will bear its respective expenses incurred in connection with the preparation, execution and performance of this Agreement.

19.     Attorneys' Fees.  In the event any legal proceeding, the substantially prevailing party shall be entitled to recover reasonable attorneys' fees in addition to any other relief to which it or they may be entitled.

20.     Survival.  Regardless of any investigation at any time made by or on behalf of any party hereto, or of any information any party may have in respect thereof, all covenants, agreements, representations, and warranties made hereunder or pursuant hereto or in connection with the transaction contemplated hereby shall survive the Closing.  In particular, but not in limitation of the foregoing, the provisions of Sections 4(c), 7, 8, 9, 10, 13, 14, 15, and 21 shall survive the Closing.

21.     Amendment.  This Agreement may be amended only by an instrument in writing executed by all parties hereto.

22.     Entire Agreement.  This Agreement and Exhibits attached hereto constitute the entire agreement between the parties as to the subject matter herein, and no covenants, promises, representations, or warranties have been made or are being relied upon by either party except as expressly set forth herein.  This Agreement supersedes any prior understandings and agreements, written or oral, respecting the subject matter hereof.

23.     Choice of Law and Forum.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of Arizona regardless of any Laws that might otherwise govern under applicable principles of conflicts of laws thereof.

24.     Assignment.  Buyer may designate an entity owned or controlled by Buyer as his nominee and assign this Agreement to such nominee, provided that Buyer shall remain liable under the terms of this Agreement.  Seller Parties may not assign this Agreement without Buyer's prior written consent.

25.     Binding Effect.  This Agreement is and shall be binding upon the successors and assigns of each of the parties hereto.

26.     Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which shall constitute the same instrument.



27. <u>Other</u>:  Seller can maintain use of the equipment storage room for up to one year or as agreed by the Parties.


IN WITNESS WHEREOF, Seller and Buyer have executed this Agreement as of the day and year first above written.

**SELLER:**

Olsen Audio Group Inc. an Arizona corporation

By:_____
    Craig N. Olsen, Shareholder, President

By:_____
    Leslee H. Olsen, Shareholder

**BUYER:**

Lee Scott, an Individual

By:_____
    Lee Scott

By:_____



## EXHIBIT A

## BILL OF SALE

THIS BILL OF SALE, dated as of _____, 2024 is being delivered pursuant to that certain Asset Purchase Agreement dated _____, 2024 (the "Agreement"), by and among Olsen Audio Group Inc. an Arizona  corporation and Scott Lee, an Individual.

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Seller grants, transfers, sells, assigns, conveys and delivers to Buyer all of their right, title and interest in and to the tangible personal property included in the Assets (as defined in the Agreement), to have and to hold the same unto Buyer, his/its heirs, successors and assigns, forever.

IN WITNESS WHEREOF, this Bill of Sale is executed by the Seller as of the date first written above.

SELLER:

Olsen Audio Group Inc. an Arizona
corporation

By:_____
       Craig N. Olsen, Shareholder, President

Acknowledged:

BUYER:

By:_____
       Lee Scott, an Individual



# EXHIBIT C





May 31, 2024

**AMENDMENT #1**

This Amendment #1 is originated by Buyer.

| | |
|---|---|
| **Escrow Company:** | **Arizona Escrow & Financial Corporation** |
| **Escrow:** | **# 24-0282** |
| **Business Name:** | **WindTech** |
| **Buyer:** | **Lee Scott or assignee** |
| **Seller:** | **Olsen Audio Group, Inc.** |
| **Escrow Open Date:** | **April 12, 2024** |

The following additional terms and conditions are hereby revised in the Asset Purchase Agreement between Buyer and Seller for the above referenced transaction:

1. **Closing Date shall be extended from June 1, 2024 until Buyer's closing funds are available following a fraudulent wire transfer, but not later than July 1, 2024.**

2. **All other terms and conditions remain unchanged.**

**AGREED:**

**Seller:**                                           **Buyer:**

_____                _____
**Craig N. Olsen, President**                **Lee Scott, an individual**
**& Shareholder**

_____
**Leslee H. Olsen, Shareholder**

Joe Balbona
Gilligan Commercial, LLC
8777 E Via de Ventura, Suite 150, Scottsdale, AZ 85258

Mobile: 602-390-7237
Fax: 480-590-6601
Joe@gilligancommercial.com

Signature:

Lee Scott (May 31, 2024 19:56 PDT)

Email:  lee@windtechaudio.com

Signature:  _Craig Olsen_

Craig Olsen (May 31, 2024 19:47 PDT)

Email:  craigo@olsenaudio.com

Signature:

Email:  lo2@olsenaudio.com

# EXHIBIT D



Kercsmar & O'Hara
A Litigation Boutique



**From:** Joe Balbona <joe@gilligancommercial.com>
**Date:** Tuesday, May 28, 2024 at 7:14 AM
**To:** Lee Scott <lee@windtechaudio.com>
**Cc:** Darci Finsterwalder <darci@arizoonaescrow.com>, Olsen Audio Group, Inc. <craigo@olsenaudio.com>
**Subject:** Re: Consent to Assignment - Olsen Audio to Windtech Audio Inc. 7845 E Evans E1_[1]

Good Morning Darci

Please could you have the final closing statement sent on here  per lees email.

Thanks

**Joe Balbona**

Associate Broker

Gilligan Commercial, LLC

8777 E Via de Ventura, Suite 160

Scottsdale, AZ 85258

Cell: 602-390-7237

Joe@GilliganCommercial.com

www.linkedin.com/in/joe-balbona-2019

---

**From:** Lee Scott <lee@windtechaudio.com>
**Sent:** Friday, May 24, 2024 1:04 PM
**To:** Darci Finsterwalder <Darci@arizonaescrow.com>
**Cc:** Olsen Audio Group, Inc. <craigo@olsenaudio.com>; Annette Telfer <annette@telfer-cpa.com>; Joe Balbona <joe@gilligancommercial.com>
**Subject:** Re: Consent to Assignment - Olsen Audio to Windtech Audio Inc. 7845 E Evans E1_[1]

Thank you!

Lee Scott

> On May 24, 2024, at 2:45 PM, Darci Finsterwalder <Darci@arizonaescrow.com> wrote:

> Yes

> Sent from my T-Mobile 4G LTE Device
> Get Outlook for Android

---

> **From:** Olsen Audio Group, Inc. <craigo@olsenaudio.com>
> **Sent:** Friday, May 24, 2024 12:29:43 PM
> **To:** Darci Finsterwalder <Darci@arizonaescrow.com>; Annette Telfer <annette@telfer-cpa.com>
> **Cc:** Joe Balbona <Joe@GilliganCommercial.com>; Lee Scott <skipla24@hotmail.com>
> **Subject:** Consent to Assignment - Olsen Audio to Windtech Audio Inc. 7845 E Evans E1_[1]

> Did you get a copy of this?

> Best regards,

> Craig Olsen

**Olsen Audio Group, Inc.**
**7845 East Evans Road**
**Suite "E"**
**Scottsdale, AZ 85260-2919**
**480-998-7140**
**http://www.olsenaudio.com**
**http://www.windtech.tv**

North American Distributor of
**ARX Systems, PTY, LTD**
**http://www.arxamerica.com**

# EXHIBIT E





**From:** Darci Finsterwalder <darci@arizoonaescrow.com>
**Date:** Tuesday, May 28, 2024 at 12:18 PM
**To:** Joe Balbona <joe@gilligancommercial.com>, Lee Scott <lee@windtechaudio.com>
**Cc:** Olsen Audio Group, Inc. <craigo@olsenaudio.com>
**Subject:** Re: Consent to Assignment - Olsen Audio to Windtech Audio Inc. 7845 E Evans E1_[1]

Good Afternoon,

Attached please find the preliminary settlement statement for the above referenced transactions and wire instructions.

 The amount to be wired by the Buyer by tomorrow  is $1,378,245.05 to allow the funds clear in our escrow account before Friday signing.

Mr Lee, Kindly provide your direct cell number on this email, to enable Mark from account team call you to go over wire instruction's...

I will be sending out the escrow documents for review only by the end of the day as I'm currently away for the rest of the day.  Once approved by all parties I will scan them to the ever-sign portal and will send them out to your email addresses first thing Friday morning for signatures.

Please confirm receipt

Should you have any questions or require anything further, please do not hesitate to contact our office.

Thank you

**Darci Finsterwalder**

Escrow Officer

**Arizona Escrow & Financial Corporation**

5353 North 16th Street #110

Phoenix, AZ 85016

Email: darci@arizonaescrow.com

Phone: 602 399 7508

Fax: 602/224-9393

www.arizonaescrow.com

**\*Please Note\*** Arizona Escrow and Financial Corporation's policy requires that the escrow number be provided in all communications and it must be referenced in the subject line of all emails.  If we do not have this information, it can delay our response to your email.   We appreciate your understanding and cooperation.


**\*\*\*Disclaimer\*\*\*** This email and its content are confidential and intended soley for the use of the addressee.   Please notify the sender if you have received this email in error or simply delete it.

On 05/28/2024 7:14 AM PDT Joe Balbona <joe@gilligancommercial.com> wrote:


Good Morning Darci

Please could you have the final closing statement sent on here  per lees email.

Thanks


**Joe Balbona**

Associate Broker

Gilligan Commercial, LLC

8777 E Via de Ventura, Suite 160

Scottsdale, AZ 85258

Cell: 602-390-7237

Joe@GilliganCommercial.com

www.linkedin.com/in/joe-balbona-2019

---

**From:** Lee Scott <lee@windtechaudio.com>
**Sent:** Friday, May 24, 2024 1:04 PM
**To:** Darci Finsterwalder <Darci@arizonaescrow.com>
**Cc:** Olsen Audio Group, Inc. <craigo@olsenaudio.com>; Annette Telfer <annette@telfer-cpa.com>; Joe Balbona <joe@gilligancommercial.com>
**Subject:** Re: Consent to Assignment - Olsen Audio to Windtech Audio Inc. 7845 E Evans E1_[1]

Thank you!


Lee Scott


> On May 24, 2024, at 2:45 PM, Darci Finsterwalder <Darci@arizonaescrow.com> wrote:
>
> Yes
>
> Sent from my T-Mobile 4G LTE Device
> Get Outlook for Android
> ---
> **From:** Olsen Audio Group, Inc. <craigo@olsenaudio.com>
> **Sent:** Friday, May 24, 2024 12:29:43 PM
> **To:** Darci Finsterwalder <Darci@arizonaescrow.com>; Annette Telfer <annette@telfer-cpa.com>
> **Cc:** Joe Balbona <Joe@GilliganCommercial.com>; Lee Scott <skipla24@hotmail.com>
> **Subject:** Consent to Assignment - Olsen Audio to Windtech Audio Inc. 7845 E Evans E1_[1]
>
> Did you get a copy of this?
>
>
>
> Best regards,

Craig Olsen

**Olsen Audio Group, Inc.**
**7845 East Evans Road**
**Suite "E"**
**Scottsdale, AZ 85260-2919**
**480-998-7140**
[http://www.olsenaudio.com](http://www.olsenaudio.com)
[http://www.windtech.tv](http://www.windtech.tv)

North American Distributor of
**ARX Systems, PTY, LTD**
[http://www.arxamerica.com](http://www.arxamerica.com)

*Darci Finsterwalder*

Escrow Officer

*Arizona Escrow & Financial Corporation*

5353 North 16th Street #110

Phoenix, AZ 85016

Email: [darci@arizonaescrow.com](mailto:darci@arizonaescrow.com)

Phone: 602 399 7508

Fax: 602/224-9393

[www.arizonaescrow.com](http://www.arizonaescrow.com)

**\*Please Note\*** Arizona Escrow and Financial Corporation's policy requires that the escrow number be provided in all communications and it must be referenced in the subject line of all emails.  If we do not have this information, it can delay our response to your email.   We appreciate your understanding and cooperation.

***Disclaimer*** This email and its content are confidential and intended soley for the use of the addressee.   Please notify the sender if you have received this email in error or simply delete it.

# EXHIBIT F





June 19, 2024

### AMENDMENT #2

**This Amendment #2 is originated by Seller:**

| | |
|---|---|
| **Escrow Company:** | **Arizona Escrow & Financial Corporation** |
| **Escrow:** | **# 24-0282** |
| **Business Name:** | **WindTech** |
| **Buyer:** | **Lee Scott or assignee** |
| **Seller:** | **Olsen Audio Group, Inc.** |
| **Escrow Open Date:** | **April 12, 2024** |

The following additional terms and conditions are hereby revised in the Asset Purchase Agreement between Buyer and Seller for the above referenced transaction:

1. Closing Date shall be extended for an additional ~~30~~ 45 days from July 1, 2024 to on or before ~~August 1, 2024.~~ *August 15th 2024*

2. Buyer adds One Hundred Thousand Dollars ($100,000) to Earnest Deposit which is non-refundable and payable toward Purchase Price.

3. All other terms and conditions remain unchanged.

**AGREED:**

**Seller:**

_____

Craig N. Olsen, President
& Shareholder

_____

Leslee H. Olsen, Shareholder

**Buyer:**

_____

Lee Scott, an Individual

Joe Balbona
Gilligan Commercial, LLC
8777 E Via de Ventura., Suite 160, Scottsdale, AZ 85258

Mobile: 602-390-7237
Fax: 480-590-6601
Joe@gilligancommercial.com

« Return to search results

## Case Information

| | | | |
|---|---|---|---|
| **Case Number:** | CV2024-032505 | **Judge:** | Thorson, Erik |
| **File Date:** | 11/13/2024 | **Location:** | Downtown |
| **Case Type:** | Civil | | |

## Party Information

| Party Name | Relationship | Sex | Attorney |
|---|---|---|---|
| Windtech Audio Inc | Plaintiff | | Sean O'Hara |
| Lee Scott | Plaintiff | Male | Sean O'Hara |
| Gilligan Commercial L L C | Defendant | | Pro Per |

## Case Documents

| Filing Date | Description | Docket Date | Filing Party |
|---|---|---|---|
| 11/13/2024 | COM - Complaint | 11/14/2024 | |
| **NOTE:** | Complaint | | |
| 11/13/2024 | CER - Certificate | 11/14/2024 | |
| **NOTE:** | PLAINTIFFS WINDTECH AUDIO INC AND LEE SCOTTS CERTIFICATION REGARDING NECESSITY OF EXPERT TESTIMONY | | |
| 11/13/2024 | CSH - Coversheet | 11/14/2024 | |
| **NOTE:** | Civil Cover Sheet | | |
| 11/13/2024 | CCN - Cert Arbitration - Not Subject | 11/14/2024 | |
| **NOTE:** | Certificate Of Compulsory Arbitration - Is Not Subject To | | |
| 11/13/2024 | SUM - Summons | 11/14/2024 | |
| **NOTE:** | Summons | | |

## Case Calendar

**There are no calendar events on file**

## Judgments

| Date | (F)or / (A)gainst | Amount | Frequency | Type | Status |
|---|---|---|---|---|---|
| **No records found.** | | | | | |

# EXHIBIT B



 100 W Towne Ridge Pkwy
Sandy, UT 84070
(800) 446-2667 | wcf.com

**NOTICE DATE:**
**12/21/2023**

Sandy Desert On Indian School
PO Box 4250
Scottsdale, AZ 85261-4250

# NEW BUSINESS DECLARATIONS:
# BUSINESSOWNERS POLICY

## ABOUT YOUR POLICY

**Policy Number**
4074460

**Policy Period**
12/26/2023 to 12/26/2024 12:01 a.m. Standard Time at your mailing address shown above

**Admitted Status**
Admitted Carrier

**Company Name**
WCF National Insurance Company, a Utah Stock Insurance Corporation, NAIC No. 40517

In return for the payment of premium and subject to all the terms of this policy, we agree with you to provide insurance as stated in this policy. We provide insurance only for those coverages described and for which a specific limit of insurance is shown.

This Declarations of coverage combines with all other policy forms to provide an explanation of the coverage available in this insuring contract. Please review the contract carefully. Note: The limits of coverage listed on this Declarations Page do not combine to form higher amounts of coverage, unless expressly indicated in the other forms constituting this contract.

**Coverage Parts**
Businessowners - Property
Businessowners - Liability
TRIA

**Total**

**Premium**

**SIGNED (DATE)**     **BY AUTHORIZED REPRESENTATIVE**

12/21/2023

 **NEED HELP?**

**Agent**
POWERS-LEAVITT INSURANCE AGENCY INC
111 East Monroe Avenue Suite 200
BUCKEYE, AZ 85326
(623) 386-4452

**To Report A Claim**
(800) 561-8008
wcf.com/file-claim
claims@wcf.com

**WCF Insurance**
(385) 351-8000
(800) 446-2667
wcf.com



**NEW BUSINESS DECLARATIONS:**
**BUSINESSOWNERS POLICY**

Sandy Desert On Indian School
Policy 4074460
Policy Period 12/26/2023 to 12/26/2024
Page 2 of 42

## BUSINESS INFORMATION

**Named Insured:**          Sandy Desert On Indian School

Sandy Desert On Indian School
Gilligan's on Maryland, LLC
Windmill Partners, LLC
Gilligan's Retail Arizona, LLC
Gilligan's on Chandler, LLC
Gilligan's Twin Lakes Market, LLC
J.A. Gilligan Sr. Irrevocable Trust (dated 5/23/08)
Sandy Desert Twin Lakes Market, LLC
Aslan Holdings, LLC
Gilligan Commercial, LLC
Sandy Desert on Copper Basin, LLC
Sandy Desert on Maryland, LLC
Gilligan's Spring Valley, LLC
Sandy Desert on 69, LLC
Sandy Desert Mayer, LLC
Gilligan's on Pecos, LLC
Sandy Desert Spring Valley, LLC
Gilligan's Mayer Market, LLC
Gilligan's on 69, LLC
Gilligan's on Copper Basin, LLC
Gilligan's on Indian School, LLC
Sandy Desert on Pescos, LLC
Sandy Desert on Iron Springs, LLC
Copperfield Partners, LLC
Coyote Lane Holdings, LLC

**Doing Business As (DBA):**          Sandy Desert Mayer LLC

**Business Type:**

| Individual | Joint Venture | Partnership |
| --- | --- | --- |
| Limited Liability Company | Corporation | Other |

**Business Description:**          Convenience Stores - With Gas Sales - Limited Cooking

## DISCOUNTS APPLIED

The following discounts have been applied to your premium:

████████████████

There may be other credits and discounts for which you qualify. Please contact your agent for additional information.

## SURCHARGES AND FEES

**Returned Payments**

A returned payment fee of $20.00 applies for any type of remittance which is not honored by your financial institution for any reason including but not limited to insufficient funds or a closed account.



