**WO**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

WCF National Insurance Company,

Plaintiff,

v.

Gilligan Commercial LLC, et al.,

Defendants.

No. CV-24-03497-PHX-DWL

**ORDER**

This is an insurance coverage action arising out of a dispute currently being litigated in Arizona state court. Around November 2023, Lee Scott ("Scott") began working with Gilligan Commercial LLC ("Gilligan"), a brokerage firm, to find a business to purchase. Gilligan, acting through its agent Joe Balbona ("Balbona"), brokered a deal in which Scott and his company WindTech Audio Inc. ("WindTech") (collectively, the "State Court Plaintiffs") would purchase Olsen Audio Group Inc. ("Olsen Audio"). After the parties signed the purchase agreement, Scott was copied on an email from Balbona's email address directing Darci Finsterwalder ("Finsterwalder"), the agreed-upon escrow agent, to provide Scott with instructions on how to wire the purchase amount of $1,378,245.05 to the escrow account. Balbona's email, however, was sent to an email account that was fraudulently posing as Finsterwalder. The imposter then contacted Scott and provided Scott with instructions on how to wire the funds. Scott complied with these instructions. Days later, it became clear that Scott had been defrauded, and the lion's share of the money was and remains unrecoverable.

1    Afterward, Scott and WindTech sued Gilligan in state court (the "State Court
2    Action" or "State Court Lawsuit") under an array of tort theories.  Gilligan's insurer, WCF
3    National Insurance Company ("WCF"), then brought this action for declaratory relief,
4    seeking a determination that an insurance policy it issued to Gilligan (the "Policy") does
5    not require it to defend or indemnify Gilligan.

6    Now pending before the Court is Gilligan's motion to dismiss for lack of
7    jurisdiction.  (Doc. 18.)  For the reasons that follow, the motion is granted.

8    **BACKGROUND**

9    The following facts, presumed true, are derived from WCF's operative pleading, the
10   First Amended Complaint ("FAC"), and other documents incorporated by reference
11   therein.  (Doc. 13.)

12   I.    The Parties And Other Relevant Entities

13   WCF is an insurance company based in Utah.  (*Id.* at 2 ¶ 6.)

14   Gilligan is a brokerage company based in Arizona.  (*Id.* at 2 ¶ 7.)

15   Balbona was at all times relevant to this action acting as the agent of Gilligan.  (*Id.*
16   at 16 ¶¶ 11-14; Doc. 18 at 17 ¶ 11.)

17   Scott is the sole owner of WindTech.  (Doc. 13 at 16 ¶ 4.)

18   Finsterwalder was the escrow officer for the transaction.  (*Id.* at 14 ¶ 1.)

19   II.   State Court Action

20   Around November 2023, Scott began working with Gilligan, via its agent Balbona,
21   to locate a business to purchase.  (*Id.* at 16 ¶¶ 10-11.)  "Balbona also represented Olsen
22   who, at that time, was interested in selling his business," Olsen Audio.  (*Id.* at 16 ¶ 12.)

23   On April 11, 2024, Scott and WindTech entered into a contract to purchase Olsen
24   Audio.  (*Id.* at 14-15 ¶ 1.)  "The parties to the transaction agreed that the purchase price for
25   the business would be $1,400,000.00, with an additional $149,761.03 payment for
26   inventory."  (*Id.* at 17 ¶ 18.)

27   On or around April 12, 2024, "Scott deposited $25,000.00 with Arizona Escrow to
28   open escrow . . . .  The parties agreed that the 'Closing Payment' of $1,375,000.00 would

be made to Arizona Escrow." (*Id.* at 17 ¶¶ 19-20.)

On May 28, 2024, Balbona's email account was used to send an email to Scott, Olsen Audio, and a third email address that was supposed to belong to Finsterwalder, directing Finsterwalder to give Scott instructions on how to wire the remaining money into escrow. (*Id.* at 17 ¶ 23.) However, "[r]ather than copying Finsterwalder's true email (darci@arizonaescrow.com)," the email "copied John Doe (darci@*arizoona*escrow.com) (emphasis in original)." (*Id.* at 17 ¶ 25.) Scott later spoke over the phone to John Doe (or John Doe's agent), who provided the instructions to send the wire. (*Id.* at 18 ¶ 29.)[1] "Scott then sent an email to his financial institution, Morgan Stanley, and Morgan Stanley processed the wire for $1,378,245.05." (*Id.* at 18 ¶ 30.)

On May 29, 2024, "[t]he wire officially processed." (*Id.* at 18 ¶ 31.)

On May 30, 2024, "Finsterwalder contacted Scott by phone regarding the status of the wire, indicating that Arizona Escrow had neither seen nor requested the wire yet." (*Id.* at 18 ¶ 32.) Eventually, the parties discovered the error and worked to track down the funds. (*Id.* at 18 ¶¶ 33-36.) Scott was able to recover $468,245.05 of the funds but learned that $910,000 had been transferred to a Mexican bank. (*Id.* at 18-19 ¶¶ 37-39.) "Instead of abandoning the business opportunity, Scott decided to still follow through with his purchase of the business," and he liquidated assets in order to do so, resulting in at least "$436,888.00 in capital gains tax losses" and a total overall loss of "at least $1,346,800.00." (*Id.* at 19 ¶¶ 40-45.)

On November 13, 2024, Scott and WindTech filed the State Court Action in Maricopa County Superior Court, asserting various tort claims against Gilligan. (*Id.* at 14-23.) The complaint (the "State Court Complaint") alleges, in relevant part, that "Balbona, acting in his capacity as a Gilligan-employed broker to the transaction in which Balbona and Gilligan had a pecuniary interest, supplied false information for the guidance of Olsen and Scott by including John Doe in the 7:14 am Email," thereby committing negligent misrepresentation on Gilligan's behalf. (*Id.* at 20 ¶¶ 50-58.) The State Court Complaint

---

[1]     John Doe remains unknown to Scott. (*Id.* at 17 ¶ 26.)

also alleges that due to Balbona's misrepresentation, "Gilligan breached the implied covenant of good faith and fair dealing, denying Scott the rightful benefits of the bargain." (*Id.* at 20-21 ¶¶ 59-66.)  The State Court Complaint further asserts claims for negligence and breach of fiduciary duty arising out of Gilligan's failure to properly manage Balbona and/or properly protect its IT systems from breaches.  (*Id.* at 21-22 ¶¶ 67-82.)