**NEW BUSINESS DECLARATIONS:**
**BUSINESSOWNERS POLICY**

Sandy Desert On Indian School
Policy 4074460
Policy Period 12/26/2023 to 12/26/2024
Page 35 of 42

# SECTION II - LIABILITY DECLARATIONS

## BUSINESSOWNERS LIABILITY

Each paid claim for the following coverages reduces the amount of insurance we provide during the applicable policy period. Please refer to the policy.

| Coverage | Limit of Insurance | |
|---|---|---|
| Liability and Medical Expenses | $ | 1,000,000 Per Occurrence |
| Medical Expenses | $ | 10,000 Each Person |
| Damage to Premises Rented to You | $ | 300,000 Each Premises |
| Other Than Products/Completed Operations Aggregate | $ | 2,000,000 |
| Products/Completed Operations Aggregate | $ | 2,000,000 |

| Audit Period (If Applicable): | Annual | Semi-Annual | Quarterly | Monthly |
|---|---|---|---|---|

## COVERED PREMISES AND OPERATIONS

| Premises Number | Premises Address |
|---|---|
| 1 | 223 E Indian School Rd Phoenix, AZ 85012-1819 |
| 2 | 1010 E Pecos Rd Chandler, AZ 85225-2425 |
| 3 | 17257 E Spring Valley Rd Mayer, AZ 86333-4203 |
| 4 | 9985 S Hwy 69 Mayer, AZ 86333 |
| 5 | 1105 W Chandler Blvd Chandler, AZ 85224-5202 |
| 6 | 7849 E State Route 69 Prescott Valley, AZ 86314-2272 |
| 7 | 501 Copper Basin Rd Prescott, AZ 86303-4601 |
| 8 | 1253 W Iron Springs Rd Prescott, AZ 86305-1411 |
| 9 | 3122 N State Rd 89A Prescott, AZ 86303 |
| 10 | 2161 Hillsdale Rd Prescott, AZ 86301-4962 |
| 11 | 8686 E San Alberto Scottsdale, AZ 85258-4380 |
| 12 | 6502 N 7th St Phoenix, AZ 85014-1202 |

## BUSINESSOWNERS LIABILITY CLASSIFICATION AND PREMIUM

| Premises | Classification | Exposure | Rates | Premium |
|---|---|---|---|---|



01 60000 07 20



**NEW BUSINESS DECLARATIONS:**
**BUSINESSOWNERS POLICY**

Sandy Desert On Indian School
Policy 4074460
Policy Period 12/26/2023 to 12/26/2024
Page 41 of 42

# POLICY FORMS AND ENDORSEMENTS ATTACHED AT INCEPTION

| Number | Edition | Name |
|---|---|---|
| BP 00 03 | 07 13 | Businessowners Coverage Form |
| BP IN 01 | 07 13 | Businessowners Coverage Form Index |
| BP 05 23 | 01 15 | Cap on Losses from Certified Acts of Terrorism |
| BP 05 15 | 01 15 | Disclosure Pursuant to Terrorism Risk Insurance Act |
| BP 05 42 | 01 15 | Exclusion of Punitive Damages Related to a Certified Act of Terrorism |
| ACORD 60 US | 2015 01 | Policyholder Disclosure Notice of Terrorism Insurance Coverage |
| BP 04 02 | 07 13 | Additional Insured – Managers or Lessors of Premises |
| 01 6201 | 02 22 | Arizona Changes |
| IL N 014 | 09 03 | Arizona Fraud Statement |
| 01 6080 | 04 20 | Business Income Changes - Time Period |
| 01 6055 | 04 20 | Business Income and Extra Expense from Websites |
| 01 6057 | 04 20 | Business Personal Property Off Premises Increased Limits |
| BP 05 01 | 07 02 | Calculation of Premium |
| BP 14 86 | 07 13 | Communicable Disease Exclusion |
| BP 05 47 | 07 13 | Computer Fraud and Funds Transfer Fraud |
| 01 6060 | 04 20 | Customers Property Endorsement |
| BP 14 17 | 01 10 | Designated Location(s) General Aggregate Limit |
| BP 04 98 | 07 13 | Employee Benefits Liability Coverage |
| BP 04 17 | 01 10 | Employment-Related Practices Exclusion |
| 01 6064 | 04 20 | Equipment Breakdown Enhancement Endorsement |
| BP 15 04 | 05 14 | Exclusion - Access or Disclosure of Confidential or Personal Information and Data-Related Liability - with Limited Bodily Injury Exception |
| 01 6003 | 08 22 | Exclusion - Asbestos |
| 01 6006 | 04 20 | Exclusion - Designated Ongoing Operations |
| 01 6014 | 04 20 | Exclusion - Lead |
| 01 7027 | 01 23 | Exclusion - New Construction of Residential Property |
| BP 05 17 | 01 06 | Exclusion - Silica or Silica-Related Dust |
| 01 6066 | 04 20 | Fine Arts Coverage |
| 01 6045 | 04 20 | Grocery Store Property Broadening Endorsement |
| BP 14 01 | 01 10 | Identity Fraud Expense Coverage |
| 01 6001 | 04 20 | Liability Broadening Endorsement |
| BP 04 89 | 01 10 | Liquor Liability Coverage |
| BP 12 03 | 01 10 | Loss Payable Clauses |
| IL T 001 | 05 05 | Lost Policy Release Cancellation Request (IL T 001) |
| BP 04 46 | 07 13 | Ordinance or Law Coverage |
| BP 04 15 | 02 21 | Spoilage Coverage |
| 01 6078 | 04 20 | Tenant Broadening Endorsement |
| BP 04 92 | 07 02 | Total Pollution Exclusion |
| BP 04 93 | 01 06 | Total Pollution Exclusion with a Building Heating Equipment Exception and a Hostile Fire Exception |
| 01 6036 | 04 20 | Two or More Coverage Parts or Policies Issued by Us |
| IL P 001 | 01 04 | US Treasury Department's Office Of Foreign Assets Control (OFAC) Advisory Notice To Policyholders (IL P 001) |
| BP 04 56 | 07 13 | Utility Services - Direct Damage |



**NEW BUSINESS DECLARATIONS:**
**BUSINESSOWNERS POLICY**



Sandy Desert On Indian School
Policy 4074460
Policy Period 12/26/2023 to 12/26/2024
Page 42 of 42

| Number | Edition | Name |
|---|---|---|
| BP 04 57 | 07 13 | Utility Services - Time Element |
| BP 04 53 | 07 13 | Water Back-up and Sump Overflow |

01 60000 07 20



BUSINESSOWNERS
BP P 026 03 20

# CORONAVIRUS – ADVISORY NOTICE TO POLICYHOLDERS

This Notice does not form a part of your insurance contract. No coverage is provided by this Notice, nor can it be construed to replace any provisions of your policy (including its endorsements). If there is any conflict between this Notice and the policy (including its endorsements), the provisions of the policy (including its endorsements) shall prevail.

The following provisions of your policy may affect coverage with respect to a Coronavirus. However, actual determination of coverage depends on the relevant facts and circumstances of each claim. Carefully read your entire policy, including the endorsements attached to your policy. If you have questions, please contact your producer, agent or insurer.

- **Covered Causes Of Loss:** The Covered Causes of Loss are established as direct physical loss unless the loss is excluded or limited under Section I – Property.

- **Virus Or Bacteria Exclusion:** There is no coverage for loss or damage caused directly or indirectly by any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

- **Additional Coverages:** To the extent that loss or damage is not excluded, the following Additional Coverages are provided:

    - **Business Income:** Coverage is provided for the actual loss of Business Income you sustain due to the necessary suspension of your operations during the period of restoration. The suspension must be caused by direct physical loss or damage to property at the described premises and must be caused by or result from a Covered Cause of Loss. Unless otherwise noted, coverage is provided for Business Income losses that occur within 12 consecutive months from the date of direct physical loss or damage and commences 72-hours after the related loss or damage.

    - **Extra Expense:** Coverage is provided for necessary Extra Expense you incur during the period of restoration that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. Unless otherwise noted, coverage is provided for Extra Expenses that occur within 12 consecutive months from the date of direct physical loss or damage and commences immediately after the related loss or damage.

    - **Civil Authority:** When a Covered Cause of Loss causes damage to property other than property at the described premises coverage is provided for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises. Unless otherwise noted, coverage for Business Income applies for a period of up to four consecutive weeks and begins 72-hour after the time of the first action of related civil authority. Coverage for Extra Expense begins immediately after the time of the first action of civil authority that prohibits access to your premises lasts for a period of up to four consecutive weeks or when your Civil Authority Business Income ends, whichever is later.

    - **Business Income From Dependent Properties:** Coverage is provided for the actual loss of Business Income you sustain due to physical loss or damage at the premises of a dependent property or secondary dependent property caused by or resulting from any Covered Cause of Loss. Unless otherwise noted, coverage begins 72 hours after the time of direct physical loss or damage and ends on the date when the related property should be repaired, rebuilt or replaced with reasonable speed and similar quality.

The following coverage is available via a food contamination endorsement as well as a class-specific restaurants endorsement:

- **Food Contamination:** Includes coverage with respect to various expenses, the cost to replace food and loss of certain Business Income if your business is ordered closed by the Board of Health or any other governmental authority as a result of the discovery or suspicion of food contamination. Such contamination is defined to include food which has been contaminated by virus or bacteria transmitted through one or more of your employees. The Virus Or Bacteria exclusion contained in your policy does not apply with respect to this coverage.



**BUSINESSOWNERS**
**BP IN 01 07 13**

# BUSINESSOWNERS COVERAGE FORM INDEX

This index is provided only as a convenience. It should not be assumed to provide a reference to every provision that can affect a question, claim or coverage. To determine the full scope of coverage and pertinent restrictions and exclusions, the policy (including endorsements) must be read in its entirety. The features may also be affected by related provisions not referenced at all in the index, or noted elsewhere in it. For instance, an **Exclusion** feature addresses a specific policy exclusion; but restrictions of coverage and exclusions also appear within the areas where coverage, covered causes of loss, etc., are described.

| Businessowners Coverage Feature | Page Number | Businessowners Coverage Feature | Page Number |
|---|---|---|---|
| Abandonment Property Loss Condition | 24 | Business Liability Coverage | 34-36 |
| Accounts Receivable Coverage Extension | 16 | Business Personal Property Coverage | 1-2 |
| Accounts Receivable Exclusion | 22 | Business Personal Property Limit – Seasonal Increase (Limit Of Insurance) | 23 |
| Acts Or Decisions Exclusion | 22 | Business Personal Property Temporarily In Portable Storage Units Coverage Extension | 17 |
| Additional Coverages | 3-14 | Cancellation Condition | 50 |
| Additional Exclusion – Loss Or Damage To Products Exclusion | 22 | Certain Computer-related Losses Exclusion | 19 |
| "Advertisement" Definition | 46 | Changes Condition | 51 |
| Aggregate Limits (Liability And Medical Expenses Limits Of Insurance) | 45 | Changes In Or Extremes Of Temperature Exclusion | 21 |
| Aircraft, Auto Or Watercraft Exclusion | 38-39 | Civil Authority Additional Coverage | 8-9 |
| Appraisal Property Loss Condition | 24 | Collapse Additional Coverage | 5-6 |
| "Auto" Definition | 46 | Collapse Exclusion | 21 |
| Bankruptcy General Condition | 45 | "Computer" Definition | 32 |
| "Bodily Injury" Definition | 46 | Concealment, Misrepresentation Or Fraud Condition | 51 |
| Building Coverage | 1 | Consequential Losses Exclusion | 20 |
| Building Limit – Automatic Increase (Limits Of Insurance) | 23 | Continuous Or Repeated Seepage Or Leakage Of Water Exclusion | 21-22 |
| Business Income Additional Coverage | 6-7 | Contractual Liability Exclusion | 36 |
| Business Income And Extra Expense Exclusions | 22 | Control Of Property General Condition | 28 |
| Business Income From Dependent Properties Additional Coverage | 10-11 | "Counterfeit Money" Definition | 32 |

| Businessowners Coverage Feature | Page Number | Businessowners Coverage Feature | Page Number |
|---|---|---|---|
| Coverage Extension – Supplementary Payments (Business Liability Coverage) | 35-36 | Employer's Liability Exclusion | 37 |
| Coverage Extensions – Section I – Property | 14-17 | Equipment Breakdown Protection Optional Coverage | 31-32 |
| "Coverage Territory" Definition | 46-47 | Errors Or Omissions Exclusion | 21 |
| Covered Causes Of Loss | 2 | Examination Of Your Books And Records Condition | 51 |
| Covered Property | 1-2 | Exclusions – Section I – Property | 17-22 |
| Damage To Impaired Property Or Property Not Physically Injured Exclusion | 40 | Exclusions – Section II – Liability | 36-44 |
| Damage To Property Exclusion | 40 | "Executive Officer" Definition | 47 |
| Damage To Your Product Exclusion | 40 | Expected Or Intended Injury Exclusion | 36 |
| Damage To Your Work Exclusion | 40 | Exposed Property Exclusion | 20 |
| Dampness Or Dryness Of Atmosphere Exclusion | 21 | Extended Business Income Coverage (Business Income Additional Coverage) | 7 |
| Debris Removal Additional Coverage | 3-4 | Extra Expense Additional Coverage | 7-8 |
| Deductibles | 23-24 | False Pretense Exclusion | 20 |
| Dishonesty Exclusion | 20 | Fire Department Service Charge Additional Coverage | 5 |
| Duties In The Event Of Loss Or Damage Property Loss Condition | 24 | Fire Extinguisher Systems Recharge Expense Additional Coverage | 11-12 |
| Duties In The Event Of Occurrence, Offense, Claim Or Suit General Condition | 46 | Forgery Or Alteration Additional Coverage | 9 |
| Earth Movement Exclusion | 17-18 | Frozen Plumbing Exclusion | 20 |
| Electrical Apparatus Exclusion | 19-20 | "Fungi" Definition | 32 |
| Electrical Disturbance Exclusion | 21 | "Fungi", Wet Rot Or Dry Rot Exclusion | 19 |
| Electronic Data Additional Coverage | 12 | Glass Expenses Additional Coverage | 11 |
| "Electronic Data" Definition | 32 | Governmental Action Exclusion | 18 |
| Electronic Data Exclusion | 41-42 | "Hostile Fire" Definition | 47 |
| "Employee" Definition | 47 | "Impaired Property" Definition | 47 |
| Employee Dishonesty Optional Coverage | 29-31 | Increased Cost Of Construction Additional Coverage | 9-10 |

© Insurance Services Office, Inc., 2012          BP IN 01 07 13

| Businessowners Coverage Feature | Page Number | Businessowners Coverage Feature | Page Number |
|---|---|---|---|
| Inspections And Surveys Condition | 51 | Medical Expenses Exclusions | 42-44 |
| Installation, Testing, Repair Exclusion | 21 | "Member" Definition | 32 |
| Insurance Under Two Or More Coverages Condition | 51 | Mobile Equipment Exclusion | 39 |
| "Insured Contract" Definition | 47 | "Mobile Equipment" Definition | 48 |
| Interruption Of Computer Operations Additional Coverage | 12-13 | Money And Securities Optional Coverage | 29 |
| "Leased Worker" Definition | 47 | "Money" Definition | 32 |
| Legal Action Against Us General Condition – Section II – Liability | 46 | Money Orders And "Counterfeit Money" Additional Coverage | 9 |
| Legal Action Against Us Property Loss Condition – Section I – Property | 24 | Mortgageholders Property General Condition | 28 |
| Liability And Medical Expenses Definitions | 46-50 | Neglect Exclusion | 21 |
| Liability And Medical Expenses General Conditions | 45-46 | Negligent Work Exclusion | 22 |
| Liability And Medical Expenses Limits Of Insurance | 45 | Nesting Or Infestation Exclusion | 21 |
| Liberalization Condition | 51 | Newly Acquired Or Constructed Property Coverage Extension | 14-15 |
| Limitations | 2-3 | No Benefit To Bailee Property General Condition | 28 |
| Limited Coverage For "Fungi", Wet Rot Or Dry Rot Additional Coverage | 13-14 | Nuclear Energy Liability Exclusion | 42-44 |
| Limits Of Insurance – Section I – Property | 23 | Nuclear Hazard Exclusion | 18 |
| Liquor Liability Exclusion | 36-37 | "Occurrence" Definition | 48 |
| "Loading Or Unloading" Definition | 48 | "Operations" Definition | 32 |
| Loss Payment Property Loss Condition | 24-27 | Optional Coverages | 28-32 |
| "Manager" Definition | 32 | Ordinance Or Law Exclusion | 17 |
| Marring Or Scratching Exclusion | 21 | Other Insurance Condition | 51 |
| Mechanical Breakdown Exclusion | 21 | Other Types Of Loss Exclusion | 21 |
| Medical Expenses Coverage | 36 | Outdoor Property Coverage Extension | 15 |

| Businessowners Coverage Feature | Page Number | Businessowners Coverage Feature | Page Number |
|---|---|---|---|
| Outdoor Signs Optional Coverage | 28-29 | Property Not Covered | 2 |
| "Period Of Restoration" Definition | 32 | Recall Of Products, Work Or Impaired Property Exclusion | 40 |
| "Personal And Advertising Injury" Definition | 48 | Recovered Property Loss Condition | 27 |
| Personal And Advertising Injury Exclusion | 40-41 | Resumption Of Operations Property Loss Condition | 27 |
| Personal Effects Coverage Extension | 15 | Rust Or Other Corrosion Exclusion | 21 |
| Personal Property Off-premises Coverage Extension | 15 | Section I – Property | 1-33 |
| Policy Period, Coverage Territory Property General Condition | 28 | Section II – Liability | 34-50 |
| Pollutant Clean-up And Removal Additional Coverage | 8 | Section III – Common Policy Conditions | 50-52 |
| "Pollutants" Definition – Section I – Property | 33 | "Securities" Definition | 33 |
| "Pollutants" Definition – Section II – Liability | 48 | Separation Of Insureds General Condition | 46 |
| Pollution Exclusion – Section I – Property | 21 | Settling, Cracking, Shrinking Or Expansion Exclusion | 21 |
| Pollution Exclusion – Section II – Liability | 37-38 | Smog Exclusion | 21 |
| Premium Audit Condition | 52 | Smoke, Vapor, Gas Exclusion | 20 |
| Premiums Condition | 51-52 | "Specified Causes Of Loss" Definition | 33 |
| Preservation Of Property Additional Coverage | 4-5 | Steam Apparatus Exclusion | 20 |
| "Products-completed Operations Hazard" Definition | 49 | "Stock" Definition | 33 |
| Professional Services Exclusion | 39-40 | "Suit" Definition | 49 |
| "Property Damage" Definition | 49 | "Temporary Worker" Definition | 49 |
| Property Definitions | 32-33 | Transfer Of Rights Of Recovery Against Others To Us Condition | 52 |
| Property General Conditions | 28 | Transfer Of Your Rights And Duties Under This Policy Condition | 52 |
| Property Loss Conditions | 24-28 | Utility Services Exclusion | 18 |

    © Insurance Services Office, Inc., 2012     BP IN 01 07 13

| Businessowners Coverage Feature | Page Number | Businessowners Coverage Feature | Page Number |
|---|---|---|---|
| Vacancy Property Loss Condition | 27 | Water Damage, Other Liquids, Powder Or Molten Material Damage Additional Coverage | 6 |
| Valuable Papers And Records Coverage Extension | 15-16 | Water Exclusion | 19 |
| "Valuable Papers And Records" Definition | 33 | Wear And Tear Exclusion | 21 |
| Violation Of Customer Protection Statutes Exclusion | 42 | Weather Conditions Exclusion | 22 |
| Virus Or Bacteria Exclusion | 19 | Who Is An Insured | 44-45 |
| "Volunteer Worker" Definition | 49 | Workers' Compensation And Similar Laws Exclusion | 37 |
| War And Military Action Exclusion | 18 | "Your Product" Definition | 49-50 |
| War Exclusion | 39 | "Your Work" Definition | 50 |



**BUSINESSOWNERS**
**BP 00 03 07 13**

# BUSINESSOWNERS COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Form, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

In Section **II** – Liability, the word "insured" means any person or organization qualifying as such under Paragraph **C.** Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Paragraph **H.** Property Definitions in Section **I** – Property and Paragraph **F.** Liability And Medical Expenses Definitions in Section **II** – Liability.