III.    <u>Insurance Coverage Dispute</u>

"WCF issued a Businessowners Policy, Policy No. 4074460 to Gilligan."  (*Id.* at 4 ¶ 26, cleaned up.)  The Policy provides in relevant part:

**A.    Coverages**

**1**.    **Business Liability**

    **a**.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance implies.

(*Id.* at 102.)

The Policy further provides:

**F.    Liability And Medical Expenses Definitions**

…

    **14.**    "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of . . .

        **e.**    Oral or written publication, in any manner, of material that violates a person's right of privacy.

(*Id.* at 114, 116.)  A subsequent endorsement change to the Policy also provides that "[t]his insurance does not apply to . . . [d]amages, other than damages because of 'personal and advertising injury,' arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information."  (*Id.* at 135.)

On November 15, 2024, after the State Court Plaintiffs filed the State Court Complaint, counsel for Gilligan sent WCF an email "request[ing] that WCF defend and

1    indemnify Gilligan." (Doc. 18 at 24.)  Gilligan's request was premised on the allegation
2    that it suffered a "personal and advertising injury" arising out of the fraudulent
3    misappropriation or "spoofing" of Balbona's email.  (*Id.*)  Gilligan asserted that this
4    triggered coverage under the Policy for harm "arising out of . . . [o]ral or written
5    publication, in any manner, of material that violates a person's right of privacy." (*Id.*)

6        On November 26, 2024, counsel for WCF sent Gilligan a response (the "Reservation
7    of Rights Letter") stating that any harm Gilligan would suffer as a result of the State Court
8    Action would not be covered under the Policy because the State Court Complaint "does
9    not appear to assert a claim for personal and advertising injury under the Policy." (*Id.* at
10   29.)  WCF also contended that the harm suffered would not be covered for the additional
11   reason that Gilligan's email system had been breached and that the Policy excludes
12   coverage for a "personal and advertising injury" arising out of any access to or disclosure
13   of any person's or organization's confidential or personal information.  (*Id.*)   The
14   Reservation of Rights Letter also asserted "the right to disclaim coverage in the future and
15   withdraw from providing a defense in the Lawsuit." (*Id.* at 35.)  Notwithstanding these
16   statements, WCF agreed to provide Gilligan with a defense to the State Court Lawsuit
17   subject to a reservation of rights.  (*Id.*)  "WCF is currently defending Gilligan in the State-
18   Court Lawsuit under this reservation of rights."  (Doc. 18 at 4.)

19   IV.    The Federal Action

20       On January 24, 2025, WCF filed the FAC.  (Doc. 13.)  The FAC alleges that
21   "[b]ecause the [State Court Action] is outside the coverage afforded by the Policy, WCF is
22   entitled to a declaratory judgment in its favor pursuant to 28 U.S.C. § 2201, declaring the
23   Policy does not afford coverage for the [State Court Action] and WCF has no duty to defend
24   or indemnify Defendants with respect to the [State Court Action]." (*Id.* at 11 ¶ 2.)

25       On February 7, 2025, Gilligan filed the pending motion to dismiss.  (Doc. 18.)  The
26   motion is now fully briefed.  (Docs. 24, 27.)[2]

27

28   _____
     [2]    Gilligan's request for oral argument (Docs. 18, 27) is denied because the issues are
     fully briefed and argument would not aid the decisional process.  *See* LRCiv 7.2(f).

**DISCUSSION**

I.    <u>Legal Standard</u>

"Generally, district courts have a 'virtually unflagging obligation . . . to hear jurisdictionally sufficient claims.'" *Countrywide Home Loans, Inc. v. Mortg. Guar. Ins. Corp.*, 642 F.3d 849, 852 (9th Cir. 2011) (quoting *Snodgrass v. Provident Life & Acc. Ins. Co.*, 147 F.3d 1163, 1167 (9th Cir. 1998)).   However, the Declaratory Judgment Act ("DJA") "relaxes this obligation in cases where a party seeks declaratory relief." *Id.*  Under the DJA,

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a) (emphasis added).

Thus, even when a claim for declaratory relief "passes constitutional and statutory muster, the district court must also be satisfied that entertaining the action is appropriate. This determination is discretionary, for the [DJA] is deliberately cast in terms of permissive, rather than mandatory, authority.   The [DJA] gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998) (cleaned up).   "Of course, this discretion is not unfettered.  A District Court cannot decline to entertain such an action as a matter of whim or personal disinclination.  Prudential guidance for retention of the district court's authority is found in *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942), and its progeny." *Id.* (cleaned up).  "If there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court." *Id.* at 1225.  *See also Brillhart*, 316 U.S. at 495 ("Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties.").  "The pendency of a state court action, however, does not of itself require a

district court to refuse declaratory relief in federal court." *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367 (9th Cir. 1991).

The Ninth Circuit has clarified that "[t]he *Brillhart* factors remain the philosophic touchstone for the district court. The district court should [1] avoid needless determination of state law issues; [2] it should discourage litigants from filing declaratory actions as a means of forum shopping; and [3] it should avoid duplicative litigation." *Dizol*, 133 F.3d at 1225. However, "[t]he *Brillhart* factors are not exhaustive." *Id.* at 1225 n.5. The Ninth Circuit has also articulated additional factors for district courts to consider in determining whether to exercise jurisdiction over declaratory relief actions, including "[1] whether the declaratory action will settle all aspects of the controversy; [2] whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; or [4] whether the use of a declaratory action will result in entanglement between the federal and state court systems. In addition, the district court might also consider [5] the convenience of the parties, and [6] the availability and relative convenience of other remedies." *Id.* *See also Wilton v. Seven Falls Co.*, 515 U.S. 277, 283 (1995).

In analyzing the relevant factors, "the district court must make a sufficient record of its reasoning to enable appropriate appellate review." *Dizol*, 133 F.3d at 1225. Upon declining to exercise its discretion to hear a declaratory judgment action, "a district court is authorized . . . to stay or to dismiss an action." *Wilton*, 515 U.S. at 288.

II.    Presumption Of Abstention

A.    **The Parties' Arguments**

Gilligan argues, relying principally on *American National Fire Ins. Co. v. Hungerford*, 53 F.3d 1012 (9th Cir. 1995), that "because WCF did not bring any non-discretionary claims and because there is a pending state proceeding arising out of the same factual scenario, this Court should begin its analysis with a presumption against exercising jurisdiction in this case." (Doc. 18 at 8-9, cleaned up.)