## SECTION I – PROPERTY

### A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**1. Covered Property**

Covered Property includes Buildings as described under Paragraph **a.** below, Business Personal Property as described under Paragraph **b.** below, or both, depending on whether a Limit Of Insurance is shown in the Declarations for that type of property. Regardless of whether coverage is shown in the Declarations for Buildings, Business Personal Property, or both, there is no coverage for property described under Paragraph **2.** Property Not Covered.

**a.** Buildings, meaning the buildings and structures at the premises described in the Declarations, including:

**(1)** Completed additions;

**(2)** Fixtures, including outdoor fixtures;

**(3)** Permanently installed:

**(a)** Machinery; and

**(b)** Equipment;

**(4)** Your personal property in apartments, rooms or common areas furnished by you as landlord;

**(5)** Personal property owned by you that is used to maintain or service the buildings or structures or the premises, including:

**(a)** Fire extinguishing equipment;

**(b)** Outdoor furniture;

**(c)** Floor coverings; and

**(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

**(6)** If not covered by other insurance:

**(a)** Additions under construction, alterations and repairs to the buildings or structures;

**(b)** Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the buildings or structures.

**b.** Business Personal Property located in or on the buildings or structures at the described premises or in the open (or in a vehicle) within 100 feet of the buildings or structures or within 100 feet of the premises described in the Declarations, whichever distance is greater, including:

**(1)** Property you own that is used in your business;

**(2)** Property of others that is in your care, custody or control, except as otherwise provided in Loss Payment Property Loss Condition Paragraph **E.5.d.(3)(b)**;

**(3)** Tenant's improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

**(a)** Made a part of the building or structure you occupy but do not own; and

**(b)** You acquired or made at your expense but cannot legally remove;

**(4)** Leased personal property which you have a contractual responsibility to insure, unless otherwise provided for under Paragraph **1.b.(2)**; and



**(5)** Exterior building glass, if you are a tenant and no Limit Of Insurance is shown in the Declarations for Building property. The glass must be owned by you or in your care, custody or control.

## 2. Property Not Covered

Covered Property does not include:

**a.** Aircraft, automobiles, motortrucks and other vehicles subject to motor vehicle registration;

**b.** "Money" or "securities" except as provided in the:

**(1)** Money And Securities Optional Coverage; or

**(2)** Employee Dishonesty Optional Coverage;

**c.** Contraband, or property in the course of illegal transportation or trade;

**d.** Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

**e.** Outdoor fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants (other than trees, shrubs or plants which are part of a vegetated roof), all except as provided in the:

**(1)** Outdoor Property Coverage Extension; or

**(2)** Outdoor Signs Optional Coverage;

**f.** Watercraft (including motors, equipment and accessories) while afloat;

**g.** Accounts, bills, food stamps, other evidences of debt, accounts receivable or "valuable papers and records"; except as otherwise provided in this policy;

**h.** "Computer(s)" which are permanently installed or designed to be permanently installed in any aircraft, watercraft, motortruck or other vehicle subject to motor vehicle registration. This paragraph does not apply to "computer(s)" while held as "stock";

**i.** "Electronic data", except as provided under Additional Coverages – Electronic Data. This Paragraph **i.** does not apply to your "stock" of prepackaged software or to "electronic data" which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system; or

**j.** Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings.

## 3. Covered Causes Of Loss

Direct physical loss unless the loss is excluded or limited under Section I – Property.

## 4. Limitations

**a.** We will not pay for loss of or damage to:

**(1)** Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**(2)** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

**(3)** Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property. This limitation does not apply to the Optional Coverage for Money and Securities.

**(4)** Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

**(5)** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

**(a)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

© Insurance Services Office, Inc., 2012

**(b)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

**(6)** Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

**(a)** Dampness or dryness of atmosphere or of soil supporting the vegetation;

**(b)** Changes in or extremes of temperature;

**(c)** Disease;

**(d)** Frost or hail; or

**(e)** Rain, snow, ice or sleet.

**b.** We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

**(1)** Animals, and then only if they are killed or their destruction is made necessary.

**(2)** Fragile articles such as glassware, statuary, marble, chinaware and porcelain, if broken. This restriction does not apply to:

**(a)** Glass that is part of the exterior or interior of a building or structure;

**(b)** Containers of property held for sale; or

**(c)** Photographic or scientific instrument lenses.

**c.** For loss or damage by theft, the following types of property are covered only up to the limits shown (unless a higher Limit Of Insurance is shown in the Declarations):

**(1)** $2,500 for furs, fur garments and garments trimmed with fur.

**(2)** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

**(3)** $2,500 for patterns, dies, molds and forms.

**5. Additional Coverages**

**a. Debris Removal**

**(1)** Subject to Paragraphs **(2)**, **(3)** and **(4)**, we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

**(2)** Debris Removal does not apply to costs to:

**(a)** Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

**(b)** Remove debris of property owned by or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this policy;

**(c)** Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

**(d)** Remove property of others of a type that would not be Covered Property under this policy;

**(e)** Remove deposits of mud or earth from the grounds of the described premises;

**(f)** Extract "pollutants" from land or water; or

**(g)** Remove, restore or replace polluted land or water.

**(3)** Subject to the exceptions in Paragraph **(4)**, the following provisions apply:

**(a)** The most that we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

**(b)** Subject to Paragraph **(3)(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

**(4)** We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if Paragraphs **(4)(a)** and/or **(4)(b)** apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

**(5) Examples**

**Example 1**

| | |
|---|---|
| Limit of Insurance | $ 90,000 |
| Amount of Deductible | $ 500 |
| Amount of Loss | $ 50,000 |
| Amount of Loss Payable | $ 49,500 |
| | ($50,000 – $500) |
| Debris Removal Expense | $ 10,000 |
| Debris Removal Expense Payable | $ 10,000 |
| ($10,000 is 20% of $50,000) | |

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3)**.

**Example 2**

| | |
|---|---|
| Limit of Insurance | $ 90,000 |
| Amount of Deductible | $ 500 |
| Amount of Loss | $ 80,000 |
| Amount of Loss Payable | $ 79,500 |
| | ($80,000 – $500) |
| Debris Removal Expense | $ 40,000 |
| Debris Removal Expense Payable | |
|     Basic Amount | $ 10,500 |
|     Additional Amount | $ 25,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000; capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 is 50% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under Paragraph **(4)**. Thus, the total payable for debris removal expense in this example is $35,500; $4,500 of the debris removal expense is not covered.

© Insurance Services Office, Inc., 2012
BP 00 03 07 13



**b. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss of or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $2,500 for service at each premises described in the Declarations, unless a different limit is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

**d. Collapse**

The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse as described and limited in Paragraphs d.(1) through d.(7).

**(1)** For the purpose of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**(2)** We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this policy or that contains Covered Property insured under this policy, if such collapse is caused by one or more of the following:

**(a)** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

**(b)** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

**(c)** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

**(d)** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

**(i)** A cause of loss listed in Paragraph **(2)(a)** or **(2)(b)**;

**(ii)** One or more of the "specified causes of loss";

**(iii)** Breakage of building glass;

**(iv)** Weight of people or personal property; or

**(v)** Weight of rain that collects on a roof.

**(3)** This Additional Coverage – Collapse does **not** apply to:

**(a)** A building or any part of a building that is in danger of falling down or caving in;

**(b)** A part of a building that is standing, even if it has separated from another part of the building; or

**(c)** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**(4)** With respect to the following property:

**(a)** Awnings;

**(b)** Gutters and downspouts;

**(c)** Yard fixtures;

**(d)** Outdoor swimming pools;

**(e)** Piers, wharves and docks;

**(f)** Beach or diving platforms or appurtenances;

**(g)** Retaining walls; and

**(h)** Walks, roadways and other paved surfaces;



if an abrupt collapse is caused by a cause of loss listed in Paragraphs **(2)(a)** through **(2)(d)**, we will pay for loss or damage to that property only if such loss or damage is a direct result of the abrupt collapse of a building insured under this policy and the property is Covered Property under this policy.

**(5)** If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

**(a)** The collapse of personal property was caused by a cause of loss listed in Paragraphs **(2)(a)** through **(2)(d)** of this Additional Coverage;

**(b)** The personal property which collapses is inside a building; and

**(c)** The property which collapses is not of a kind listed in Paragraph **(4)**, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **(5)** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

**(6)** This Additional Coverage – Collapse does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**(7)** This Additional Coverage – Collapse will not increase the Limits of Insurance provided in this policy.

**(8)** The term Covered Cause of Loss includes the Additional Coverage – Collapse as described and limited in Paragraphs **d.(1)** through **d.(7).**

**e. Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect that caused the loss or damage, but we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

**(1)** Results in discharge of any substance from an automatic fire protection system; or

**(2)** Is directly caused by freezing.

**f. Business Income**

**(1) Business Income**

**(a)** We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises mean:

**(i)** The portion of the building which you rent, lease or occupy;

**(ii)** The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**(iii)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

© Insurance Services Office, Inc., 2012



(b) We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage. We will only pay for ordinary payroll expenses for 60 days following the date of direct physical loss or damage, unless a greater number of days is shown in the Declarations.

(c) Business Income means the:

(i) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and

(ii) Continuing normal operating expenses incurred, including payroll.

(d) Ordinary payroll expenses:

(i) Means payroll expenses for all your employees except:

i. Officers;

ii. Executives;

iii. Department Managers;

iv. Employees under contract; and

v. Additional Exemptions shown in the Declarations as:

● Job Classifications; or

● Employees.

(ii) Include:

i. Payroll;

ii. Employee benefits, if directly related to payroll;

iii. FICA payments you pay;

iv. Union dues you pay; and

v. Workers' compensation premiums.

(2) **Extended Business Income**

(a) If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

(i) Begins on the date property except finished stock is actually repaired, rebuilt or replaced and "operations" are resumed; and

(ii) Ends on the earlier of:

i. The date you could restore your "operations", with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

ii. 60 consecutive days after the date determined in Paragraph (a)(i) above, unless a greater number of consecutive days is shown in the Declarations.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

(b) Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

(3) With respect to the coverage provided in this Additional Coverage, suspension means:

(a) The partial slowdown or complete cessation of your business activities; or

(b) That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

(4) This Additional Coverage is not subject to the Limits of Insurance of Section I – Property.

 © Insurance Services Office, Inc., 2012

**g. Extra Expense**

**(1)** We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises mean:

**(a)** The portion of the building which you rent, lease or occupy;

**(b)** The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**(c)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

**(2)** Extra Expense means expense incurred:

**(a)** To avoid or minimize the suspension of business and to continue "operations":

**(i)** At the described premises; or

**(ii)** At replacement premises or at temporary locations, including relocation expenses, and costs to equip and operate the replacement or temporary locations.

**(b)** To minimize the suspension of business if you cannot continue "operations".

**(c)** To:

**(i)** Repair or replace any property; or

**(ii)** Research, replace or restore the lost information on damaged "valuable papers and records";

to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or Additional Coverage **f.** Business Income.

**(3)** With respect to the coverage provided in this Additional Coverage, suspension means:

**(a)** The partial slowdown or complete cessation of your business activities; or

**(b)** That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**(4)** We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage. This Additional Coverage is not subject to the Limits of Insurance of Section I – Property.

**h. Pollutant Clean-up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay for each location under this Additional Coverage is $10,000 for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

© Insurance Services Office, Inc., 2012



**i. Civil Authority**

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for necessary Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

**(1)** Four consecutive weeks after the date of that action; or

**(2)** When your Civil Authority Coverage for Business Income ends;

whichever is later.

The definitions of Business Income and Extra Expense contained in the Business Income and Extra Expense Additional Coverages also apply to this Civil Authority Additional Coverage. The Civil Authority Additional Coverage is not subject to the Limits of Insurance of Section I – Property.

**j. Money Orders And "Counterfeit Money"**

We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

**(1)** Money orders issued by any post office, express company or bank that are not paid upon presentation; or

**(2)** "Counterfeit money" that is acquired during the regular course of business.

The most we will pay for any loss under this Additional Coverage is $1,000.

**k. Forgery Or Alteration**

**(1)** We will pay for loss resulting directly from forgery or alteration of any check, draft, promissory note, bill of exchange or similar written promise of payment in "money" that you or your agent has issued, or that was issued by someone who impersonates you or your agent.

**(2)** If you are sued for refusing to pay the check, draft, promissory note, bill of exchange or similar written promise of payment in "money", on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur in that defense.

**(3)** For the purpose of this coverage, check includes a substitute check as defined in the Check Clearing for the 21st Century Act and will be treated the same as the original it replaced.

**(4)** The most we will pay for any loss, including legal expenses, under this Additional Coverage is $2,500, unless a higher Limit Of Insurance is shown in the Declarations.

**l. Increased Cost Of Construction**

**(1)** This Additional Coverage applies only to buildings insured on a replacement cost basis.

**(2)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in Paragraphs **(3)** through **(9)** of this Additional Coverage.



(3) The ordinance or law referred to in Paragraph **(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises and is in force at the time of loss.

(4) Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

   (a) You were required to comply with before the loss, even when the building was undamaged; and

   (b) You failed to comply with.

(5) Under this Additional Coverage, we will not pay for:

   (a) The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot; or

   (b) Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet rot or dry rot.

(6) The most we will pay under this Additional Coverage, for each described building insured under Section I – Property, is $10,000. If a damaged building(s) is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for each damaged building, is $10,000.

   The amount payable under this Additional Coverage is additional insurance.

(7) With respect to this Additional Coverage:

   (a) We will not pay for the Increased Cost of Construction:

      (i) Until the property is actually repaired or replaced, at the same or another premises; and

      (ii) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

   (b) If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the same premises.

   (c) If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the new premises.

(8) This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion, to the extent that such exclusion would conflict with the provisions of this Additional Coverage.

(9) The costs addressed in the Loss Payment Property Loss Condition in Section I – Property do not include the increased cost attributable to enforcement of or compliance with an ordinance or law. The amount payable under this Additional Coverage, as stated in Paragraph **(6)** of this Additional Coverage, is not subject to such limitation.

**m. Business Income From Dependent Properties**

(1) We will pay for the actual loss of Business Income you sustain due to physical loss or damage at the premises of a dependent property or secondary dependent property caused by or resulting from any Covered Cause of Loss.

     © Insurance Services Office, Inc., 2012

However, this Additional Coverage does not apply when the only loss at the premises of a dependent property or secondary dependent property is loss or damage to "electronic data", including destruction or corruption of "electronic data". If the dependent property or secondary dependent property sustains loss or damage to "electronic data" and other property, coverage under this Additional Coverage will not continue once the other property is repaired, rebuilt or replaced.

The most we will pay under this Additional Coverage is $5,000 unless a higher Limit Of Insurance is indicated in the Declarations.

**(2)** We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent you can resume "operations", in whole or in part, by using any other available:

**(a)** Source of materials; or

**(b)** Outlet for your products.

**(3)** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**(4)** Dependent property means property owned by others whom you depend on to:

**(a)** Deliver materials or services to you, or to others for your account. But services does not mean water supply services, wastewater removal services, communication supply services or power supply services;

**(b)** Accept your products or services;

**(c)** Manufacture your products for delivery to your customers under contract for sale; or

**(d)** Attract customers to your business.

The dependent property must be located in the coverage territory of this policy.

**(5)** Secondary dependent property means an entity which is not owned or operated by a dependent property and which;

**(a)** Delivers materials or services to a dependent property, which in turn are used by the dependent property in providing materials or services to you; or

**(b)** Accepts materials or services from a dependent property, which in turn accepts your materials or services.

A road, bridge, tunnel, waterway, airfield, pipeline or any other similar area or structure is not a secondary dependent property.

Any property which delivers any of the following services is not a secondary dependent property with respect to such services:

**(i)** Water supply services;

**(ii)** Wastewater removal services;

**(iii)** Communication supply services; or

**(iv)** Power supply services.

The secondary dependent property must be located in the coverage territory of this policy.

**(6)** The coverage period for Business Income under this Additional Coverage:

**(a)** Begins 72 hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the premises of the dependent property or secondary dependent property; and

**(b)** Ends on the date when the property at the premises of the dependent property or secondary dependent property should be repaired, rebuilt or replaced with reasonable speed and similar quality.

**(7)** The Business Income coverage period, as stated in Paragraph **(6)**, does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

**(a)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**(b)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not reduce the Business Income coverage period.



(8) The definition of Business Income contained in the Business Income Additional Coverage also applies to this Business Income From Dependent Properties Additional Coverage.

**n. Glass Expenses**

(1) We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

(2) We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

**o. Fire Extinguisher Systems Recharge Expense**

(1) We will pay:

(a) The cost of recharging or replacing, whichever is less, your fire extinguishers and fire extinguishing systems (including hydrostatic testing if needed) if they are discharged on or within 100 feet of the described premises; and

(b) For loss or damage to Covered Property if such loss or damage is the result of an accidental discharge of chemicals from a fire extinguisher or a fire extinguishing system.

(2) No coverage will apply if the fire extinguishing system is discharged during installation or testing.

(3) The most we will pay under this Additional Coverage is $5,000 in any one occurrence.

**p. Electronic Data**

(1) Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore "electronic data" which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that "electronic data" is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the "electronic data" was stored, with blank media of substantially identical type.

(2) The Covered Causes of Loss applicable to Business Personal Property include a computer virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you, or for you, to inspect, design, install, modify, maintain, repair or replace that system.

(3) The most we will pay under this Additional Coverage – Electronic Data for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved, is $10,000, unless a higher Limit Of Insurance is shown in the Declarations. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in, but not after, that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

(4) This Additional Coverage does not apply to your "stock" of prepackaged software, or to "electronic data" which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**q. Interruption Of Computer Operations**

(1) Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a suspension of "operations" caused by an interruption in computer operations due to destruction or corruption of "electronic data" due to a Covered Cause of Loss.

© Insurance Services Office, Inc., 2012



**(2)** With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

**(a)** Coverage under this Additional Coverage – Interruption Of Computer Operations is limited to the "specified causes of loss" and Collapse.

**(b)** If the Businessowners Coverage Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage.

**(c)** The Covered Causes of Loss include a computer virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you, or for you, to inspect, design, install, modify, maintain, repair or replace that system.

**(3)** The most we will pay under this Additional Coverage – Interruption Of Computer Operations for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved, is $10,000 unless a higher Limit Of Insurance is shown in the Declarations. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**(4)** This Additional Coverage – Interruption Of Computer Operations does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in **(3)** above has not been exhausted.

**(5)** Coverage for Business Income does not apply when a suspension of "operations" is caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under Paragraphs **(1)** through **(4)** of this Additional Coverage.