- 7 -

1    In response, WCF argues that "the [State Court Action] and this declaratory

2 judgment action are not 'parallel' proceedings because 'the ultimate legal determination'

3 in each lawsuit does not depend on the same facts" and thus the "facts at issue do not

4 overlap." (Doc. 24 at 9, cleaned up.)  WCF further argues that "[t]he [State Court]

5 Complaint does not assert a claim for 'bodily injury' or 'property damage' as those terms

6 are defined by the Policy and no party to the [State Court] Complaint is asserting otherwise.

7 As to the claim that there was a 'personal and advertising injury' that creates coverage, the

8 facts at issue are whether the unknown third-party bad actor that intercepted the wire

9 transfer committed an act of invasion of privacy and whether an act of invasion of privacy

10 by the third-party bad actor could trigger any liability coverage in the Policy.  Scott and

11 WindTech did not sue the unknown third-party bad actor and whether that third-party bad

12 actor committed an invasion of privacy against Balbona are not facts at issue in the [State

13 Court Action]." (*Id.*)

14    In reply, Gilligan argues "WCF does not dispute that the Ninth Circuit has clearly

15 stated that courts should generally decline to assert jurisdiction in insurance coverage and

16 other declaratory relief actions presenting only issues of state law during the pendency of

17 parallel proceedings in state court unless there are circumstances present to warrant an

18 exception to that rule." (Doc. 27 at 5, cleaned up.)  Gilligan argues that "WCF improperly

19 casts aside these controlling Ninth Circuit decisions and asserts that the State Court Action

20 is not parallel because WCF is not a party to that lawsuit and the issues are not the same.

21 However, WCF does not dispute that the State Court Lawsuit and the instant action arise

22 out of the same factual transactions or occurrences relating to the wire fraud loss." (*Id.* at

23 5-6.)  Gilligan further contends that the "factual showing necessary to resolve the duty to

24 defend issue herein is the subject of a factual dispute in the State Court Lawsuit," and thus

25 "[t]his Court's resolution of the misappropriation issue might contradict the findings in the

26 State Court Lawsuit." (*Id.* at 7.)  "Therefore, the controlling Ninth Circuit cases instruct

27 that the pendency of parallel proceedings indicates that this case does not belong in federal

28 court." (*Id.* at 6.)

1

2    B.    **Analysis**

"If there are parallel state proceedings . . . at the time the federal declaratory action

3    is filed, there is a presumption that the entire suit should be heard in state court."  *Dizol*,

4    133 F.3d at 1225.  State and federal proceedings are considered "parallel" in this context if

5    (1) the proceedings "involv[e] the same issues and parties pending at the time the federal

6    declaratory action is filed," *id.*, or (2) the parties in the proceedings are not the same but

7    "an ongoing state proceeding involves a state law issue that is predicated on the same

8    factual transaction or occurrence involved in a matter pending before a federal court,".

9    *Hungerford*, 53 F.3d at 1017, *overruled in part on other grounds by Dizol*, 133 F.3d 1220.

10   Because WCF is not a party to the State Court Action and the State Court Action does not

11   implicate the issue of coverage, the two proceedings do not satisfy the first parallelism

12   prong.  The parties agree on this point.  (Doc. 24 at 9; Doc. 27 at 5.)

13   As to the second prong, courts look to whether "the ultimate legal determination in

14   each [action] depends upon the same facts."  *Hungerford*, 53 F.3d at 1017 (quoting *Allstate

15   Ins. Co. v. Mercier*, 913 F.2d 273, 278-79 (6th Cir. 1990)).  *See also Argonaut Ins. Co. v.

16   St. Francis Med. Ctr.*, 17 F.4th 1276, 1284-5 (9th Cir. 2021) ("[I]f the proceedings share

17   the same factual predicates and the issues depend on state law, the state court is the more

18   suitable forum for a petitioner to bring a related claim, and the district court [does] not

19   abuse its discretion by declining jurisdiction.") (cleaned up).

20   Although the State Court Action and the Federal Action are not identical, the two

21   actions still qualify as "parallel" because the resolution of each action depends on the same

22   disputed factual issues.  In the State Court Action, the court will need to determine whether

23   Balbona negligently sent the erroneous email, as the State Court Plaintiffs contend (Doc.

24   13 at 13 ¶¶ 23-25, 19-20 ¶¶ 51-55), or whether a third-party fraudster misappropriated

25   Balbona's email account, as Gilligan contends (Doc. 18 at 18 ¶ 23; Doc. 27 at 14-15).  The

26   question of insurance coverage here also turns on the resolution of that disputed factual

27   issue—Gilligan once again asserts that Balbona had his email account misappropriated

28   (Doc. 18 at 24), which assertion provides the foundation for Gilligan's contention that it

1    suffered a "personal and advertising injury" under the Policy as required to fall within the

2    insuring clause.  Thus, both proceedings will require a factual determination of whether the

3    alleged wrongful misappropriation of Balbona's email account occurred.   Under

4    *Hungerford*, the two proceedings are therefore parallel, triggering the presumption in favor

5    of abstention, because "the ultimate legal determination in each [action] depends upon the

6    same facts."  53 F.3d at 1017.

7         Additionally, if the Court were to determine that the email account was

8    misappropriated, it would then to determine whether the misappropriation was caused by

9    a breach of Gilligan's IT systems, thereby potentially exempting the alleged harm from

10   coverage (as WCF contends), or whether the misappropriation occurred in the absence of

11   a data breach (as Gilligan contends).  The same factual dispute exists in the State Court

12   Action.   (Doc. 13 at 17 ¶ 27 [State Court Complaint: "Upon information and belief,

13   Gilligan had very recently made changes to its IT systems, and as a result, its email system

14   was breached"]; Doc. 18 at 18 ¶ 27 [State Court Answer denying paragraph 27 of the State

15   Court Complaint].)  This second factual dispute provides another basis for treating the two

16   actions as parallel.