 © Insurance Services Office, Inc., 2012

(6) Coverage for Extra Expense does not apply when action is taken to avoid or minimize a suspension of "operations" caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under Paragraphs (1) through (4) of this Additional Coverage.

(7) This Additional Coverage does not apply when loss or damage to "electronic data" involves only "electronic data" which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**r. Limited Coverage For "Fungi", Wet Rot Or Dry Rot**

(1) The coverage described in Paragraphs **r.(2)** and **r.(6)** only applies when the "fungi", wet rot or dry rot is the result of a "specified cause of loss" other than fire or lightning that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

(2) We will pay for loss or damage by "fungi", wet rot or dry rot. As used in this Limited Coverage, the term loss or damage means:

(a) Direct physical loss or damage to Covered Property caused by "fungi", wet rot or dry rot, including the cost of removal of the "fungi", wet rot or dry rot;

(b) The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet rot or dry rot; and

(c) The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet rot or dry rot is present.

(3) The coverage described under this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungi", wet rot or dry rot, we will not pay more than the total of $15,000 even if the "fungi", wet rot or dry rot continues to be present or active, or recurs, in a later policy period.

(4) The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungi", wet rot or dry rot, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungi", wet rot or dry rot, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungi", wet rot or dry rot causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

(5) The terms of this Limited Coverage do not increase or reduce the coverage provided under the Water Damage, Other Liquids, Powder Or Molten Material Damage or Collapse Additional Coverages.

    © Insurance Services Office, Inc., 2012



**(6)** The following applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the suspension of "operations" satisfies all the terms and conditions of the applicable Business Income and/or Extra Expense Additional Coverage:

**(a)** If the loss which resulted in "fungi", wet rot or dry rot does not in itself necessitate a suspension of "operations", but such suspension is necessary due to loss or damage to property caused by "fungi", wet rot or dry rot, then our payment under the Business Income and/or Extra Expense Additional Coverages is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

**(b)** If a covered suspension of "operations" was caused by loss or damage other than "fungi", wet rot or dry rot, but remediation of "fungi", wet rot or dry rot prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**6. Coverage Extensions**

In addition to the Limits of Insurance of Section I – Property, you may extend the insurance provided by this policy as provided below.

Except as otherwise provided, the following extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises:

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

If this policy covers Buildings, you may extend that insurance to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at premises other than the one described, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Business Personal Property**

If this policy covers Business Personal Property, you may extend that insurance to apply to:

**(a)** Business Personal Property, including such property that you newly acquire, at any location you acquire; or

**(b)** Business Personal Property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

This Extension does not apply to personal property that you temporarily acquire in the course of installing or performing work on such property or your wholesale activities.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**(3) Period Of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as Covered Property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as Covered Property.

**b. Personal Property Off-premises**

You may extend the insurance provided by this policy to apply to your Covered Property, other than "money" and "securities", "valuable papers and records" or accounts receivable, while it is in the course of transit or at a premises you do not own, lease or operate. The most we will pay for loss or damage under this Extension is $10,000.



**c. Outdoor Property**

You may extend the insurance provided by this policy to apply to your outdoor fences, radio and television antennas (including satellite dishes), signs (other than signs attached to buildings), trees, shrubs and plants (other than trees, shrubs or plants which are part of a vegetated roof), including debris removal expense. Loss or damage must be caused by or result from any of the following causes of loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $2,500, unless a higher Limit Of Insurance for Outdoor Property is shown in the Declarations, but not more than $1,000 for any one tree, shrub or plant.

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described premises.

**d. Personal Effects**

You may extend the insurance that applies to Business Personal Property to apply to personal effects owned by you, your officers, your partners or "members", your "managers" or your employees, including temporary or leased employees. This extension does not apply to:

**(1)** Tools or equipment used in your business; or

**(2)** Loss or damage by theft.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises.

**e. Valuable Papers And Records**

**(1)** You may extend the insurance that applies to Business Personal Property to apply to direct physical loss or damage to "valuable papers and records" that you own, or that are in your care, custody or control, caused by or resulting from a Covered Cause of Loss. This Coverage Extension includes the cost to research, replace or restore the lost information on "valuable papers and records" for which duplicates do not exist.

**(2)** This Coverage Extension does not apply to:

**(a)** Property held as samples or for delivery after sale; and

**(b)** Property in storage away from the premises shown in the Declarations.

**(3)** The most we will pay under this Coverage Extension for loss or damage to "valuable papers and records" in any one occurrence at the described premises is $10,000, unless a higher Limit Of Insurance for "valuable papers and records" is shown in the Declarations.

For "valuable papers and records" not at the described premises, the most we will pay is $5,000.

**(4)** Loss or damage to "valuable papers and records" will be valued at the cost of restoration or replacement of the lost or damaged information. To the extent that the contents of the "valuable papers and records" are not restored, the "valuable papers and records" will be valued at the cost of replacement with blank materials of substantially identical type.

**(5)** Paragraph **B.** Exclusions in Section **I –** Property does not apply to this Coverage Extension except for:

**(a)** Paragraph **B.1.c.,** Governmental Action;

**(b)** Paragraph **B.1.d.,** Nuclear Hazard;

**(c)** Paragraph **B.1.f.,** War And Military Action;

© Insurance Services Office, Inc., 2012



**(d)** Paragraph **B.2.f.**, Dishonesty;

**(e)** Paragraph **B.2.g.**, False Pretense;

**(f)** Paragraph **B.2.m.(2)**, Errors Or Omissions; and

**(g)** Paragraph **B.3.**

**f. Accounts Receivable**

**(1)** You may extend the insurance that applies to Business Personal Property to apply to accounts receivable. We will pay:

**(a)** All amounts due from your customers that you are unable to collect;

**(b)** Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

**(c)** Collection expenses in excess of your normal collection expenses that are made necessary by loss or damage; and

**(d)** Other reasonable expenses that you incur to reestablish your records of accounts receivable;

that result from direct physical loss or damage by any Covered Cause of Loss to your records of accounts receivable.

**(2)** The most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises is $10,000, unless a higher Limit of Insurance for accounts receivable is shown in the Declarations.

For accounts receivable not at the described premises, the most we will pay is $5,000.

**(3)** Paragraph **B**. Exclusions in Section I – Property does not apply to this Coverage Extension except for:

**(a)** Paragraph **B.1.c.**, Governmental Action;

**(b)** Paragraph **B.1.d.**, Nuclear Hazard;

**(c)** Paragraph **B.1.f.**, War And Military Action;

**(d)** Paragraph **B.2.f.**, Dishonesty;

**(e)** Paragraph **B.2.g.**, False Pretense;

**(f)** Paragraph **B.3.**; and

**(g)** Paragraph **B.6.**, Accounts Receivable Exclusion.

**g. Business Personal Property Temporarily In Portable Storage Units**

**(1)** You may extend the insurance that applies to Business Personal Property to apply to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 100 feet of the buildings or structures described in the Declarations or within 100 feet of the described premises, whichever distance is greater.

**(2)** The limitation under Paragraph **A.4.a.(5)** also applies to property in a portable storage unit.

**(3)** Coverage under this Extension:

**(a)** Will end 90 days after the Business Personal Property has been placed in the storage unit;

**(b)** Does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the Business Personal Property has been stored there for 90 or fewer days as of the time of loss or damage.

**(4)** Under this Extension, the most we will pay for the total of all loss or damage to Business Personal Property is $10,000 (unless a higher limit is indicated in the Declarations for such Extension) regardless of the number of storage units.

**(5)** This Extension does not apply to loss or damage otherwise covered under this Coverage Form or any endorsement to this Coverage Form, and does not apply to loss or damage to the storage unit itself.

**B. Exclusions**

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

**a. Ordinance Or Law**

**(1)** The enforcement of or compliance with any ordinance or law:

**(a)** Regulating the construction, use or repair of any property; or

**(b)** Requiring the tearing down of any property, including the cost of removing its debris.

**(2)** This exclusion, Ordinance Or Law, applies whether the loss results from:

**(a)** An ordinance or law that is enforced even if the property has not been damaged; or

**(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following a physical loss to that property.

**b. Earth Movement**

**(1)** Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

**(2)** Landslide, including any earth sinking, rising or shifting related to such event;

**(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in Paragraphs **(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the loss or damage caused by that fire, building glass breakage or volcanic action.

Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(a)** Airborne volcanic blast or airborne shock waves;

**(b)** Ash, dust or particulate matter; or

**(c)** Lava flow.

With respect to coverage for volcanic action as set forth in **5(a)**, **(5)(b)** and **5(c)**, all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss of or damage to Covered Property.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused.

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

© Insurance Services Office, Inc., 2012



But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

This exclusion does not apply to loss or damage to "computer(s)" and "electronic data".

**f. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

**(1)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floors or paved surfaces;

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings; or

**(5)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1)**, **(3)** or **(4)**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs **(1)** through **(5)**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

**h. Certain Computer-related Losses**

**(1)** The failure, malfunction or inadequacy of:

**(a)** Any of the following, whether belonging to any insured or to others:

**(i)** "Computer" hardware, including microprocessors or other electronic data processing equipment as may be described elsewhere in this policy;

**(ii)** "Computer" application software or other "electronic data" as may be described elsewhere in this policy;

**(iii)** "Computer" operating systems and related software;

**(iv)** "Computer" networks;

**(v)** Microprocessors ("computer" chips) not part of any "computer" system; or

**(vi)** Any other computerized or electronic equipment or components; or

**(b)** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **(a)** above;

due to the inability to correctly recognize, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.



**(2)** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **(1)** above.

However, if excluded loss or damage, as described in Paragraph **(1)** above, results in a "specified cause of loss" under Section **I** – Property, we will pay only for the loss or damage caused by such "specified cause of loss".

We will not pay for repair, replacement or modification of any items in Paragraph **(1)(a)** or **(1)(b)** to correct any deficiencies or change any features.

**i. "Fungi", Wet Rot Or Dry Rot**

Presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot.

But if "fungi", wet rot or dry rot results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

**(1)** When "fungi", wet rot or dry rot results from fire or lightning; or

**(2)** To the extent that coverage is provided in the Limited Coverage For "Fungi", Wet Rot Or Dry Rot Additional Coverage, with respect to loss or damage by a cause of loss other than fire or lightning.

**j. Virus Or Bacteria**

**(1)** Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

**(2)** However, the exclusion in Paragraph **(1)** does not apply to loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage is addressed in Exclusion **i.**

**(3)** With respect to any loss or damage subject to the exclusion in Paragraph **(1)**, such exclusion supersedes any exclusion relating to "pollutants".

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a. Electrical Apparatus**

Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**(1)** Electrical or electronic wire, device, appliance, system or network; or

**(2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**(1)** Electrical current, including arcing;

**(2)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**(3)** Pulse of electromagnetic energy; or

**(4)** Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by fire.

We will pay for loss or damage to "computer(s)" due to artificially generated electrical, magnetic or electromagnetic energy if such loss or damage is caused by or results from:

**(1)** An occurrence that took place within 100 feet of the described premises; or

**(2)** Interruption of electric power supply, power surge, blackout or brownout if the cause of such occurrence took place within 100 feet of the described premises.

**b. Consequential Losses**

Delay, loss of use or loss of market.

**c. Smoke, Vapor, Gas**

Smoke, vapor or gas from agricultural smudging or industrial operations.

 © Insurance Services Office, Inc., 2012



**d. Steam Apparatus**

Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**e. Frozen Plumbing**

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

**(1)** You do your best to maintain heat in the building or structure; or

**(2)** You drain the equipment and shut off the supply if the heat is not maintained.

**f. Dishonesty**

Dishonest or criminal acts (including theft) by you, anyone else with an interest in the property, or any of your or their partners, "members", officers, "managers", employees (including temporary or leased employees), directors, trustees or authorized representatives, whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion:

**(1)** Applies whether or not an act occurs during your normal hours of operation;

**(2)** Does not apply to acts of destruction by your employees (including temporary or leased employees) or authorized representatives; but theft by your employees (including temporary or leased employees) or authorized representatives is not covered.

With respect to accounts receivable and "valuable papers and records", this exclusion does not apply to carriers for hire.

This exclusion does not apply to coverage that is provided under the Employee Dishonesty Optional Coverage.

**g. False Pretense**

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**h. Exposed Property**

Rain, snow, ice or sleet to personal property in the open.

**i. Collapse**

**(1)** Collapse, including any of the following conditions of property or any part of the property:

**(a)** An abrupt falling down or caving in;

**(b)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

**(c)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to Paragraph i.(1)(a) or i.(1)(b).

But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

**(2)** This Exclusion i. does not apply:

**(a)** To the extent that coverage is provided under the Additional Coverage – Collapse; or

**(b)** To collapse caused by one or more of the following:

**(i)** The "specified causes of loss";

**(ii)** Breakage of building glass;

**(iii)** Weight of rain that collects on a roof; or

**(iv)** Weight of people or personal property.

**j. Pollution**

We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

 © Insurance Services Office, Inc., 2012



**k. Neglect**

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**l. Other Types Of Loss**

**(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force.

This exclusion does not apply with respect to the breakdown of "computer(s)";

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in Paragraphs **(1)** through **(7)** above results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**m. Errors Or Omissions**

Errors or omissions in:

**(1)** Programming, processing or storing data, as described under "electronic data" or in any "computer" operations; or

**(2)** Processing or copying "valuable papers and records".

However, we will pay for direct physical loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this Coverage Form.

**n. Installation, Testing, Repair**

Errors or deficiency in design, installation, testing, maintenance, modification or repair of your "computer" system including "electronic data".

However, we will pay for direct physical loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this Coverage Form.

**o. Electrical Disturbance**

Electrical or magnetic injury, disturbance or erasure of "electronic data", except as provided for under the Additional Coverages of Section I – Property.

However, we will pay for direct loss or damage caused by lightning.

**p. Continuous Or Repeated Seepage Or Leakage Of Water**

Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**3.** We will not pay for loss or damage caused by or resulting from any of the following Paragraphs **a.** through **c.** But if an excluded cause of loss that is listed in Paragraphs **a.** through **c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a. Weather Conditions**

Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **B.1.** above to produce the loss or damage.

**b. Acts Or Decisions**

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c. Negligent Work**

Faulty, inadequate or defective:

**(1)** Planning, zoning, development, surveying, siting;

**(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**(3)** Materials used in repair, construction, renovation or remodeling; or

**(4)** Maintenance;

of part or all of any property on or off the described premises.

© Insurance Services Office, Inc., 2012

BP 00 03 07 13



**4. Additional Exclusion**

The following applies only to the property specified in this Additional Exclusion:

**Loss Or Damage To Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**5. Business Income And Extra Expense Exclusions**

a. We will not pay for:

(1) Any Extra Expense, or increase of Business Income loss, caused by or resulting from:

(a) Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

(b) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage.

(2) Any other consequential loss.

b. With respect to this exclusion, suspension means:

(1) The partial slowdown or complete cessation of your business activities; and

(2) That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**6. Accounts Receivable Exclusion**

The following additional exclusion applies to the Accounts Receivable Coverage Extension:

We will not pay for:

a. Loss or damage caused by or resulting from alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of "money", "securities" or other property.

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

b. Loss or damage caused by or resulting from bookkeeping, accounting or billing errors or omissions.

c. Any loss or damage that requires any audit of records or any inventory computation to prove its factual existence.

**C. Limits Of Insurance**

1. The most we will pay for loss or damage in any one occurrence is the applicable Limits Of Insurance of Section I – Property shown in the Declarations.

2. The most we will pay for loss of or damage to outdoor signs attached to buildings is $1,000 per sign in any one occurrence.

3. The amounts of insurance applicable to the Coverage Extensions and the following Additional Coverages apply in accordance with the terms of such coverages and are in addition to the Limits of Insurance of Section I – Property:

a. Fire Department Service Charge;

b. Pollutant Clean-up And Removal;

c. Increased Cost Of Construction;

d. Business Income From Dependent Properties;

e. Electronic Data; and

f. Interruption Of Computer Operations.

**4. Building Limit – Automatic Increase**

a. In accordance with Paragraph **C.4.b.,** the Limit of Insurance for Buildings will automatically increase by 8%, unless a different percentage of annual increase is shown in the Declarations.

 © Insurance Services Office, Inc., 2012

b. The amount of increase is calculated as follows:

(1) Multiply the Building limit that applied on the most recent of the policy inception date, the policy anniversary date or any other policy change amending the Building limit by:

(a) The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 7% is .07); or

(b) .08, if no percentage of annual increase is shown in the Declarations; and

(2) Multiply the number calculated in accordance with **b.(1)** by the number of days since the beginning of the current policy year, or the effective date of the most recent policy change amending the Building limit, divided by 365.

**Example**

If:

The applicable Building limit is $100,000. The annual percentage increase is 8%. The number of days since the beginning of the policy year (or last policy change) is 146.

The amount of increase is

$100,000 x .08 x 146 ÷ 365 = $3,200.

**5. Business Personal Property Limit – Seasonal Increase**

a. Subject to Paragraph **5.b.**, the Limit of Insurance for Business Personal Property is automatically increased by:

(1) The Business Personal Property – Seasonal Increase percentage shown in the Declarations; or

(2) 25% if no Business Personal Property – Seasonal Increase percentage is shown in the Declarations;

to provide for seasonal variances.

b. The increase described in Paragraph **5.a.** will apply only if the Limit Of Insurance shown for Business Personal Property in the Declarations is at least 100% of your average monthly values during the lesser of:

(1) The 12 months immediately preceding the date the loss or damage occurs; or

(2) The period of time you have been in business as of the date the loss or damage occurs.

**D. Deductibles**

1. We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance of Section I – Property.

2. Regardless of the amount of the Deductible, the most we will deduct from any loss or damage under all of the following Optional Coverages in any one occurrence is the Optional Coverage Deductible shown in the Declarations:

a. Money and Securities;

b. Employee Dishonesty;

c. Outdoor Signs; and

d. Forgery or Alteration.

But this Optional Coverage Deductible will not increase the Deductible shown in the Declarations. This Deductible will be used to satisfy the requirements of the Deductible in the Declarations.

3. No deductible applies to the following Additional Coverages:

a. Fire Department Service Charge;

b. Business Income;

c. Extra Expense;

d. Civil Authority; and

e. Fire Extinguisher Systems Recharge Expense.

**E. Property Loss Conditions**

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

© Insurance Services Office, Inc., 2012        **BP 00 03 07 13**



If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

  **a.** You must see that the following are done in the event of loss or damage to Covered Property:

    **(1)** Notify the police if a law may have been broken.

    **(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

    **(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

    **(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limits of Insurance of Section I – Property. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

    **(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

    **(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

    Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

    **(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

    **(8)** Cooperate with us in the investigation or settlement of the claim.

    **(9)** Resume all or part of your "operations" as quickly as possible.

  **b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

  **a.** There has been full compliance with all of the terms of this insurance; and

  **b.** The action is brought within two years after the date on which the direct physical loss or damage occurred.

**5. Loss Payment**

In the event of loss or damage covered by this policy:

  **a.** At our option, we will either:

    **(1)** Pay the value of lost or damaged property;

    **(2)** Pay the cost of repairing or replacing the lost or damaged property;

    **(3)** Take all or any part of the property at an agreed or appraised value; or

    **(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to Paragraph **d.(1)(e)** below.

  **b.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

  **c.** We will not pay you more than your financial interest in the Covered Property.

  **d.** Except as provided in Paragraphs **(2)** through **(7)** below, we will determine the value of Covered Property as follows:

    **(1)** At replacement cost without deduction for depreciation, subject to the following:

      **(a)** If, at the time of loss, the Limit of Insurance on the lost or damaged property is 80% or more of the full replacement cost of the property immediately before the loss, we will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

        **(i)** The Limit of Insurance under Section I – Property that applies to the lost or damaged property;

(ii) The cost to replace, on the same premises, the lost or damaged property with other property:

    i. Of comparable material and quality; and

    ii. Used for the same purpose; or

(iii) The amount that you actually spend that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost is limited to the cost which would have been incurred had the building been built at the original premises.