17        WCF's arguments to the contrary are unavailing.  WCF contends the Court need not

18   decide whether the email account was misappropriated because the State Court Plaintiffs

19   "did not sue the unknown third-party bad actor and whether that third-party bad actor

20   committed an invasion of privacy against Balbona are not facts at issue in the [State Court

21   Action]."  (Doc. 24 at 9.)  This argument overlooks that under Arizona law, "while a

22   liability insurer may initially rely on the allegations of the underlying complaint to

23   determine whether it must provide its insured with a defense, it may not rely on that

24   determination, without investigating the facts, once the insured has come forward and made

25   some factual showing that the suit is actually one for damages resulting from events which

26   do fall into policy terms."  *U.S. Fid. & Guar. Corp. v. Advance Roofing & Supply Co.*, 788

27   P.2d 1227, 1231 (Ariz. Ct. App. 1989) (citation omitted).  *See also Truck Ins. Exch. v.*

28   *Teixidor Enters. Inc.*, 2021 WL 3733194, *5 (Ariz. Ct. App. 2021) ("[E]ven if the

allegations in the complaint do not bring the suit within the policy, once an insured makes some factual showing that the suit is actually one for damages resulting from events that fall under policy terms, an insurer has a duty to investigate those facts and provide a defense when indicated.") (cleaned up).  Gilligan has indicated that it intends to present evidence in the State Court Action "that the email apparently sent on May 28, 2024, was sent by an unknown person who had wrongfully appropriated Mr. Balbona's name and email address and was impersonating Mr. Balbona (without Mr. Balbona's knowledge or consent) for the apparent purpose of perpetrating a fraud on Plaintiffs."  (Doc. 27 at 15 [excerpt from Gilligan's filing in the State Court Action].)

WCF also relies on the Court's prior decision in *Associated Indus. Ins. Co. Inc. v. Shamamian*, 2023 WL 8076222 (D. Ariz. 2023), but that reliance is misplaced.  There, as here, an insurer filed an action in federal court seeking a declaration that it had no duty to defend or indemnify an insured-defendant in a state court tort action.  *Id.* at *3-4.  There, as here, the insurer was not a party to the state court action.  *Id.* at *8.  The coverage dispute in *Shamamian* turned on whether a fee "inured to" the insured law firm.  *Id.*  The insurer argued that the only relevant fact that needed to be determined to answer that question was whether the law firm in fact received the fee.  *Id.*  The defendants, however, argued that other facts were necessary to determine whether the fee inured to the law firm—namely, whether the defendants were clients of the law firm and whether one of the defendants was acting with apparent authority for the law firm—and that those facts were also essential to the state court action.  *Id.*  The Court disagreed, reasoning as follows:

> [W]hether Shamamian had an attorney-client relationship with Davis Miles may hinge in part on whether Shamamian *thought* the fees went to Davis Miles, but it does not hinge on whether Davis Miles actually received those fees.  There is no overlap in the facts at issue between the attorney-client relationship and insurance coverage issues.  Similarly, although the State Court Action raises the issue whether Pasionek was an "apparent agent" of Davis Miles, apparent agency turns on whether the principal's conduct allows a third party reasonably to conclude that an agent is authorized to make certain representations or act in a particular way.  As with the attorney-client relationship issue, the facts necessary to determine the disputed insurance coverage issue do not overlap with the facts relevant to

determining whether Davis Miles held out Pasionek as its agent. The agency issue turns on third parties' assessments of Davis Miles's conduct, whereas the insurance coverage issue turns on whether Shamamian's payments to Pasionek in fact inured to Davis Miles.

*Id.* at *9 (citation omitted). Thus, facing this different set of facts, the Court concluded that the two proceedings were not parallel and thus the presumption in favor of abstention did not apply. *Id.* at *8-9.

WCF's reliance on *Great Divide Ins. Co. v. Bear Mountain Lodge, LLC*, 2016 WL 2771115 (D. Alaska 2016), which was cited with approval in *Shamamian*, is similarly unavailing. In that case, too, the court retained jurisdiction over a declaratory action by an insurer based in part on a finding that it was not truly parallel to the underling state court action. The court explained its reasoning in the following language:

The fact that there is an underlying tort case that involves the same fact pattern as the insurer's declaratory judgment action, and therefore has the potential for duplicative discovery, does not automatically bar declaratory relief. This principle holds true even if the resolution of the coverage dispute and the underlying tort dispute turns on a common factual inquiry, as long as the actual questions to be determined remain distinct between the coverage action and the tort action.

*Id.* at *2.

Nothing about this reasoning undermines the finding of parallelism here because the Federal Action and the State Court Action turn on more than just a generally "common factual inquiry." Rather, they will both require resolution of the same key factual issues—namely, whether Balbona's email account was misappropriated by a fraudster and, if so, whether that misappropriation was due to a data breach.

III.    *Brillhart* Factors

Even without the presumption in favor of abstention, the *Brillhart* factors independently counsel in favor of abstention under the circumstances.

A.    **Avoid Needless Determination Of State Law Issues**

1.    The Parties' Arguments

Gilligan argues that "[i]n this case, WCF's request for declaratory relief involves

- 12 -

interpretation of an insurance policy under Arizona law" and "[t]here is no need for this Court to resolve a state law insurance issue under the circumstances of this case." (Doc. 18 at 7.) Gilligan further argues that "the proper scope of the Policy's personal and advertising injury coverage for 'violation of the right of privacy' has not been the subject of any reported appellate decision in Arizona. Similarly, the interpretation of WCF's policy exclusion relating to access to or disclosure of confidential or personal information also is a matter of first impression in Arizona. Therefore, the pivotal coverage issues are both unsettled and potentially complex when applied to the alleged facts. Even though this Court may be capable of resolving these issues by reference to general principles of Arizona insurance law, an Arizona state court is the preferred forum for resolution of such novel state law issues." (*Id.*)

In response, WCF, relying on *Shamamian*, argues that "[i]n evaluating whether the [State Court] Complaint states a claim for bodily injury, property damage or personal and advertising injury to fall within the Policy's insuring clause, the Court will not need to 'adjudicate an unsettled state-law issue' but instead will 'rely on well-established principles of Arizona law regarding insurance policies and contract interpretation.'" (Doc. 24 at 8.) WCF also argues that the State Court Action is not a parallel proceeding for the reasons outlined above. (*Id.* at 9-10.) Last, WCF argues, quoting *Shamamian*, that "as to the federal interest in diversity jurisdiction cases, 'an indirect federal interest exists when a party invokes diversity jurisdiction to get its case into federal court, as diversity jurisdiction 'attempt[s] to mitigate perceived prejudice against a litigant in a judicial proceeding.'" (*Id.* at 10.)

In reply, Gilligan contends that WCF ignores controlling Ninth Circuit precedent, which does "not distinguish between basic, complex or unsettled issues of state law." (Doc. 27 at 2.) Gilligan further argues that these cases "demonstrate that dismissal can be affirmed in order to avoid needless determination of state law even in the absence of a similar state court proceeding." (*Id.*) Gilligan also argues that "abstention is particularly appropriate here because state insurance law issues herein are unsettled" and because

"controlling Ninth Circuit decisions compel the conclusion that this case involves parallel proceedings in state court." (*Id.* at 3-5.)