(b) If, at the time of loss, the Limit of Insurance applicable to the lost or damaged property is less than 80% of the full replacement cost of the property immediately before the loss, we will pay the greater of the following amounts, but not more than the Limit of Insurance that applies to the property:

(i) The actual cash value of the lost or damaged property; or

(ii) A proportion of the cost to repair or replace the lost or damaged property, after application of the deductible and without deduction for depreciation. This proportion will equal the ratio of the applicable Limit of Insurance to 80% of the full replacement cost of the property.

**Example**

The full replacement cost of property which suffers a total loss is $100,000. The property is insured for $70,000. 80% of the full replacement cost of the property immediately before the loss is $80,000 ($100,000 x .80 = $80,000). A partial loss of $25,000 is sustained. The amount of recovery is determined as follows:

Amount of recovery

$70,000 ÷ $80,000 = .875

.875 x $25,000 = $21,875

(c) You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.

(d) We will not pay on a replacement cost basis for any loss or damage:

(i) Until the lost or damaged property is actually repaired or replaced; and

(ii) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

However, if the cost to repair or replace the damaged building property is $2,500 or less, we will settle the loss according to the provisions of Paragraphs **d.(1)(a)** and **d.(1)(b)** above whether or not the actual repair or replacement is complete.

(e) The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

(2) If the Actual Cash Value – Buildings option applies, as shown in the Declarations, Paragraph **(1)** above does not apply to Buildings. Instead, we will determine the value of Buildings at actual cash value.

(3) The following property at actual cash value:

(a) Used or secondhand merchandise held in storage or for sale;

(b) Property of others. However, if an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance;

© Insurance Services Office, Inc., 2012
**BP 00 03 07 13**

(c) Household contents, except personal property in apartments or rooms furnished by you as landlord;

(d) Manuscripts; and

(e) Works of art, antiques or rare articles, including etchings, pictures, statuary, marble, bronzes, porcelain and bric-a-brac.

**(4)** Glass at the cost of replacement with safety glazing material if required by law.

**(5)** Tenants' improvements and betterments at:

(a) Replacement cost if you make repairs promptly.

(b) A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

(i) Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

(ii) Divide the amount determined in (i) above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

(c) Nothing if others pay for repairs or replacement.

**(6)** Applicable only to the Optional Coverages:

(a) "Money" at its face value; and

(b) "Securities" at their value at the close of business on the day the loss is discovered.

**(7)** Applicable only to accounts receivable:

(a) If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss or damage:

(i) We will determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurs; and

(ii) We will adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

(b) The following will be deducted from the total amount of accounts receivable, however that amount is established:

(i) The amount of the accounts for which there is no loss or damage;

(ii) The amount of the accounts that you are able to reestablish or collect;

(iii) An amount to allow for probable bad debts that you are normally unable to collect; and

(iv) All unearned interest and service charges.

**e.** Our payment for loss of or damage to personal property of others will only be for the account of the owners of the property. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, provided you have complied with all of the terms of this policy, and:

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

h. A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

### 6. Recovered Property

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, you may retain the property. But then you must return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limits of Insurance of Section I – Property.

### 7. Resumption Of Operations

We will reduce the amount of your:

a. Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

b. Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

### 8. Vacancy

#### a. Description Of Terms

(1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in Paragraphs (a) and (b) below:

(a) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

(b) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

(i) Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

(ii) Used by the building owner to conduct customary operations.

(2) Buildings under construction or renovation are not considered vacant.

#### b. Vacancy Provisions

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

(1) We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

(a) Vandalism;

(b) Sprinkler leakage, unless you have protected the system against freezing;

© Insurance Services Office, Inc., 2012



(c) Building glass breakage;

(d) Water damage;

(e) Theft; or

(f) Attempted theft.

(2) With respect to Covered Causes of Loss other than those listed in Paragraphs (1)(a) through (1)(f) above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

## F. Property General Conditions

### 1. Control Of Property

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Form at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

### 2. Mortgageholders

a. The term "mortgageholder" includes trustee.

b. We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

c. The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

d. If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

(1) Pays any premium due under this policy at our request if you have failed to do so;

(2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

(3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this policy will then apply directly to the mortgageholder.

e. If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

(1) The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

(2) The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f. If we cancel this policy, we will give written notice to the mortgageholder at least:

(1) 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

g. If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

### 3. No Benefit To Bailee

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

### 4. Policy Period, Coverage Territory

Under Section I – Property:

a. We cover loss or damage commencing:

(1) During the policy period shown in the Declarations; and

(2) Within the coverage territory or, with respect to property in transit, while it is between points in the coverage territory.

b. The coverage territory is:

(1) The United States of America (including its territories and possessions);

(2) Puerto Rico; and

(3) Canada.

     © Insurance Services Office, Inc., 2012



**G. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages also apply. These coverages are subject to the terms and conditions applicable to property coverage in this policy, except as provided below:

**1. Outdoor Signs**

  **a.** We will pay for direct physical loss of or damage to all outdoor signs at the described premises:

    **(1)** Owned by you; or

    **(2)** Owned by others but in your care, custody or control.

  **b.** Paragraph **A.3.**, Covered Causes Of Loss and Paragraph **B.**, Exclusions in Section **I –** Property do not apply to this Optional Coverage, except for:

    **(1)** Paragraph **B.1.c.**, Governmental Action;

    **(2)** Paragraph **B.1.d.**, Nuclear Hazard; and

    **(3)** Paragraph **B.1.f.**, War And Military Action.

  **c.** We will not pay for loss or damage caused by or resulting from:

    **(1)** Wear and tear;

    **(2)** Hidden or latent defect;

    **(3)** Rust;

    **(4)** Corrosion; or

    **(5)** Mechanical breakdown.

  **d.** The most we will pay for loss or damage in any one occurrence is the Limit Of Insurance for Outdoor Signs shown in the Declarations.

  **e.** The provisions of this Optional Coverage supersede all other references to outdoor signs in this policy.

**2. Money And Securities**

  **a.** We will pay for loss of "money" and "securities" used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee (including a temporary or leased employee) having use and custody of the property, at the described premises, or in transit between any of these places, resulting directly from:

    **(1)** Theft, meaning any act of stealing;

    **(2)** Disappearance; or

    **(3)** Destruction.

  **b.** In addition to the Limitations and Exclusions applicable to Section **I –** Property, we will not pay for loss:

    **(1)** Resulting from accounting or arithmetical errors or omissions;

    **(2)** Due to the giving or surrendering of property in any exchange or purchase; or

    **(3)** Of property contained in any "money"-operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

  **c.** The most we will pay for loss in any one occurrence is:

    **(1)** The limit shown in the Declarations for Inside the Premises for "money" and "securities" while:

      **(a)** In or on the described premises; or

      **(b)** Within a bank or savings institution; and

    **(2)** The limit shown in the Declarations for Outside the Premises for "money" and "securities" while anywhere else.

  **d.** All loss:

    **(1)** Caused by one or more persons; or

    **(2)** Involving a single act or series of related acts;

  is considered one occurrence.

  **e.** You must keep records of all "money" and "securities" so we can verify the amount of any loss or damage.

**3. Employee Dishonesty**

  **a.** We will pay for direct loss of or damage to Business Personal Property and "money" and "securities" resulting from dishonest acts committed by any of your employees acting alone or in collusion with other persons (except you or your partner) with the manifest intent to:

    **(1)** Cause you to sustain loss or damage; and also

    **(2)** Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:

      **(a)** Any employee; or

      **(b)** Any other person or organization.

    © Insurance Services Office, Inc., 2012    BP 00 03 07 13

**b.** We will not pay for loss or damage:

   **(1)** Resulting from any dishonest or criminal act that you or any of your partners or "members" commit whether acting alone or in collusion with other persons.

   **(2)** Resulting from any dishonest act committed by any of your employees (except as provided in Paragraph **a.**), "managers" or directors:

     **(a)** Whether acting alone or in collusion with other persons; or

     **(b)** While performing services for you or otherwise.

   **(3)** The only proof of which as to its existence or amount is:

     **(a)** An inventory computation; or

     **(b)** A profit and loss computation.

   **(4)** Caused by an employee if the employee had also committed theft or any other dishonest act prior to the effective date of this policy and you or any of your partners, "members", "managers", officers, directors or trustees, not in collusion with the employee, learned of that theft or dishonest act prior to the policy period shown in the Declarations.

**c.** The most we will pay for loss or damage in any one occurrence is the Limit Of Insurance for Employee Dishonesty shown in the Declarations.

**d.** All loss or damage:

   **(1)** Caused by one or more persons; or

   **(2)** Involving a single act or series of acts;

is considered one occurrence.

**e.** If any loss is covered:

   **(1)** Partly by this insurance; and

   **(2)** Partly by any prior cancelled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest;

the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance.

We will pay only for loss or damage you sustain through acts committed or events occurring during the policy period. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

**f.** This Optional Coverage is cancelled as to any employee immediately upon discovery by:

   **(1)** You; or

   **(2)** Any of your partners, "members", "managers", officers or directors not in collusion with the employee;

of any dishonest act committed by that employee before or after being hired by you.

**g.** We will pay only for covered loss or damage sustained during the policy period and discovered no later than one year from the end of the policy period.

**h.** If you (or any predecessor in interest) sustained loss or damage during the policy period of any prior insurance that you could have recovered under that insurance except that the time within which to discover loss or damage had expired, we will pay for it under this Optional Coverage, provided:

   **(1)** This Optional Coverage became effective at the time of cancellation or termination of the prior insurance; and

   **(2)** The loss or damage would have been covered by this Optional Coverage had it been in effect when the acts or events causing the loss or damage were committed or occurred.

**i.** The insurance under Paragraph **h.** above is part of, not in addition to, the Limit of Insurance applying to this Optional Coverage and is limited to the lesser of the amount recoverable under:

   **(1)** This Optional Coverage as of its effective date; or

   **(2)** The prior insurance had it remained in effect.

**j.** With respect to the Employee Dishonesty Optional Coverage in Paragraph **G.3.**, employee means:

   **(1)** Any natural person:

     **(a)** While in your service or for 30 days after termination of service;

     **(b)** Who you compensate directly by salary, wages or commissions; and

     **(c)** Who you have the right to direct and control while performing services for you;



(2) Any natural person who is furnished temporarily to you:

   (a) To substitute for a permanent employee, as defined in Paragraph (1) above, who is on leave; or

   (b) To meet seasonal or short-term workload conditions;

(3) Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph (2) above;

(4) Any natural person who is a former employee, director, partner, member, manager, representative or trustee retained as a consultant while performing services for you; or

(5) Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside any building you occupy in conducting your business.

But employee does not mean:

(1) Any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

(2) Any "manager", director or trustee except while performing acts coming within the usual duties of an employee.

**4. Equipment Breakdown Protection Coverage**

  **a.** We will pay for direct loss of or damage to Covered Property caused by or resulting from a mechanical breakdown or electrical failure to pressure, mechanical or electrical machinery and equipment.

Mechanical breakdown or electrical failure to pressure, mechanical or electrical machinery and equipment does not mean any:

(1) Malfunction including but not limited to adjustment, alignment, calibration, cleaning or modification;

(2) Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;

(3) Damage to any vacuum tube, gas tube, or brush; or

(4) The functioning of any safety or protective device.

  **b.** Paragraphs **A.4.a.(1)** and **A.4.a.(2)**, Limitations, do not apply to this Optional Coverage.

  **c.** With respect to the coverage provided by this Optional Coverage, the following exclusions in Paragraph **B. Exclusions** do not apply:

(1) Paragraph **B.2.a.**, Electrical Apparatus;

(2) Paragraph **B.2.d.**, Steam Apparatus; and

(3) Paragraph **B.2.l.(6)**, Mechanical Breakdown.

  **d.** With respect to the coverage provided by this Optional Coverage, Paragraph **G.1.c.(5)** of the **Outdoor Signs Optional Coverage** does not apply.

  **e.** If a dollar deductible is shown in the Declarations for this Optional Coverage, we will first subtract the applicable deductible amount from any loss we would otherwise pay. We will then pay the amount of loss in excess of the applicable deductible up to the applicable limit for this coverage.

If no optional deductible is chosen for this Optional Coverage, the Property Deductible shown in the Declarations applies.

  **f.** With respect to Additional Coverages **5.f.** Business Income and **5.g.** Extra Expense, if the 72-hour time period in the definition of "period of restoration" (hereinafter referred to as time deductible) is amended for this Optional Coverage as shown in the Declarations, we will not pay for any Business Income loss that occurs during the consecutive number of hours shown as the time deductible in the Declarations immediately following a mechanical breakdown or electrical failure. If a time deductible is shown in days, each day shall mean 24 consecutive hours.

With respect to the coverage provided by this Optional Coverage, any time deductible shown in the Declarations for Equipment Breakdown Protection Coverage supersedes any time deductible otherwise applicable to the Business Income coverage provided by this policy.

  **g.** With respect to the coverage provided by this Optional Coverage, Paragraph **H. Property Definitions** is amended as follows:

1. "Computer" means:

   **a.** Programmable electronic equipment that is used to store, retrieve and process data; and

    © Insurance Services Office, Inc., 2012     BP 00 03 07 13



**b.** Associated peripheral equipment that provides communication, including input and output functions such as printing and auxiliary functions such as data transmission.

"Computer" includes those used to operate production-type machinery or equipment.

**h.** Whenever any covered pressure, mechanical or electrical machinery and equipment is found to be in, or exposed to, a dangerous condition, any of our representatives may suspend coverage provided by this Optional Coverage for loss from a mechanical breakdown or electrical failure to that pressure, mechanical or electrical machinery and equipment.

However, coverage provided by this Optional Coverage may be reinstated for loss from a mechanical breakdown or electrical failure to that pressure, mechanical or electrical machinery and equipment if the reasons for the suspension are found by any of our representatives to no longer exist.

We may suspend or reinstate this Optional coverage by mailing or delivering a written notification regarding the suspension or reinstatement to:

**(1)** Your last known address; or

**(2)** The address where the pressure, mechanical or electrical machinery and equipment is located.

This notification will indicate the effective date of the suspension or reinstatement.

If the coverage provided by this Optional Coverage is not reinstated, you will get a pro rata refund of premium. But the suspension will be effective even if we have not yet made or offered a refund.

**H. Property Definitions**

**1.** "Computer" means:

**a.** Programmable electronic equipment that is used to store, retrieve and process data; and

**b.** Associated peripheral equipment that provides communication, including input and output functions such as printing and auxiliary functions such as data transmission.

"Computer" does not include those used to operate production-type machinery or equipment.

**2.** "Counterfeit money" means an imitation of "money" that is intended to deceive and to be taken as genuine.

**3.** "Electronic data" means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a "computer" or device connected to it, which enable the "computer" or device to receive, process, store, retrieve or send data.

**4.** "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**5.** "Manager" means a person serving in a directorial capacity for a limited liability company.

**6.** "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

**7.** "Money" means:

**a.** Currency, coins and bank notes in current use and having a face value; and

**b.** Traveler's checks, register checks and money orders held for sale to the public.

**8.** "Operations" means your business activities occurring at the described premises.

**9.** "Period of restoration":

**a.** Means the period of time that:

**(1)** Begins:

**(a)** 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

**(b)** Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

caused by or resulting from any Covered Cause of Loss at the described premises; and



**(2)** Ends on the earlier of:

    **(a)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

    **(b)** The date when business is resumed at a new permanent location.

**b.** Does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

    **(1)** Regulates the construction, use or repair, or requires the tearing down of any property; or

    **(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

**10.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**11.** "Securities" means negotiable and nonnegotiable instruments or contracts representing either "money" or other property and includes:

**a.** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

**b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include "money".

**12.** "Specified causes of loss" means the following:

Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

**a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

    **(1)** The cost of filling sinkholes; or

    **(2)** Sinking or collapse of land into man-made underground cavities.

**b.** Falling objects does not include loss of or damage to:

    **(1)** Personal property in the open; or

    **(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**c.** Water damage means:

    **(1)** Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam; and

    **(2)** Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off the described premises and is part of a municipal potable water supply system or municipal sanitary sewer system, if the breakage or cracking is caused by wear and tear.

But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in **c.(1)** or **c.(2)** of this definition of "specified causes of loss", such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the ground surface.

**13.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

     © Insurance Services Office, Inc., 2012      BP 00 03 07 13

14. "Valuable papers and records" means inscribed, printed or written:

   a. Documents;

   b. Manuscripts; and

   c. Records;

   including abstracts, books, deeds, drawings, films, maps or mortgages.

   But "valuable papers and records" does not mean "money" or "securities".

## SECTION II – LIABILITY

## A. Coverages

### 1. Business Liability

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or any offense and settle any claim or "suit" that may result. But:

   (1) The amount we will pay for damages is limited as described in Paragraph D. Liability And Medical Expenses Limits Of Insurance in Section II – Liability; and

   (2) Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph f. Coverage Extension – Supplementary Payments.

   b. This insurance applies:

   (1) To "bodily injury" and "property damage" only if:

   (a) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   (b) The "bodily injury" or "property damage" occurs during the policy period; and

   (c) Prior to the policy period, no insured listed under Paragraph C.1. Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

   (2) To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

   c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph C.1. Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

   d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph C.1. Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

   (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

   (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

   (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

   e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".



**f. Coverage Extension – Supplementary Payments**

**(1)** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**(a)** All expenses we incur.

**(b)** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for "bodily injury" applies. We do not have to furnish these bonds.

**(c)** The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance. We do not have to furnish these bonds.

**(d)** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**(e)** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**(f)** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**(g)** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the limit of liability.

**(2)** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**(a)** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**(b)** This insurance applies to such liability assumed by the insured;

**(c)** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**(d)** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**(e)** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**(f)** The indemnitee:

**(i)** Agrees in writing to:

**i.** Cooperate with us in the investigation, settlement or defense of the "suit";

**ii.** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**iii.** Notify any other insurer whose coverage is available to the indemnitee; and



iv. Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(ii) Provides us with written authorization to:

i. Obtain records and other information related to the "suit"; and

ii. Conduct and control the defense of the indemnitee in such "suit".

(3) So long as the conditions in Paragraph **(2)** are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **B.1.b.(2)** Exclusions in Section **II – Liability**, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the Limits of Insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

(a) We have used up the applicable Limit of Insurance in the payment of judgments or settlements; or

(b) The conditions set forth above, or the terms of the agreement described in Paragraph **(2)(f)** above, are no longer met.