2. <u>Analysis</u>

The first *Brillhart* factor favors abstention. WCF does not dispute that the only law at issue in this case—insurance coverage—is governed by Arizona state law. WCF contends only that the law at issue is neither "needless" nor "unsettled." (Doc. 24 at 8-9.)

i. **Needless**

For the reasons outlined above, the State Court Action and the Federal Action turn on the same factual issues: whether Balbona's email was misappropriated and used to perpetrate the fraud on the State Court Plaintiffs and, if so, whether that misappropriation was the result of a data breach of Gilligan's IT systems. The relatedness of these two proceedings makes it unnecessary to rule on the state-law issue of insurance coverage, because the state court could just as well—indeed, more efficiently—address this insurance question as a part of a consolidated proceeding. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Aero Jet Servs., LLC*, 2011 WL 4708857, *3 (D. Ariz. 2011) ("The question before the Court in this case is not whether it *could* adjudicate the state law insurance coverage issue, but whether such adjudication would be 'needless' because that issue could be adjudicated in the pending state court proceeding."). *See also Hungerford*, 53 F.3d at 1019 n.7 ("The friction that might result from two parallel proceedings, both at the district and appellate court levels, is obvious. In addition to creating the appearance that the federal courts are encroaching upon state jurisdiction . . . [it] necessarily entails a risk that the state and federal courts might reach different conclusions when interpreting the law and facts of the case. Indeed, it is in part for this reason that we make a practice of consolidating related appeals and notifying panels of the existence of pending appeals raising similar issues."). Gilligan contends—and WCF does not dispute—that WCF could have filed its declaratory action in state court under A.R.S. §12-1831 *et seq.* (Doc. 18 at 8.)

Moreover, although "there is no presumption in favor of abstention in declaratory actions generally, nor in insurance coverage cases specifically," *Dizol*, 133 F.3d at 1225,

that fact does not prohibit the Court from considering in its *Brillhart* analysis that "comity concerns in favor of a state court determination [are] 'particularly weighty in insurance cases'" such as this one. *757BD LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh*, PA, 330 F. Supp. 3d 1153, 1163 (D. Ariz. 2016) (quoting *Emp'rs Reinsurance Corp. v. Karussos*, 65 F.3d 796, 798-99 (9th Cir.1995), *overruled in part on other grounds by Dizol*, 133 F.3d at 1227 (internal citation omitted)). *Shamamian* is not to the contrary due to the factual differences between that case and this one.

        ii.    **Unsettled**

      Gilligan contends that the relevant issues of insurance law are unsettled and novel because no prior court has addressed similar policy language under comparable circumstances. (Doc. 18 at 7.) WCF does not offer any examples of factually similar cases. But as WCF correctly notes, the mere fact that courts have not decided an insurance coverage case of precisely this sort does not mean the coverage questions at issue are "unsettled." (Doc. 24 at 7-8.) *See also 757BD LLC*, 330 F. Supp. 3d at 1162 ("The absence of reported cases factually identical to the present one does not, without more, create an issue of first impression."); *Canal Indem. Co. v. Adair Homes, Inc.*, 2010 WL 3021874, *3 (W.D. Wash. 2010) ("Although there are no Washington decisions specifically addressing the mold or organic pathogen exclusion contained in the Canal policies, clear principles of Washington law regarding policy interpretation guide this Court's evaluation of the exclusion."); *Allstate Ins. Co. v. Gomez*, 2009 WL 3018712, *4 (D. Haw. 2009) ("The court sees no reason to abstain in the present case, as the case does not present unduly complex issues and as no pending Hawaii case has been identified by the parties that will interpret the applicable policy language.").

      In the alternative, Gilligan cites *Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800 (9th Cir. 2002), *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966 (9th Cir. 2011), and *Argonaut* to argue that the first *Brillhart* factor does not *require* that the issues of law be unsettled. This argument has merit. In each of those cases, an insurer, as here, sued in federal court seeking a declaration of no coverage under an insurance policy. And in each

of those cases, the Ninth Circuit held that abstention was proper (or required) even though the state-law insurance issues to be decided by the federal court were routine and not unsettled. *Huth*, 298 F.3d at 804 ("Admittedly, *there is no great need for state court resolution of an open question of state law in this case*. Yet, without a presumption in favor of retaining jurisdiction, we cannot find that the district court abused its discretion by declining jurisdiction."); *R.R. St. & Co.*, 656 F.3d at 975 ("There is no question that retaining jurisdiction over the Removed Action would have required the district court to decide basic issues of state [insurance] law. In prior cases, we have recognized that needless determination of state law issues alone may support remand."); *Argonaut*, 17 F.4th at 1285 (holding that the district court "properly evaluated" the *Brillhart* factors when it determined that the first *Brillhart* factor favored abstention even though the federal action involved only insurance coverage issues).

True, several cases, including *Shamamian*, indicate that "the concern in the first *Brillhart* factor 'is with *unsettled* issues of state law." *Shamamian*, 2023 WL 8076222 at *7 (quoting *757BD*, 330 F. Supp. 3d at 1162). *See also Polido v. State Farm Mut. Auto. Ins. Co.*, 110 F.3d 1418, 1422 (9th Cir. 1997), *overruled on other grounds by Dizol*, 133 F.3d 1220 ("Exercise of the district court's discretionary jurisdiction under *Brillhart* furthers the policy against needlessly deciding *unsettled* state law issues, prevents duplicitous litigation, and discourages forum shopping."). But these cases merely emphasize that when an issue of state law is unsettled, that fact will weigh heavily in favor of abstention. Admittedly, that is not the case here. But for the additional reasons outlined above with regard to needlessness, other considerations sufficiently counsel in favor of abstention under the first *Brillhart* factor.

### B. Forum Shopping

#### 1. The Parties' Arguments

Gilligan, relying on *Owners Ins. Co. v. Monte Vista Hotel*, 2010 WL 447343 (D. Ariz. 2010), argues that "[i]n this case, there is pending litigation in Arizona Superior Court and a procedural vehicle available to WCF in state court to resolve the insurance coverage

1    issues raised in this action.  Specifically, WCF could have filed an action under the Arizona

2    Declaratory Judgment statute, A.R.S. §12-1831 *et seq.*  There are no unique circumstances

3    in this case that would dictate utilization of the federal Declaratory Judgment Act to resolve

4    the insurance coverage issues.  Accordingly, abstention would be appropriate."  (Doc. 18

5    at 8.)