## 2. Medical Expenses

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(a) The accident takes place in the "coverage territory" and during the policy period;

(b) The expenses are incurred and reported to us within one year of the date of the accident; and

(c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the Limits of Insurance of Section **II – Liability**. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

## B. Exclusions

### 1. Applicable To Business Liability Coverage

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and



**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by an insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

© Insurance Services Office, Inc., 2012    BP 00 03 07 13

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

  **(i)** Any insured; or

  **(ii)** Any person or organization for whom you may be legally responsible;

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

  **(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

  **(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

  **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

  **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

  **(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".



This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

    **(a)** Less than 51 feet long; and

    **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

    **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged; or

    **(b)** The operation of any of the following machinery or equipment:

        **(i)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

        **(ii)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

**i. War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

**j. Professional Services**

"Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service. This includes but is not limited to:

**(1)** Legal, accounting or advertising services;

**(2)** Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

**(3)** Supervisory, inspection or engineering services;

**(4)** Medical, surgical, dental, X-ray or nursing services treatment, advice or instruction;

**(5)** Any health or therapeutic service treatment, advice or instruction;

**(6)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

© Insurance Services Office, Inc., 2012

BP 00 03 07 13



**(7)** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

**(8)** Body piercing services; and

**(9)** Services in the practice of pharmacy.

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render of any professional service.

**k. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1), (3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate Limit of Insurance applies to Damage To Premises Rented To You as described in Paragraph **D.** Liability And Medical Expenses Limits Of Insurance in Section **II** – Liability.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**l. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**m. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**n. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**o. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";



if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**p. Personal And Advertising Injury**

"Personal and advertising injury":

(1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

(2) Arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity;

(3) Arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period;

(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

(5) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

(6) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

(7) Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

(8) Committed by an insured whose business is:

(a) Advertising, broadcasting, publishing or telecasting;

(b) Designing or determining content of web sites for others; or

(c) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under Paragraph **F.** Liability And Medical Expenses Definitions.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, by itself, is not considered the business of advertising, broadcasting, publishing or telecasting;

(9) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time;

(10) With respect to any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants";

(11) Arising out of an electronic chatroom or bulletin board the insured hosts, owns or over which the insured exercises control;

(12) Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan;

(13) Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers.

**q. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".



As used in this exclusion, electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**r. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**s. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.**, **d.**, **e.**, **f.**, **g.**, **h.**, **i.**, **k.**, **l.**, **m.**, **n.** and **o.** in Section **II** – Liability do not apply to damage by fire to premises while rented to you, or temporarily occupied by you with permission of the owner. A separate Damage To Premises Rented To You Limit of Insurance applies to this coverage as described in Paragraph **D.** Liability And Medical Expenses Limits of Insurance in Section **II** – Liability.

**2. Applicable To Medical Expenses Coverage**

We will not pay expenses for "bodily injury":

**a.** To any insured, except "volunteer workers".

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e.** To a person injured while practicing, instructing or participating in any physical exercises or games, sports or athletic contests.

**f.** Included within the "products-completed operations hazard".

**g.** Excluded under Business Liability Coverage.

**3. Applicable To Both Business Liability Coverage And Medical Expenses Coverage – Nuclear Energy Liability Exclusion**

This insurance does not apply:

**a.** Under Business Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

   (a) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

   (b) The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**b.** Under Medical Expenses Coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**c.** Under Business Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of the "nuclear material"; if:

  (1) The "nuclear material":

   (a) Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

   (b) Has been discharged or dispersed therefrom;

  (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

  (3) The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility"; but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**d.** As used in this exclusion:

  (1) "By-product material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

(2) "Hazardous properties" include radioactive, toxic or explosive properties;

(3) "Nuclear facility" means:

   (a) Any "nuclear reactor";

   (b) Any equipment or device designed or used for:

    (i) Separating the isotopes of uranium or plutonium;

    (ii) Processing or utilizing "spent fuel"; or

    (iii) Handling, processing or packaging "waste";

   (c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   (d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

  and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

(4) "Nuclear material" means "source material", "special nuclear material" or "by-product material";

(5) "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

(6) "Property damage" includes all forms of radioactive contamination of property;

(7) "Source material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

(8) "Special nuclear material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

(9) "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

 © Insurance Services Office, Inc., 2012 BP 00 03 07 13

**(10)** "Waste" means any waste material:

    **(a)** Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and

    **(b)** Resulting from the operation by any person or organization of any "nuclear facility" included under Paragraphs **(a)** and **(b)** of the definition of "nuclear facility".

## C. Who Is An Insured

**1.** If you are designated in the Declarations as:

    **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

    **b.** A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

    **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

    **e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

    **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

    **(1)** "Bodily injury" or "personal and advertising injury":

        **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

        **(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(a)** above;

        **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(a)** or **(b)**; or

        **(d)** Arising out of his or her providing or failing to provide professional health care services.

    **(2)** "Property damage" to property:

        **(a)** Owned, occupied or used by;

 © Insurance Services Office, Inc., 2012

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**D. Liability And Medical Expenses Limits Of Insurance**

**1.** The Limits of Insurance of Section II – Liability shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The most we will pay for the sum of all damages because of all:

**a.** "Bodily injury", "property damage" and medical expenses arising out of any one "occurrence"; and

**b.** "Personal and advertising injury" sustained by any one person or organization;

is the Liability and Medical Expenses limit shown in the Declarations. But the most we will pay for all medical expenses because of "bodily injury" sustained by any one person is the Medical Expenses limit shown in the Declarations.

**3.** The most we will pay under Business Liability Coverage for damages because of "property damage" to a premises while rented to you or in the case of fire while rented to you or temporarily occupied by you with permission of the owner is the applicable Damage To Premises Rented To You limit shown for that premises in the Declarations. For a premises temporarily occupied by you, the applicable limit will be the highest Damage To Premises Rented To You limit shown in the Declarations.

**4. Aggregate Limits**

The most we will pay for:

**a.** All "bodily injury" and "property damage" that is included in the "products-completed operations hazard" is twice the Liability and Medical Expenses limit.

**b.** All:

**(1)** "Bodily injury" and "property damage" except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard";

**(2)** Plus medical expenses;

**(3)** Plus all "personal and advertising injury" caused by offenses committed;

is twice the Liability and Medical Expenses limit.

Subject to Paragraph **a.** or **b.** above, whichever applies, the Damage To Premises Rented To You limit is the most we will pay for damages because of "property damage" to any one premises, while rented to you, or in the case of fire, while rented to you or temporarily occupied by you with permission of the owner.

The Limits of Insurance of Section II – Liability apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**E. Liability And Medical Expenses General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

© Insurance Services Office, Inc., 2012



**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this policy:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Separation Of Insureds**

Except with respect to the Limits of Insurance of Section II – Liability, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**F. Liability And Medical Expenses Definitions**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

c. All other parts of the world if the injury or damage arises out of:

   **(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

   **(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

   **(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits in the territory described in Paragraph **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

   **(1)** The repair, replacement, adjustment or removal of "your product" or "your work"; or

   **(2)** Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph **f.** does not include that part of any contract or agreement:

   **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

   **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      **(a)** Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

      **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(2)** above and supervisory, inspection or engineering services.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

© Insurance Services Office, Inc., 2012    BP 00 03 07 13

11. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, on which are permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in Paragraph a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in Paragraph a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   (1) Equipment designed primarily for:

      (a) Snow removal;

      (b) Road maintenance, but not construction or resurfacing; or

      (c) Street cleaning;

   (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where they are licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

  © Insurance Services Office, Inc., 2012



f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

(2) The existence of tools, uninstalled equipment or abandoned or unused materials.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

 © Insurance Services Office, Inc., 2012



**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

## SECTION III – COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I – PROPERTY AND SECTION II – LIABILITY)

### A. Cancellation

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**a.** Five days before the effective date of cancellation if any one of the following conditions exists at any building that is Covered Property in this policy:

**(1)** The building has been vacant or unoccupied 60 or more consecutive days. This does not apply to:

**(a)** Seasonal unoccupancy; or

**(b)** Buildings in the course of construction, renovation or addition.

Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

**(2)** After damage by a Covered Cause of Loss, permanent repairs to the building:

**(a)** Have not started; and

**(b)** Have not been contracted for;

within 30 days of initial payment of loss.

**(3)** The building has:

**(a)** An outstanding order to vacate;

**(b)** An outstanding demolition order; or

**(c)** Been declared unsafe by governmental authority.

**(4)** Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

**(5)** Failure to:

**(a)** Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

**(b)** Pay property taxes that are owing and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

**b.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

**c.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.



6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Concealment, Misrepresentation Or Fraud**

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceals or misrepresents a material fact concerning:

1. This policy;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this policy.

**D. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**E. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe and healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**F. Insurance Under Two Or More Coverages**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**G. Liberalization**

If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

**H. Other Insurance**

1. If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance of Section I – Property.

2. Business Liability Coverage is excess over:

   a. Any other insurance that insures for direct physical loss or damage; or

   b. Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured.

3. When this insurance is excess, we will have no duty under Business Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**I. Premiums**

1. The first Named Insured shown in the Declarations:

   a. Is responsible for the payment of all premiums; and

   b. Will be the payee for any return premiums we pay.

2. The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.



3. With our consent, you may continue this policy in force by paying a continuation premium for each successive one-year period. The premium must be:

    a. Paid to us prior to the anniversary date; and

    b. Determined in accordance with Paragraph 2. above.

    Our forms then in effect will apply. If you do not pay the continuation premium, this policy will expire on the first anniversary date that we have not received the premium.

4. Undeclared exposures or change in your business operation, acquisition or use of locations may occur during the policy period that are not shown in the Declarations. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules then in effect.

## J. Premium Audit

1. This policy is subject to audit if a premium designated as an advance premium is shown in the Declarations. We will compute the final premium due when we determine your actual exposures.

2. Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period, we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

3. The first Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request.

## K. Transfer Of Rights Of Recovery Against Others To Us

1. Applicable to Businessowners Property Coverage:

    If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

    a. Prior to a loss to your Covered Property.

    b. After a loss to your Covered Property only if, at time of loss, that party is one of the following:

        (1) Someone insured by this insurance;

        (2) A business firm:

            (a) Owned or controlled by you; or

            (b) That owns or controls you; or

        (3) Your tenant.

    You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers.

    This will not restrict your insurance.

2. Applicable to Businessowners Liability Coverage:

    If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. This condition does not apply to Medical Expenses Coverage.

## L. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 © Insurance Services Office, Inc., 2012



BUSINESSOWNERS
01 6201 02 22

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ARIZONA CHANGES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**A. Section I – Property** is amended as follows:

    **1.** Paragraph **A.5.c. Fire Department Service Charge** Additional Coverage does not apply.

    **2.** The following exclusion and related provisions are added to Paragraph **B.2. Exclusions:**

    **Intentional Loss**

      **a.** With respect to loss caused by fire:

        **(1)** We will not pay for loss or damage arising out of any act committed:

          **(a)** By or at the direction of the insured; and

          **(b)** With the intent to cause a loss.

        **(2)** However, this exclusion will not apply to deny an insured's claim for an otherwise covered property loss under this Policy if such loss is caused by another insured under this Policy and the insured making claim:

          **(a)** Did not cooperate in or contribute to the creation of the loss; and

          **(b)** Cooperates in any investigation relating to the loss.

        We may apply reasonable standards of proof for such claims.

      **b.** With respect to loss caused by a peril other than fire:

        **(1)** We will not pay for loss or damage arising out of any act committed:

          **(a)** By or at the direction of any insured; and

          **(b)** With the intent to cause a loss.

        **(2)** However, this exclusion will not apply to deny an insured's claim for an otherwise covered property loss under this Policy if such loss is caused by an act of domestic violence by another insured under this Policy and the Insured making claim:

          **(a)** Did not cooperate in or contribute to the creation of the loss; and

          **(b)** Cooperates in any investigation relating to the loss.

        We may apply reasonable standards of proof for such claims.

    © 2022 WCF National Insurance Company, a Utah Stock Insurance Corporation, NAIC No.40517. All Rights Reserved. May not be copied without permission. Includes copyrighted material of Insurance Services Office, Inc., with its permission.    



    **c.** If we pay a claim pursuant to Paragraph **2.a.(2)** or **2.b.(2)** of this endorsement, our payment to the insured is limited to that insured's insurable interest in the property as reduced by any payments we first made to a mortgagee or other party with a secured interest in the property. In no event will we pay more than the Limit of Insurance.

**3.** Paragraph **E.2. Appraisal** Property Loss Condition is replaced by the following:

    **2. Appraisal**

    If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select a competent and impartial umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

    **a.** Pay its chosen appraiser; and

    **b.** Bear the other expenses of the appraisal and umpire equally.

    If there is an appraisal, we will still retain our right to deny the claim.

**B. Section III – Common Policy Conditions** is amended as follows:

**1.** The following is added to Paragraph **A. Cancellation** (and applies except in situations where Paragraph **2.**, below, applies):

    **7. Cancellation Of Policies In Effect For 60 Days Or More**

    If this Policy has been in effect for 60 days or more, or if this Policy is a renewal of a policy we issued, we may cancel this Policy only for one or more of the following reasons:

    **a.** Nonpayment of premium;

    **b.** Your conviction of a crime arising out of acts increasing the hazard insured against;

    **c.** Acts or omissions by you or your representative constituting fraud or material misrepresentation in the procurement of this Policy, in continuing this Policy or in presenting a claim under this Policy;

    **d.** Substantial change in the risk assumed, except to the extent that we should have reasonably foreseen the change or contemplated the risk in writing the contract;

    **e.** Substantial breach of contractual duties or conditions;

    **f.** Loss of reinsurance applicable to the risk insured against resulting from termination of treaty or facultative reinsurance initiated by our reinsurer or reinsurers;

    **g.** Determination by the Director of Insurance that the continuation of the Policy would place us in violation of the insurance laws of this state or would jeopardize our solvency; or

    **h.** Acts or omissions by you or your representative which materially increase the hazard insured against.

    If we cancel this Policy based on one or more of the above reasons, we will send to the first Named Insured, and send to the agent, if any, written notice of cancellation stating the reason(s) for cancellation. We will send this notice at least:

      **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

      **b.** 45 days before the effective date of cancellation if we cancel for any of the other reasons.

**2.** If the Businessowners Coverage Form provides coverage for:

      **a.** Real property which is used predominantly for residential purposes and consists of one through four dwelling units; and/or

      **b.** Personal property (except business personal property) of a person residing in such real property;

the following provisions apply (instead of those provided in Paragraph **1.** above) with respect to cancellation of such coverage:

If this Policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

      **(1)** Nonpayment of premium;

      **(2)** Your conviction of a crime arising out of facts increasing the hazard insured against;

      **(3)** Acts or omissions by you or your representative constituting fraud or material misrepresentation in obtaining the Policy, continuing the Policy or presenting a claim under the Policy;

**3.** Subparagraph **2.** of paragraph **K. Transfer Of Right Of Recovery Against Others To Us** is deleted and replaced with the following:

**2.** Applicable to Businessowners Liability Coverage

      We will waive the rights of recovery we would otherwise have had against another person or organization, for loss to which this insurance applies, provided the insured has waived their rights of recovery against such person or organization in a contract or agreement that is executed before such loss.

      To the extent that the insured's right to recover all or part of any payment made under this Coverage Part has not been waived prior to loss as stated above, those rights are automatically transferred to us. The insured must do nothing after loss to impair these rights. At our request, the insured will bring "suit" or transfer those rights to us and help us to enforce these rights. We may pursue our own right of subrogation against a third party without regard to whether the insured is made whole by any recovery. This condition does not apply to Medical Expenses Coverage.

      **(4)** Discovery of grossly negligent acts or omissions by you substantially increasing any of the hazards insured against;

      **(5)** Substantial change in the risk assumed by us, since the Policy was issued, except to the extent that we should reasonably have foreseen the change or contemplated the risk in writing the contract;

      **(6)** A determination by the Director of Insurance that the continuation of the Policy would place us in violation of the insurance laws of this state; or

      **(7)** Your failure to take reasonable steps to eliminate or reduce any conditions in or on the insured premises which contributed to a loss in the past or will increase the probability of future losses.

If we cancel this Policy based on one or more of these reasons, we will send written notice of cancellation, stating the reason(s) for cancellation, to the first Named Insured. We will send this notice at least:

      **(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or



**(2)** 30 days before the effective date of cancellation if we cancel for any of the other reasons.

**3.** Paragraph **C. Concealment, Misrepresentation Or Fraud** is replaced by the following:

**C. Concealment, Misrepresentation Or Fraud**

We will not pay for any loss or damage in any case involving misrepresentations, omissions, concealment of facts or incorrect statements:

**1.** That are fraudulent;

**2.** That are material either to the acceptance of the risk, or to the hazard assumed by us; and

**3.** Where, if the true facts had been made known to us as required either by the application for the Policy or otherwise, we in good faith would either:

**a.** Not have issued the Policy;

**b.** Not have issued the Policy in as large an amount; or

**c.** Not have provided coverage with respect to the hazard resulting in the loss.

**4.** The following is added to Paragraph **K. Transfer Of Rights Of Recovery Against Others To Us:**

If we pay an insured for a loss described in Paragraph **A.2.b.,** the rights of the insured to recover damages from the perpetrator of the domestic violence are transferred to us to the extent of our payment. Following the loss, the insured may not waive such rights to recover against the perpetrator of the domestic violence.

**5.** The following paragraph is added and supersedes any provision to the contrary (and applies except in situations where Paragraph **6.,** below, applies):

**Nonrenewal**

**a.** If we elect not to renew this Policy, we will send to the first Named Insured, and send to the agent, if any, written notice of nonrenewal. We will send this notice, stating the reason(s) for nonrenewal at least 45 days prior to the expiration of this Policy.

**b.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**c.** If either one of the following occurs, we are not required to provide written notice of nonrenewal:

**(1)** We or a company within the same insurance group has offered to issue a renewal policy; or

**(2)** You have obtained replacement coverage or agreed in writing to do so.

**d.** If written notice of nonrenewal is sent less than 45 days prior to expiration of this Policy, and neither **c.(1)** nor **c.(2)** applies, the coverage shall remain in effect until 45 days after the notice is sent. Earned premium for any period of coverage that extends beyond the expiration date of this Policy shall be considered pro rata based upon the previous year's rate.

**6.** If the Businessowners Coverage Form provides coverage for:

**a.** Real property which is used predominantly for residential purposes and consists of one through four dwelling units; and/or

**b.** Personal property (except business personal property) of a person residing in such real property;



the following provisions apply (instead of those provided in Paragraph **5.** above) with respect to nonrenewal of such coverage:

**a.** If we elect not to renew, we will send written notice of nonrenewal, stating the reason(s) for nonrenewal, to the first Named Insured. We will send this notice at least 30 days before the end of the policy period. If notice is mailed, proof of mailing will be sufficient proof of notice.

**b.** If either one of the following occurs, we are not required to provide notice of nonrenewal:

    **(1)** You have agreed to nonrenewal; or

    **(2)** You have accepted replacement coverage.

**c.** If our nonrenewal is based on the condition of the premises, you will be given 30 days' notice to remedy the identified conditions. If the identified conditions are remedied, coverage will be renewed. If the identified conditions are not remedied to our satisfaction, you will be given an additional 30 days, upon payment of premium, to correct the defective conditions.