6         In response, WCF, again relying on *Shamamian*, argues that this factor weighs in

7    favor of retention because "WCF is not a party to a state court preceding involving this

8    declaratory judgment lawsuit and there is no pending state court matter presenting the same

9    issues of state law that are at issue in this action."  (Doc. 24 at 10-11.)

10        In reply, Gilligan argues that "[o]nce again, controlling Ninth Circuit case law

11   relating to this issue was cited by Gilligan and WCF fails to address these cases."  (Doc.

12   27 at 6.)  Gilligan further argues that "WCF does not dispute that it could have filed its

13   lawsuit in state court" and that "[i]n any event, this Court can consider the fact that WCF

14   filed its initial declaratory judgment complaint in this Court on December 11, 2024 within

15   one month after Scott filed its state court complaint against Gilligan and Gilligan tendered

16   the defense of the case to WCF.  The timing of WCF's complaint properly raises an

17   inference that the declaratory judgment lawsuit was filed in reaction to Scott's complaint."

18   (*Id.* at 6-7.)

19                        2.    Analysis

20        The Court agrees with WCF that the second *Brillhart* factor favors retaining

21   jurisdiction.  "Although occasionally stigmatized as 'forum shopping,' the desire for a

22   federal forum is assured by the constitutional provision for diversity jurisdiction and the

23   congressional statute implementing Article III."  *First State Ins. Co. v. Callan Assocs., Inc.*,

24   113 F.3d 161, 162 (9th Cir. 1997).  A federal action invoking diversity jurisdiction can,

25   however, constitute forum shopping when the litigation is "reactive."  Reactive litigation

26   can include (1) "trying to obtain some sort of undue advantage," *Devs. Sur. & Indem. Co.*

27   *v. Coyote Creek Constr. Inc.*, 2021 WL 1930270, *6 (D. Ariz. 2021), such as "fil[ing] a

28   [declaratory judgment action in federal court] 'during the pendency of a non-removable

state court action presenting the same issues of state law,'" *R.R. St. & Co.*, 656 F.3d at 976 (citation omitted); (2) "attempting to undermine or preempt an established or pending state court ruling," *Aero Jet*, 2011 WL 4708857 at \*4; or (3) "filing a federal court declaratory action to see if it might fare better in federal court at the same time the insurer is engaged in a state court action," *Am. Cas. Co. of Reading, Penn. v. Krieger*, 181 F.3d 1113, 1119 (9th Cir. 1999). *See also Nat'l Chiropractic Mut. Ins. Co. v. Doe*, 23 F. Supp. 2d 1109, 1117 (D. Alaska 1998) ("A 'reactive' or 'defensive' declaratory judgment action is typically a diversity federal action commenced by an insurer that has already been sued in state court, either by the injured third party or the insured.").

The Federal Action is not reactive litigation—WCF "is not a party to the State Court Action and the insurance coverage dispute will not be resolved in the State Court Action." *Shamamian*, 2023 WL 8076222 at \*10. Gilligan argues the Federal Action is reactive because WCF could have filed the declaratory action in state court pursuant to A.R.S. §12-1831 *et seq.* But "this analysis largely conflates forum shopping with the factor relating to needless adjudication of state law issues already discussed above." *Aero Jet*, 2011 WL 4708857 at \*4. In *Aero Jet*, the district court rejected an identical argument premised on many of the same cases cited by Gilligan:

> Defendants cite to some [DJA] cases that have, in fact, found forum shopping based on the availability of state court adjudication, even when the issue of insurance coverage had not yet been raised in any forum. [*See, e.g.*, *Great American Assur. v. McCormick*, 2005 WL 3095972, at \*2 (N.D. Cal. 2005) (finding forum shopping when an insurance company filed its declaratory action in reaction to an underlying proceeding because the relevant factual considerations were already before the state court); *accord*, *Owners Ins. Co. v. Monte Vista Hotel*, 2010 WL 447343, \*3 (D. Ariz. 2010)]. Plaintiff argues, however, that forum shopping "usually is understood to favor discouraging an insurer from . . . filing a federal court declaratory action to see if it might fare better in federal court at the same time the insurer is engaged in a state court action." While Plaintiff's request for declaratory judgment no doubt stems from the fact that its insured has been sued and has sought defense and potential indemnification in the underlying state court action, the Court does not find that Plaintiff's . . . complaint is "reactive" in the sense that Plaintiff is attempting to undermine or preempt an established or pending state court ruling. Thus, the Court does not find that Plaintiff's choice to file [a federal

declaratory] action constitutes impermissible forum shopping. That factor does not weigh against the Court exercising jurisdiction in this case.

*Aero Jet*, 2011 WL 4708857 at *4 (cleaned up). The Court agrees, so the second *Brillhart* factor weighs in favor of retention.[3]

Gilligan's remaining cited cases do not alter this conclusion. None of the Ninth Circuit cases cited by Gilligan supports the argument that the availability of a state-court declaratory action weighs in favor of forum shopping. Although those cases emphasize that the availability of declaratory relief in state court bears generally on the question of whether courts should exercise jurisdiction, they do not specifically hold that such availability is alone tantamount to forum shopping. *See e.g.*, *Budget Rent-A-Car v. Crawford*, 108 F.3d 1075, 1081 (9th Cir. 1997), *overruled on other grounds by Dizol*, 133 F.3d at 1220 ("We hold that, to avoid forum shopping *and vindicate federalism concerns*, a district court must consider whether existing state court remedies such as indemnification or the right to seek a declaration under state law will provide an adequate remedy for a party who files a claim under the Declaratory Judgment Act."); *Polido*, 110 F.3d at 1423, *overruled by Dizol*, 133 F.3d at 1220 ("Thus, *in determining whether to exercise its discretionary jurisdiction* to reach the merits in an action for declaratory relief, the dispositive question is not whether the pending state proceeding is 'parallel,' but rather, whether there was a procedural vehicle available to the insurance company in state court to resolve the issues raised in the action filed in federal court. If a state court remedy is available to the insurer, the district court must consider whether circumstances exist that overcome the presumption that the entire suit should be heard in state court, to prevent forum shopping *and piecemeal litigation of complex state law issues*.") (citation omitted).[4]

Finally, *Hungerford*, which Gilligan cites in its reply brief, does suggest that the

[3] Gilligan also argues that the timing of the Federal Action implies that it was reactive. But WCF is not a party to the State Court Action and thus the Federal Action does not appear reactive to any unfavorable or potentially unfavorable outcome in the State Court Action.