**7.** The following paragraph is added:

**Renewal**

**a.** If we elect to renew this Policy and the renewal is subject to any of the following:

    **(1)** Increase in premium;

    **(2)** Change in deductible;

    **(3)** Reduction in limits of insurance; or

    **(4)** Substantial reduction in coverage;

    we will send written notice of the change(s) to the first Named Insured at least 30 days before the anniversary or expiration date of the Policy.

**b.** If renewal is subject to any condition described in **a.(1)** through **a.(4)** above, and we fail to provide notice 30 days before the anniversary or expiration date of this Policy, the following procedures apply:

    **(1)** The present policy will remain in effect until the earlier of the following:

        **(a)** 30 days after the date of sending of the notice; or

        **(b)** The effective date of replacement coverage obtained by the first Named Insured.

    **(2)** If the first Named Insured elects not to renew, any earned premium for the period of extension of the terminated policy will be calculated pro rata at the lower of the following rates:

        **(a)** The rates applicable to the terminated policy; or

        **(b)** The rates presently in effect.

    **(3)** If the first Named Insured accepts the renewal, the premium increase, if any, and other changes are effective the day following this Policy's anniversary or expiration date.



POLICY NUMBER:

**BUSINESSOWNERS**
**BP 14 17 01 10**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DESIGNATED LOCATION(S)
# GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE

| |
|---|
| **Designated Location(s):** |
| All premises scheduled in the Declarations. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**Section II – Liability** is amended as follows:

**A.** For all sums which the insured becomes legally obligated to pay as damages for "bodily injury" or "property damage" caused by "occurrences" covered under Paragraph **A.1.** Business Liability, and for all medical expenses caused by accidents covered under Paragraph **A.2.** Medical Expenses, which can be attributed only to ongoing operations at a single designated "location" shown in the Schedule above:

  **1.** A separate Designated Location General Aggregate Limit applies to each designated "location", and that limit is equal to the amount of the Other Than Products/Completed Operations Aggregate Limit shown in the Declarations.

  **2.** The Designated Location General Aggregate Limit is the most we will pay for the sum of all damages under Paragraph **A.1.** Business Liability, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under Paragraph **A.2.** Medical Expenses, regardless of the number of:

    **a.** Insureds;

    **b.** Claims made or "suits" brought; or

    **c.** Persons or organizations making claims or bringing "suits".

  **3.** Any payments made under Paragraph **A.1.** Business Liability for damages or under Paragraph **A.2.** Medical Expenses for medical expenses shall reduce the Designated Location General Aggregate Limit for that designated "location". Such payments shall not reduce the Other Than Products/Completed Operations Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Location General Aggregate Limit for any other designated "location" shown in the Schedule above.

  **4.** The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expenses continue to apply. However, instead of being subject to the Other Than Products/Completed Operations Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Location General Aggregate Limit.

© Insurance Services Office, Inc., 2009       □



**B.** For all sums under Paragraph **A.1.** Business Liability which the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" caused by "occurrences" and medical expenses caused by accidents under Paragraph **A.2.** Medical Expenses, which cannot be attributed only to operations at a single designated "location" shown in the Schedule above:

  **1.** Any payments made under Paragraph **A.1.** Business Liability for damages or under Paragraph **A.2.** Medical Expenses for medical expenses shall reduce the amount available under the Other Than Products/Completed Operations Aggregate Limit or the Products/Completed Operations Aggregate Limit, whichever is applicable; and

  **2.** Such payments shall not reduce any Designated Location General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products/Completed Operations Aggregate Limit, and not reduce the Other Than Products/Completed Operations Aggregate Limit nor the Designated Location General Aggregate Limit.

**D.** For the purposes of this endorsement, the **Liability And Medical Expenses Definitions** Section is amended by the addition of the following definition:

  "Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**E.** The provisions of Paragraph **D. Liability And Medical Expenses Limits Of Insurance**, not otherwise modified by this endorsement, shall continue to apply as stipulated.

POLICY NUMBER: 4074460

**BUSINESSOWNERS**
**BP 04 98 07 13**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EMPLOYEE BENEFITS LIABILITY COVERAGE
### THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE.
### PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE

**Employee Benefits Program:**

tbd

| Limit Of Insurance | | Deductible | Premium |
|---|---|---|---|
| **Each Employee** | **Aggregate** | **(Each Employee)** | |
| $ 1,000,000 | $ 1,000,000 | $1,000 | $ |

**Retroactive Date:** 12/26/2023

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Liability** is amended as follows:

1. The following is added to Paragraph **A. Coverages:**

   **Coverage – Employee Benefits Liability**

   **a. Insuring Agreement**

   **(1)** We will pay those sums that the insured becomes legally obligated to pay as damages because of any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any "claim" or "suit" that may result. But:

   **(a)** The amount we will pay for damages is limited as described in Paragraph **4.** of this endorsement; and

   **(b)** Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

   **(2)** This insurance applies to damages only if:

   **(a)** The act, error or omission is negligently committed in the "administration" of your "employee benefit program";

   **(b)** The act, error or omission did not take place before the Retroactive Date, if any, shown in the Schedule nor after the end of the policy period; and



**(c)** A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with Paragraph **a.(3)** below, during the policy period or an Extended Reporting Period we provide under Paragraph **6.** of this endorsement.

**(3)** A "claim" seeking damages will be deemed to have been made at the earlier of the following times:

**(a)** When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

**(b)** When we make settlement in accordance with Paragraph **a.(1)** above.

A "claim" received and recorded by the insured within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the "claim".

**(4)** All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

**b. Exclusions**

This insurance does not apply to:

**(1) Dishonest, Fraudulent, Criminal Or Malicious Act**

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission committed by any insured, including the willful or reckless violation of any statute.

**(2) Bodily Injury, Property Damage Or Personal And Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury".

**(3) Failure To Perform A Contract**

Damages arising out of failure of performance of contract by any insurer.

**(4) Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

**(5) Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any "claim" based upon:

**(a)** Failure of any investment to perform;

**(b)** Errors in providing information on past performance of investment vehicles; or

**(c)** Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

**(6) Workers' Compensation And Similar Laws**

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

**(7) ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

**(8) Available Benefits**

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

**(9) Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

**(10) Employment-related Practices**

Damages arising out of wrongful termination of employment, discrimination or other employment-related practices.

 © Insurance Services Office, Inc., 2012 BP 04 98 07 13



**2.** For the purposes of the coverage provided by this endorsement:

   **a.** All references to Supplementary Payments are replaced by Supplementary Payments and Employee Benefits Liability.

   **b.** Paragraphs **f.(1)(b)**, **f.(2)** and **f.(3)** Coverage Extension – Supplementary Payments do not apply.

**3.** For the purposes of the coverage provided by this endorsement, Paragraph **C.2. Who Is An Insured** is replaced by the following:

   **2.** Each of the following is also an insured:

      **a.** Each of your "employees" who is or was authorized to administer your "employee benefit program".

      **b.** Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

      **c.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this endorsement.

**4.** For the purposes of the coverage provided by this endorsement, Paragraph **D. Liability And Medical Expenses Limits Of Insurance** is replaced by the following:

   **a. Limits Of Insurance**

      **(1)** The Limits Of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

         **(a)** Insureds;

         **(b)** "Claims" made or "suits" brought;

         **(c)** Persons or organizations making "claims" or bringing "suits";

         **(d)** Acts, errors or omissions; or

         **(e)** Benefits included in your "employee benefit program".

      **(2)** The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

**(3)** Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

   **(a)** An act, error or omission; or

   **(b)** A series of related acts, errors or omissions;

negligently committed in the "administration" of your "employee benefit program".

However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**b. Deductible**

   **(1)** Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the Schedule as applicable to Each Employee. The Limits of Insurance shall not be reduced by the amount of this deductible.

   **(2)** The deductible amount stated in the Schedule applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

**(3)** The terms of this insurance, including those with respect to:

    **(a)** Our right and duty to defend any "suits" seeking those damages; and

    **(b)** Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim";

apply irrespective of the application of the deductible amount.

**(4)** We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.

**5.** For the purposes of the coverage provided by this endorsement, Paragraph **E.2. Duties In The Event Of Occurrence, Offense, Claim Or Suit** is replaced by the following:

**2. Duties In The Event Of An Act, Error Or Omission, Or Claim Or Suit**

  **a.** You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim". To the extent possible, notice should include:

    **(1)** What the act, error or omission was and when it occurred; and

    **(2)** The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

  **b.** If a "claim" is made or "suit" is brought against any insured, you must:

    **(1)** Immediately record the specifics of the "claim" or "suit" and the date received; and

    **(2)** Notify us as soon as practicable.

You must also see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

  **c.** You and any other involved insured must:

    **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

    **(2)** Authorize us to obtain records and other information;

    **(3)** Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

  **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

**6.** For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added:

**Extended Reporting Period**

  **a.** You will have the right to purchase an Extended Reporting Period, as described below, if:

    **(1)** This endorsement is canceled or not renewed; or

    **(2)** We renew or replace this endorsement with insurance that:

      **(a)** Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

      **(b)** Does not apply to an act, error or omission on a claims-made basis.

  **b.** The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to "claims" for acts, errors or omissions that were first committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule. Once in effect, the Extended Reporting Period may not be canceled.

  **c.** An Extended Reporting Period of five years is available, but only by an endorsement and for an extra charge.

You must give us a written request for the endorsement within 60 days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

    **(1)** The "employee benefit programs" insured;

    **(2)** Previous types and amounts of insurance;

© Insurance Services Office, Inc., 2012



**(3)** Limits of Insurance available under this endorsement for future payment of damages; and

**(4)** Other related factors.

The additional premium will not exceed 100% of the annual premium for this endorsement.

The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period.

**d.** If the Extended Reporting Period is in effect, we will provide an Extended Reporting Period Aggregate Limit of Insurance described below, but only for claims first received and recorded during the Extended Reporting Period.

The Extended Reporting Period Aggregate Limit of Insurance will be equal to the dollar amount shown in the Schedule of this endorsement under Limits of Insurance.

Paragraph **4.a.(2)** of this endorsement will be amended accordingly. The Each Employee Limit shown in the Schedule will then continue to apply as set forth in Paragraph **4.a.(3)**.

**7.** For the purposes of the coverage provided by this endorsement, the following definitions are added to Paragraph **F. Liability And Medical Expenses Definitions:**

**a.** "Administration" means:

**(1)** Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

**(2)** Handling records in connection with the "employee benefit program"; or

**(3)** Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

However, "administration" does not include handling payroll deductions.

**b.** "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pretax dollars.

**c.** "Claim" means any demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

**d.** "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

**(1)** Group life insurance; group accident or health insurance; dental, vision and hearing plans; and flexible spending accounts, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

**(2)** Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

**(3)** Unemployment insurance, social security benefits, workers' compensation and disability benefits;

**(4)** Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family and civil leave; tuition assistance plans; transportation and health club subsidies; and

**(5)** Any other similar benefits designated in the Schedule or added thereto by endorsement.

**8.** For the purposes of the coverage provided by this endorsement, Paragraphs **F.5.** and **F.18. Liability And Medical Expenses Definitions** are replaced by the following:

**5.** "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".



18. "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

B. **Section III – Common Policy Conditions** is amended as follows:

   For the purposes of the coverage provided by this endorsement, Paragraph **2.** under **H. Other Insurance** is replaced by the following:

   2. This Employee Benefits Liability insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

      That is effective prior to the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached and that applies to an act, error or omission on other than a claims-made basis, if:

      a. No Retroactive Date is shown in the Schedule of this endorsement; or

      b. The other insurance has a policy period which continues after the Retroactive Date shown in the Schedule of this endorsement.



**BUSINESSOWNERS**
**BP 04 17 01 10**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following exclusion is added to Paragraph **B.1. Exclusions – Applicable To Business Liability Coverage** in **Section II – Liability:**

This insurance does not apply to "bodily injury" or "personal and advertising injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraph **(a)**, **(b)** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraph **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

BUSINESSOWNERS
BP 15 04 05 14

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**A.** Exclusion **B.1.q.** of **Section II – Liability** is replaced by the following:

This insurance does not apply to:

**q. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

**(1)** Damages, other than damages because of "personal and advertising injury", arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

© Insurance Services Office, Inc., 2013



**B.** The following is added to Paragraph **B.1.p. Personal And Advertising Injury** Exclusion of **Section II – Liability:**

This insurance does not apply to:

**p. Personal And Advertising Injury**

"Personal and advertising injury":

Arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

BUSINESSOWNERS
01 6003 08 22

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ASBESTOS

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**Section II – Liability** is amended as follows:

The following exclusion is added to Paragraph **B. Exclusions – 1. Applicable to Business Liability Coverage. f.**

**Pollution:**

**(3)** Asbestos

This insurance does not apply to:

**(a)** "Bodily injury", "property damage", or "personal and advertising injury" arising out of:

**(i.)** The actual, alleged, or threatened inhalation, ingestion, or physical exposure to asbestos, asbestos fibers or goods or products containing asbestos or asbestos fibers;

**(ii.)** The use of asbestos or asbestos fibers in constructing or manufacturing any good, product, building or structure;

**(iii.)** The removal or abatement of asbestos or asbestos fibers from any good, product, building or structure;

**(iv.)** The encapsulation or containment of asbestos or asbestos fibers within a building;

**(v.)** Damage to, loss of use of, or reduction in the value of a building or any property due to the actual or alleged presence of asbestos or asbestos fibers;

**(vi.)** The manufacture, sale, transportation, storage or disposal of asbestos or goods, or products containing asbestos or asbestos fibers; or

**(vii.)** The release of asbestos or asbestos fibers from or at any good, product, building or structure;

**(b)** Any loss, cost or expense arising out of:

**(i.)** Any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of asbestos or asbestos fibers; or

**(ii.)** Any claim or suit by or on behalf of a governmental authority or any other party for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of asbestos or asbestos fibers.

 © 2022 WCF National Insurance Company, a Utah Stock Insurance Corporation, NAIC No. 40517. All Rights Reserved. May not be copied without permission. Includes copyrighted material of Insurance Services Office, Inc., with its permission.



POLICY NUMBER: 4074460

**BUSINESSOWNERS**
**01 6006 04 20**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – DESIGNATED ONGOING OPERATIONS

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| Description of Designated Ongoing Operation(s): |
|---|
| na |

| Specified Location (If Applicable): |
|---|
|  |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**Section II – Liability** is amended as follows:

The following exclusion is added to Paragraph **B. Exclusions – 1. Applicable to Business Liability Coverage:**

This insurance does not apply to "bodily injury" or "property damage" arising out of the ongoing operations described in the Schedule of this endorsement, regardless of whether such operations are conducted by you or on your behalf or whether the operations are conducted for yourself or for others.

Unless a "location" is specified in the Schedule, this exclusion applies regardless of where such operations are conducted by you or on your behalf. If a specific "location" is designated in the Schedule of this endorsement, this exclusion applies only to the described ongoing operations conducted at that "location".

For the purpose of this endorsement, "location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

    © 2020 WCF National Insurance Company, a Utah Stock Corporation, NAIC No. 40517. All Rights Reserved. May not be copied without permission. Includes copyrighted material of Insurance Services Office, Inc., with its permission.



**BUSINESSOWNERS**
**01 6014 04 20**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – LEAD

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**Section II – Liability** is amended as follows:

The following exclusion is added to Paragraph **B. Exclusions – 1. Applicable to Business Liability Coverage**:

**Lead**

This insurance does not apply to:

1. "Bodily injury," "property damage," or "personal and advertising injury" arising out of:

    a. The actual, alleged or threatened ingestion, inhalation or absorption of lead into a person;

    b. Damage to, loss of use of, or reduction in the value of a building or any property due to the actual or alleged presence of lead;

    c. The removal or abatement of lead from any building or from any property; or

    d. The encapsulation or containment of lead within a building.

2. Any loss, cost, or expense arising out of:

    a. Any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of lead; or

    b. Arising out of any claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.



POLICY NUMBER: 4074460

**BUSINESSOWNERS**
**01 7027 01 23**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – NEW CONSTRUCTION OF OR CONVERSION INTO RESIDENTIAL PROPERTY

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**Schedule**

| Location(s) | |
|---|---|
| **Project(s)** | |

This exclusion does not apply to "new construction" of "residential property" or conversion of real property into "residential property" at the locations or projects listed in the Schedule above. If no entry appears in the Schedule, this exclusion applies to all locations and projects.

1. The following exclusion is added to **SECTION II -- LIABILITY**, Paragraph **B. Exclusions**, Subparagraph **1. Applicable to Business Liability Coverage:**

   **t. Residential Property**

   "Bodily injury" or "property damage" or "personal and advertising injury" that occurs during the policy period arising out of, resulting from, or related to "new construction" of "residential property" or any conversion of real property into "residential property".

   This exclusion does not apply if:

   (1) A Certificate of Occupancy or Certificate of Substantial Completion was issued, and the "residential property" was put to its intended use before you were contracted to perform service, repair, or renovation work;

   (2) You performed service, repair, or renovation work under a contract or agreement with one or more natural persons who own the "residential property" or with one or more natural persons who is the grantor of a revocable trust which owns the "residential property"; and

   (3) The service, repair, or renovation work was not being done to repair or replace "your work" or "your product" that was performed prior to the time a Certificate of Occupancy or Certificate of Substantial Completion was issued, and the "residential property" was put to its intended use before the service, repair, or renovation work commenced.

2. The following definitions are added to **SECTION II – LIABILITY**, Paragraph **F. Liability And Medical Expenses Definitions:**

01 7027 01 23          © 2022 WCF National Insurance Company, a Utah Stock Insurance Corporation,
NAIC No. 40517. All Rights Reserved. May not be copied without permission.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.          **Page 1 of 2**

"Apartment" means a unit of residential real property in a multi-unit residential building or project, where all units are owned by and titled to a single person or entity. "Apartment" does not include a "cooperative".

"Condominium, townhome, or multi-family dwelling" means a unit of residential real property in a multi-unit residential building or project, where each unit is separately owned and titled.

"Cooperative" means a residential housing corporation where each resident is a shareholder in the corporation.

"New construction" means any construction operations on "residential property" performed by you or on your behalf prior to the issuance of a Certificate of Substantial Completion or Certificate of Occupancy for that "residential property".

"Residential property" means any structure that is used or is intended to be used for human residency including but not limited to a single-family dwelling, "cooperative", "condominium, townhome, or multi-family dwelling", and/or "apartment".

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

© 2022 WCF National Insurance Company, a Utah Stock Insurance Corporation, NAIC No. 40517. All Rights Reserved. May not be copied without permission. Includes copyrighted material of Insurance Services Office, Inc., with its permission.



BUSINESSOWNERS
BP 05 17 01 06

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – SILICA OR SILICA-RELATED DUST

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**A.** The following exclusion is added to Paragraph **B. Exclusions** in Section II – Liability:

**B. Exclusions**

This insurance does not apply to:

**SILICA OR SILICA-RELATED DUST**

1. "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

2. "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

3. "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

4. Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following definitions are added to Paragraph **F. Liability And Medical Expenses Definitions** in **Section II – Liability:**

1. "Silica" means silicon dioxide, (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

2. "Silica-related dust" means a mixture or combination of silica and other dust or particles.