[4] Gilligan also relies on *Allied World Specialty Ins. Co. v. ICR Sanitary Dist.*, 2021 WL 1951750, *3 (D. Ariz. 2021), but that case is non-precedential and the only authorities cited in that case on this proposition are *Polido* and *Crawford*.

- 19 -

availability of a state-court declaratory action is relevant to the forum-shopping *Brillhart* factor. *Hungerford*, 53 F.3d at 1018, *overruled by Dizol*, 133 F.3d 1220 ("Because it appears that American National could have brought this action in state court through California's own declaratory judgment provision, we should not endorse its attempt to obtain a federal forum to provide the remedy it seeks."). But the Ninth Circuit's subsequent decision in *Krieger* contradicts (or at least softens) that proposition. There, the Ninth Circuit affirmed a district court's decision to retain jurisdiction, based in part on its determination that the federal plaintiff had not engaged in forum shopping by filing a declaratory action in federal court despite the availability of a state-court analog. 181 F.3d at 1119. The Court explained that the second *Brillhart* factor "usually is understood to favor discouraging an insurer from forum shopping, *i.e.*, filing a federal court declaratory action to see if it might fare better in federal court at the same time the insurer is engaged in a state court action" and that "[i]n this case, although the district court noted that American Casualty could have had its rights determined in the state court suit and therefore *might* have been forum shopping," that fact nonetheless did not compel abstention. *Id.*

        C.     **Duplicative Litigation**

            1.    <u>The Parties' Arguments</u>

Gilligan argues, for all the reasons outlined in the section addressing the first *Brillhart* factor, that the State Court Lawsuit and this action can be duplicative even if the State Court Lawsuit does not involve insurance coverage and it does not include WCF as a party. (Doc. 18 at 8-10.)

In response, WCF argues that "[f]or the reasons discussed related to the 'Avoid Needless Litigation of State Law Issues' factor, there is no duplicative litigation. There are no other lawsuits pending between WCF and Defendants related to this matter and the coverage issues presented in this declaratory judgement action are not duplicative of the issues presented in the [State Court Action]." (Doc. 24 at 12.)

In reply, Gilligan reiterates its argument that the proceedings can be duplicative even though WCF is not a party to the State Court Action and that action is not one for

coverage.  (Doc. 27 at 7.)  Gilligan further argues that "WCF is asking this Court to rule that a Policy exclusion involving the fraudster's access to or disclosure of personal information in Gilligan's email system precludes coverage.  However, WCF does not deny in its response that Gilligan and Scott are disputing in the State Court Lawsuit whether such access even occurred.  The access to and disclosure of information in Gilligan's email system is squarely at issue in both cases and duplicative discovery may need to take place in both state and federal court if Gilligan's motion is denied." (*Id.* at 7-8.)  Last, Gilligan emphasizes that "[a] declaratory judgment action filed by WCF in state court would allow a single judge to oversee both the insurance and tort lawsuits through consolidation.  A single judge also could coordinate discovery and legal rulings in order to avoid duplication and inconsistency and promote efficiency."  (*Id.* at 8, cleaned up.)

### 2.    Analysis

The third *Brillhart* factor (*i.e.*, the district court "should avoid duplicative litigation") favors abstention.  The first and third *Brillhart* factors often go hand in hand. *Home Indem. Co. v. Stimson Lumber Co.*, 229 F. Supp. 2d 1075, 1081 (D. Or. 2001) ("I view this factor as equal to the first factor in which the overlap between state law issues and issues present in the federal declaratory relief action is examined."); *Doe*, 23 F. Supp. 2d at 1118 ("[The first *Brillhart* factor] primarily concerns the unnecessary duplication of trying the same legal claim in state and federal court.").  Duplicative litigation arises when the federal and state actions are parallel proceedings.  *See, e.g.*, *Allstate Ins. Co. v. Davis*, 430 F. Supp. 2d 1112, 1121 (D. Haw. 2006) ("[D]uplicative litigation may be a concern if this Court's determination regarding Allstate's duties hinges on a finding that will also be addressed in the state court.").

For the reasons outlined in earlier portions of this order, these actions are parallel and implicate the needlessness subfactor because, in addition to arising out of the same factual occurrence, they both turn on the same core disputed facts: whether Balbona had his email misappropriated and, if so, whether this misappropriation was due to an IT breach of Gilligan's systems. *Riverport Ins. Co. v. Horizon Hum. Servs. Inc.*, 2015 WL 7351670,

*4 (D. Ariz. 2015) ("Last, the Court must avoid duplicative litigation. . . .  [T]his action and the [state-court action] action arose from the [same underlying occurrence] and may turn on similar factual issues, which could create conflicting decisions and frustrate the state court's adjudication of the [state-court action].  In addition, exercising jurisdiction over this case while the state action is pending may duplicate discovery efforts and waste resources. The mere possibility of duplicative litigation, however remote, weighs in favor of abstention."). *See also Hungerford*, 53 F.3d at 1018 (holding that abstention was proper under similar circumstances because retention would "lead to the state and federal appellate courts reviewing claims arising from an identical set of facts even though the cases can easily be consolidated if filed within the same court").

### D.   **Conclusion**

Although the second *Brillhart* factor weighs somewhat in favor of retaining jurisdiction, the first and third factors weigh more strongly in favor of abstention.  Thus, even putting aside the presumption of abstention discussed in Part II above, the *Brillhart* factors favor abstention.

## IV.   *Dizol* Supplemental Factors

### A.   **Settle All Aspects Of The Controversy**

#### 1.   The Parties' Argument

Gilligan argues that "a declaratory action in federal court would not settle all aspects of the controversy because liability and damages issues involving Scott, WindTech and Gilligan would remain in the State Court Lawsuit."  (Doc. 18 at 10-11.)

In response, WCF argues that "[t]his declaratory judgment action will settle all aspects of the controversy between WCF and the [Gilligan] because it will determine questions of coverage under the WCF Policy," and thus, this factor is "neutral at worst" and "does not outweigh the *Brillhart* factors or the other *Dizol* factors."  (Doc. 24 at 12.)

Gilligan reiterates its arguments in reply.  (Doc. 27 at 8.)

#### 2.   Analysis

This factor favors abstention because resolving the coverage question would not

resolve every aspect of the tort claims in the State Court Action.  *Cf. Aero Jet*, 2011 WL 4708857 at *5 ("Plaintiff acknowledges that the duty to defend is broader than the duty to indemnify and that if the Court should find a duty to defend, it would have to stay the action with respect to indemnification until the liability issues are resolved in state court.  Given this possible scenario, the Court could not settle all aspects of the controversy until after the outcome of the state proceeding.  This factor does not weigh in favor of assuming jurisdiction.") (record citation omitted).