   © ISO Properties, Inc., 2005     ☐



**BUSINESSOWNERS**
**01 6001 04 20**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIABILITY BROADENING ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following listing is a general coverage description only. Read all the provisions of this endorsement and the rest of your policy carefully to determine rights, duties, and what is and is not covered. However, coverage for any injury, damage or medical expenses described in any of the provisions of this endorsement may be excluded or limited by another endorsement to this Coverage Form, and these coverage broadening provisions do not apply to the extent that coverage is excluded or limited by such an endorsement.

| Subject | Page |
|---|---|
| Additional Insured - Lessors of Leased Equipment – Automatic | 4,5 |
| Additional Insured - Managers or Lessors of Premises – Automatic | 4 |
| Additional Insured - Other Persons or Organizations – Automatic | 5 |
| Additional Insured - Vendors - Automatic | 5,6 |
| Bodily Injury, Including Resulting Mental Anguish | 7 |
| Contract Penalties | 2 |
| Damage To Property - Exception For Elevators | 3 |
| Damage To Property - Exception For Equipment Loaned Or Rented | 2,3 |
| Incidental Medical Malpractice | 2,6 |
| Knowledge/Notice Of Occurrence | 6,7 |
| Other Insurance, Including Primary Provision | 7,8,9 |
| Personal Injury, including Abuse Of Process, Discrimination, Harassment | 7 |
| Supplementary Payments – Increased Bail Bond Amount - $3,000 | 2 |
| Supplementary Payments – Increased Loss Of Earnings - $500 Per Day | 2 |
| Unintentional Failure To Disclose Hazards | 7 |
| Waiver Of Transfer Of Rights Of Recovery Against Others To Us – Blanket | 9 |
| Who Is An Insured - Newly Acquired Organizations - 180 Days | 3 |



**Section II – Liability** is amended as follows:

1.  Paragraph **A.1.f.(1)(b) Coverage Extension – Supplementary Payments** is deleted and replaced by the following:

    **(b)** Up to $3,000 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for "bodily injury" applies. We do not have to furnish these bonds.

2.  Paragraph **A.1.f.(1)(d) Coverage Extension – Supplementary Payments** is deleted and replaced by the following:

    **(d)** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $500 a day because of time off from work.

3.  The following is added to Paragraph **A. Coverages**:

    **Contract Penalties**

    **a.** We will pay for the contract penalties you are legally liable to pay under the written provisions of a contract due to a material breach of that contract. This material breach of contract must be the direct result of direct physical loss or damage to property owned by you, occurring at premises you own or rent, and caused by fire, lighting, explosion, smoke, or water other than flood.

    No other obligation or liability to pay sums or perform acts or services is covered.

    **b.** This coverage only applies to direct physical loss or damage that occurs during the policy period.

    **c.** The most we will pay under this coverage is $5,000 in any one occurrence. The most we will pay for the sum of all amounts paid under this coverage is an aggregate of $5,000. Paragraph **D. Liability and Medical Expenses Limits Of Insurance** does not apply to this coverage.

4.  Paragraph **B.1.j.(4) Professional Services** is deleted and replaced by the following:

    **(4)** Medical, surgical, dental, X-ray or nursing services treatment, advice or instruction, however this does not apply to "Incidental Medical Malpractice Injury".

    With respect to this endorsement, "Incidental Medical Malpractice Injury" means bodily injury arising out of the rendering of or failure to render, during the policy period, medical, surgical, dental, paramedical, x-ray or nursing services.

    This coverage does not apply to:

    **a.** Expenses incurred by the insured for providing first aid at the time of an accident; or

    **b.** Any insured engaged in the business or occupation of providing any of the services described in the definition of "Incidental Medical Malpractice Injury" above; or

    **c.** Injury caused by any indemnitee if such indemnitee is engaged in the business or occupation of providing any of the services described in the definition of "Incidental Medical Malpractice Injury" above.



5. In Paragraph **B.1.k. Damage To Property** the following is added:

Paragraphs **(3)** and **(4)** of this exclusion do not apply to "property damage" to equipment rented or loaned to the insured, provided such equipment is not being used to perform any operations at a construction job site.

Paragraphs **(3)** and **(4)** of this exclusion do not apply to the use of elevators.

6. In Paragraph **C. Who Is An Insured** the following is added:

Any organization you newly acquire or form, other than a partnership, joint venture, or limited liability company and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   **a.** Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   **b.** Paragraph **A.1. Business Liability** does not apply to:

     **(1)** "Bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

     **(2)** "Personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture, or limited liability company that is not shown as a Named Insured in the Declarations.

7. In Paragraph **C. Who Is An Insured** the following is added:

Any of your subsidiaries, other than a partnership or joint venture, that is not shown as a Named Insured in the Declarations is a Named Insured if:

   **a.** You are the sole owner of, or maintain an ownership interest of more than 50% in, such subsidiary on the first day of the policy period; and

   **b.** Such subsidiary is not an insured under similar other insurance.

No such subsidiary is an insured for "bodily injury" or "property damage" that occurred, or "personal and advertising injury" caused by an offense committed:

   **a.** Before you maintained an ownership interest of more than 50% in such subsidiary; or

   **b.** After the date, if any, during the policy period that you no longer maintain an ownership interest of more than 50% in such subsidiary.

For purposes of Paragraph **1** of **C. Who Is An Insured**, each such subsidiary will be deemed to be designated in the Declarations as:

   **a.** A limited liability company; or

   **b.** An organization other than a partnership, joint venture or limited liability company;

   **c.** A trust;

as indicated in its name or the documents that govern its structure.



8. In Paragraph **C. Who is An Insured** the following is added:

Each of the following is also an additional insured, but only if you are required by a contract or agreement to provide them with such insurance as is afforded by this policy.

However, no person or organization is an additional insured under this provision if such person or organization is included as an additional insured by an endorsement issued by us and attached to this Coverage Form.

**Managers or Lessors of Premises**

a. Any person or organization from whom you lease premises, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and only if you are required by a contract or agreement to provide them with such insurance as is afforded by this policy.

However:

(1) The insurance afforded to such additional insureds only applies to the extent permitted by law; and

(2) The insurance afforded to such additional insureds will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

With respect to the insurance afforded to such additional insureds, this insurance does not apply to:

(1) Any "occurrence" that takes place after you cease to be a tenant in such premises.

(2) Structural alterations, new construction or demolition operations performed by or for such additional insureds.

With respect to the insurance afforded to such additional insureds, the following is added to Paragraph **D. Liability And Medical Expenses Limits Of Insurance**:

The most we will pay on behalf of the additional insured is the amount of insurance:

(1) Required by the contract or agreement; or

(2) Available under the applicable Limits Of Insurance shown in the Declarations;

whichever is less.

The insurance afforded to such additional insured does not increase the applicable Limits Of Insurance shown in the Declarations.

**Lessors of Leased Equipment**

b. Any person or organization from whom you lease equipment but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person or organization.

However:

(1) The insurance afforded to such additional insureds only applies to the extent permitted by law; and

(2) The insurance afforded to such additional insureds will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

With respect to the insurance afforded to such additional insureds, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

 © 2020 WCF National Insurance Company, a Utah Stock Insurance Corporation, NAIC No. 40517. All Rights Reserved. May not be copied without permission. Includes copyrighted material of Insurance Services Office, Inc., with its permission.



With respect to the insurance afforded to such additional insureds, the following is added to Paragraph **D. Liability And Medical Expenses Limits Of Insurance**:

The most we will pay on behalf of the additional insured is the amount of insurance:

**(1)** Required by the contract or agreement; or

**(2)** Available under the applicable Limits Of Insurance shown in the Declarations;

whichever is less.

The insurance afforded to such additional insured does not increase the applicable Limits Of Insurance shown in the Declarations.

### Other Persons Or Organizations Pursuant To Contract Or Agreement

**c.** Any person or organization but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf in the performance of your ongoing operations or in connection with your premises owned by or rented to you.

However:

**(1)** The insurance afforded to such additional insureds only applies to the extent permitted by law; and

**(2)** The insurance afforded to such additional insureds will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

With respect to the insurance afforded to such additional insureds, the following is added to Paragraph **D. Liability And Medical Expenses Limits Of Insurance**:

The most we will pay on behalf of the additional insured is the amount of insurance:

**(1)** Required by the contract or agreement; or

**(2)** Available under the applicable Limits Of Insurance shown in the Declarations;

whichever is less.

The insurance afforded to such additional insured does not increase the applicable Limits Of Insurance shown in the Declarations.

### Vendors

**d.** Any person or organization who is a vendor of "your products", but only with respect to "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the vendor's business.

However:

**(1)** The insurance afforded to such vendor only applies to the extent permitted by law; and

**(2)** If coverage provided to the vendor is required by a contract or agreement, the insurance afforded to such vendor will not be broader than that which you are required by the contract or agreement to provide for such vendor.



With respect to the insurance afforded to these vendors, the following additional exclusions apply:

(1) The insurance afforded the vendor does not apply to:

    (a) "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

    (b) Any express warranty unauthorized by you;

    (c) Any physical or chemical change in the product made intentionally by the vendor;

    (d) Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

    (e) Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

    (f) Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

    (g) Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

    (h) "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

        i. The exceptions contained in subparagraph (d) or (f); or

        ii. Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

(2) This insurance does not apply to any insured person or organization from whom you have acquired such products, or any ingredient, part or container entering into, accompanying or containing such products.

The most we will pay on behalf of the additional insured is the amount of insurance:

(1) Required by the contract or agreement; or

(2) Available under the applicable Limits Of Insurance shown in the Declarations;

whichever is less.

The insurance afforded to such vendor does not increase the applicable Limits Of Insurance shown in the Declarations

9.    Paragraph **C. 2.a.(1)(d) Who is an Insured** is deleted and replaced by the following:

    (d) Arising out of his or her providing or failing to provide professional health care services. However, this does not apply to a nurse, emergency medical technician or paramedic employed by you if you are not engaged in the business or occupation of providing medical, paramedical, surgical, dental, x-ray or nursing services.

10. In Paragraph **E.2. Duties In the Event Of Occurrence, Offense, Claim Or Suit** the following is added:

    **e.** The following provision applies to paragraph **a.** above:

    Notice of an "occurrence" or an offense which may result in a claim will be considered knowledge of the insured if known to an individual named insured, an "executive officer" (if you are a corporation), one of your partners who is an individual (if you are a partnership), one of your managers (if you are a limited liability company), one of your trustees who is an individual (if you are a trust); or an "employee" (such as an insurance, loss control or risk manager or administrator) designated by you to give such notice.

    **f.** The following provision applies to paragraph **b.** above:

    Notice of an "occurrence" or of an offense which may result in a claim will be deemed to be given as soon as practicable to us if it is given in good faith as soon as practicable to your workers' compensation, accident, or health insurer. This applies only if you subsequently give notice of the "occurrence" or offense to us as soon as practicable after any of the persons described in the paragraph **e.** above discovers that the "occurrence" or offense may result in sums to which the insurance provided under this Coverage Form may apply.

11. Paragraph **F.3. Liability and Medical Expenses Definitions**, is deleted and replaced by the following:

    **3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including mental anguish or death resulting from any of these at any time.

12. In Paragraph **F.14. Liability and Medical Expenses Definitions**, the following is added:

    **h.** Discrimination or harassment based on age, color, national origin, race, religion or sex, except when:

        **(1)** Done intentionally by or at the direction of, or with the knowledge or consent of:

            **(a)** Any insured; or

            **(b)** Any executive officer, director, stockholder, partner or member of the insured; or

        **(2)** Directly or indirectly related to the employment, former or prospective employment, termination of employment, or application for employment of any person or persons by any insured; or Directly or indirectly related to the sale, rental, lease, or sublease or prospective sale, rental, lease or sub-lease of any room, dwelling or premises by or at the direction of any insured; or

        **(3)** Insurance for such discrimination is prohibited by or held in violation of law, public policy, legislation, court decision or administrative filing.

    The insurance afforded under this provision does not apply to fines or penalties imposed because of discrimination or harassment.

    This provision does not apply if coverage for Personal and Advertising Injury Liability is otherwise excluded under this Coverage Form.

13. Paragraph **F.14.b. Liability And Medical Expenses Definitions**, is deleted and replaced by:

    **b.** Malicious prosecution, abuse of process, and wrongful use of civil proceedings.

 © 2020 WCF National Insurance Company, a Utah Stock Insurance Corporation, NAIC No. 40517. All Rights Reserved. May not be copied without permission. Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**Section III – Common Policy Conditions** is amended as follows:

1. In Paragraph **C. Concealment, Misrepresentation or Fraud** the following is added:

   Your failure to disclose all hazards existing as of the inception date of this Policy will not void this Policy if such failure, or omission, was not intentional.

2. In Paragraph **H. Other Insurance**, Paragraphs **2.** and **3.** are deleted and replaced by the following:

   2. Applicable to Business Liability Coverage:

      If other valid and collectible insurance is available to the insured for a loss we cover under this insurance, our obligations are limited as follows:

      a. Primary Insurance

         This insurance is primary except when paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in paragraph **c.** below.

      b. Excess Insurance

         (1) This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

             (a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

             (b) That is insurance that applies to "property damage" to premises rented to you or temporarily occupied by you with permission of the owner;

             (c) If the loss arises out of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of **B. Exclusions, 1. Applicable to Business Liability Coverage**;

             (d) If the loss arises out of "property damage" to loaned or rented equipment or the use of elevators to the extent not subject to Exclusion **k.** of **B. Exclusions, 1. Applicable to Business Liability**;

             (e) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured;

             (f) If the loss arises from "incidental medical malpractice injury".

         (2) When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

         (3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

             (a) The total amount that all such other insurance would pay for the loss in the absence of this insurance;

             (b) The total of all deductible and self-insured amounts under all that other insurance.

 © 2020 WCF National Insurance Company, a Utah Stock Insurance Corporation, NAIC No. 40517. All Rights Reserved. May not be copied without permission. Includes copyrighted material of Insurance Services Office, Inc., with its permission.

c. Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers

d. Primary And Non-Contributory Insurance If Required By Contract

If you specifically agree in a contract or agreement that the insurance afforded to an additional insured under this Coverage Part must apply on a primary basis, or a primary and noncontributory basis, this insurance is primary to other insurance that is available to such insured which covers such insured as a named insured, and we will not share with that other insurance, provided that:

(1) The "bodily injury" or "property damage" for which coverage is sought occurs; and

(2) The "personal and advertising injury" for which coverage is sought is caused by an offense that is committed; subsequent to the signing of that contract or agreement by you.

3. Paragraph **K.2. Transfer of Rights of Recovery Against Others To Us** is deleted and replaced by the following:

2. Applicable to Businessowners Liability Coverage:

We will waive the rights of recovery we would otherwise have had against another person or organization, for loss to which this insurance applies, provided the insured has waived their rights of recovery against such person or organization in a contract or agreement that is executed before such loss.

To the extent that the insured's rights to recover all or part of any payment made under this Coverage Part have not been waived prior to loss as stated above, those rights are automatically transferred to us. The insured must do nothing after loss to impair these rights. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce these rights. We may pursue our own right of subrogation against a third party without regard to whether the insured is made whole by any recovery. This condition does not apply to Medical Expenses Coverage.

 © 2020 WCF National Insurance Company, a Utah Stock Insurance Corporation, NAIC No. 40517. All Rights Reserved. May not be copied without permission. Includes copyrighted material of Insurance Services Office, Inc., with its permission.



POLICY NUMBER: 4074460

**BUSINESSOWNERS**
**BP 04 89 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIQUOR LIABILITY COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| | |
|---|---|
| **A.  Liquor Liability Aggregate Limit:** <br> $ | |
| **B.  Each Common Cause Limit:** <br> $ 2000000.000 | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**Section II – Liability** is amended as follows:

**A.** The insurance provided under Paragraph **A.1. Business Liability** also applies to all "bodily injury" or "property damage" arising out of the selling, serving or furnishing of alcoholic beverages.

**B.** For the insurance provided by this endorsement only, Paragraph **B. Exclusions** is amended as follows:

  **1.** Paragraph **1. Applicable To Business Liability Coverages**, other than Exclusions **a. Expected Or Intended Injury**, **d. Workers' Compensation And Similar Laws** and **e. Employer's Liability**, does not apply.

  **2.** The following exclusions are added:

    This insurance does not apply to:

    **a.** "Bodily injury" or "property damage" arising out of any alcoholic beverage sold, served or furnished while any required license is not in effect.

    **b.** "Bodily injury" or "property damage" arising out of "your product". This exclusion does not apply to "bodily injury" or "property damage" for which the insured or the insured's indemnities may be held liable by reason of:

      **(1)** Causing or contributing to the intoxication of any person;

      **(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

      **(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

    **c.** Any "bodily injury" or "property damage" with respect to which other insurance is afforded, or would be afforded but for the exhaustion of the Limits of Insurance.

    This exclusion does not apply if the other insurance responds to liability for "bodily injury" or "property damage" imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage.

**C.** The following are added to Paragraph **D. Liability And Medical Expenses Limits Of Insurance:**

  **D. Liability And Medical Expenses Limits Of Insurance**

    **5.** The Liquor Liability Aggregate Limit shown in the Schedule of this endorsement is the most we will pay for all "bodily injury" and "property damage" as the result of the selling, serving or furnishing of alcoholic beverages.



**6.** Subject to the Liquor Liability Aggregate Limit, the Each Common Cause Limit shown in the Schedule of this endorsement is the most we will pay for all "bodily injury" and "property damage" sustained by one or more persons or organizations as the result of the selling, serving or furnishing of alcoholic beverages to any one person.

Neither the Liability And Medical Expenses Limit of Insurance shown in the Declarations nor its aggregate limits apply to damages arising out of the selling, serving or furnishing of alcoholic beverages.

© Insurance Services Office, Inc., 2009

**BP 04 89 01 10**    □



**BUSINESSOWNERS**
**BP 04 92 07 02**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION

This endorsement modifies insurance provided under the following:

    BUSINESSOWNERS COVERAGE FORM

Exclusion **B.1.f. Pollution** in **Section II – Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

   **(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(2)** Any loss, cost or expense arising out of any:

   **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

   **(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".



BUSINESSOWNERS
BP 04 93 01 06

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION WITH A BUILDING HEATING EQUIPMENT EXCEPTION AND A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

Exclusion **B.1.f. Pollution** in **Section II – Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to:

**(a)** "Bodily injury" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

**(b)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

**(i)** At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

**(ii)** At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".



BUSINESSOWNERS
01 6036 04 20

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TWO OR MORE COVERAGE PARTS OR POLICIES ISSUED BY US

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**Section II – Liability** is amended as follows:

The following condition is added to **E. Liability And Medical Expenses General Conditions**:

**Two Or More Coverage Parts Or Policies Issued By Us**

If this policy and any other coverage part, form, endorsement, or policy issued to you by us, or any company affiliated with us, apply to the same professional incident, claim, "suit", "occurrence", offense, accident, "wrongful act" or loss, the maximum Limit of Insurance under all such coverage parts, forms, endorsements or policies combined shall not exceed the highest applicable Limit of Insurance under any one coverage part, form, endorsement or policy.

This condition does not apply to any Excess or Umbrella Policy issued by us, or any company affiliated with us, specifically to apply as excess insurance over this policy.