### B.    Useful Purpose In Clarifying The Legal Relations At Issue

#### 1.    The Parties' Arguments

Gilligan argues that "a federal declaratory judgment action would not serve any useful purpose because a declaratory judgment could be obtained in state court," and although "some clarification would be gained by resolution of this action, it is outweighed by concerns of judicial administration, comity, and fairness to litigants."  (Doc. 18 at 11.)

In response, WCF argues that "[t]he declaratory judgment action will provide useful clarification regarding whether coverage is available for defense or indemnification under the WCF Policy for the allegations in the [State Court Action]."  (Doc. 24 at 13.)

In reply, Gilligan argues that "[a]lthough this Court's determination about coverage might serve a useful purpose in clarifying the legal relations at issue, determinations relating to the State Court Lawsuit might affect this litigation."  (Doc. 27 at 8.)

#### 2.    Analysis

This factor is either neutral or weighs only weakly in favor of retention.  On the one hand, WCF is correct that this Court would be usefully clarifying the disputed legal obligations between the parties by ruling on the coverage question.  *Shamamian*, 2023 WL 8076222 at *12 ("By clarifying whether Associated has an obligation to defend or indemnify the Pasionek Defendants, the Krulisky Defendants, and P&K in the State Court Action, this action will serve a useful purpose.").  On the other hand, this case is not on all-fours with *Shamamian*.  There, although the two proceedings were based on the same occurrence, the key disputed facts did not overlap and thus the proceedings were not

parallel. The same is not true here, for reasons outlined at length in earlier portions of this order. Consequently, retention would be less useful here than it was in *Shamamian*.

### C.    **Procedural Fencing Or Res Judicata Advantage**

#### 1.    The Parties' Arguments

Gilligan argues that "allowing this federal declaratory judgment action to proceed would encourage insurance companies to file other routine declaratory judgment actions in federal court rather than to utilize the procedure available under Arizona state law." (Doc. 18 at 11.)

In response, WCF argues that "[t]he discussion of the first Brillhart factor, *supra*, applies to the *Dizol* factor of whether the declaratory action is being sought merely for purposes of procedural fencing or res judicata. The insurance coverage issues in this action are not being litigated in the [State Court Action] and the facts at issue are not duplicative of those at issue in the [State Court Action]. This factor weighs in favor of jurisdiction." (Doc. 24 at 13.)

In reply, Gilligan argues that "[c]oncerns about procedural fencing/res judicata weigh in favor of abstention because rulings in this case may affect the rights of the parties in the State Court Lawsuit." (Doc. 27 at 9.)

#### 2.    Analysis

The factor is neutral or only weakly supports retention. WCF does not appear to have filed this action intending to bring further claims that might benefit from a federal court determination. *757BD*, 330 F. Supp. 3d at 1167 (finding this factor did not support abstention where the party "ha[d] not identified any further claims once a judgment is rendered in this action").

### D.    **Entanglement Between The Federal And State Court Systems**

#### 1.    The Parties' Arguments

Gilligan argues that "a declaratory judgment action in this Court could lead to entanglement between federal and state courts by giving rise to conflicting factual determinations." (Doc. 18 at 11.)

In response, WCF argues that "there is no entanglement between the federal and state court system as the facts at issue in the Underlying Litigation and this declaratory judgment action are distinct." (Doc. 24 at 13-14.)

In reply, Gilligan reiterates its contention that exercising jurisdiction would result in "some entanglement." (Doc. 27 at 8.)

> 2.    Analysis

This factor favors abstention for a now-familiar reason: the two proceedings turn on the same key disputed facts.

> E.    **Convenience Of The Parties**

>> 1.    The Parties' Arguments

Gilligan argues that this factor favors abstention because "the Arizona state declaratory judgment procedure is an available and convenient alternative for WCF to pursue." (Doc. 18 at 12.)

In response, WCF argues, relying on *Shamamian*, that this factor favors retention because "[r]esources will be expended to litigate the declaratory action whether it is in state or federal court." (Doc. 24 at 14.)

Gilligan says nothing in reply.

> 2.    Analysis

As an initial matter, it appears Gilligan conflates this factor with the sixth *Dizol* factor. Nevertheless, this factor at least weakly favors abstention. If the Court were to retain jurisdiction over the Federal Action, Gilligan would be required to engage in a significant amount of duplicative discovery given the shared factual issues between the two proceedings. Thus, unlike in *Shamamian*, it would be at least somewhat inconvenient for Gilligan to have to litigate the declaratory action in federal court.

> F.    **Availability And Relative Convenience Of Other Remedies**

>> 1.    The Parties' Arguments

Gilligan once again emphasizes that "the Arizona state declaratory judgment procedure is an available and convenient alternative for WCF to pursue." (Doc. 18 at 12.)

1       In response, WCF argues that "WCF is not a party to the Underlying Lawsuit and

2  had to file a declaratory judgment action to seek a judicial determination of its duties and

3  obligations to Gilligan Commercial with respect to the Underlying Litigation.  There is no

4  reason to believe that an action in state court would be any more convenient than this

5  pending action in District Court," and thus "[t]his *Dizol* factor favors the exercise of

6  jurisdiction." (Doc. 24 at 14.)

7       Gilligan offers no further argument in reply.

8           2.   Analysis

9       For the reasons outlined above with regard to the fifth *Dizol* factor, it would be

10  marginally less convenient, at least for Gilligan, to have to litigate the issue of insurance

11  coverage in federal court.  The sixth *Dizol* factor thus weighs weakly in favor of abstention.

12     G.    **Conclusion**

13       The supplemental *Dizol* factors do not cut decisively for or against abstention.  In

14  contrast, the parallel-proceeding presumption favors abstention and the *Brillhart* factors

15  also favor abstention.  The Court thus declines, in its discretion, to accept jurisdiction over

16  the Federal Action.

17       Accordingly,

18       **IT IS ORDERED** that:

19     1.     Gilligan's motion to dismiss (Doc. 18) is **granted**.  This action is dismissed

20  without prejudice.

21     2.     The Clerk shall enter judgment accordingly and terminate this action.

22       Dated this 29th day of September, 2025.

23

24

25                           _____

26                             Dominic W. Lanza
                              United States District Judge

27

28